**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

PARKERVISION, INC.

                Plaintiff,

    vs.

INTEL CORPORATION

                Defendant.

C.A. No.   6:20-cv-00108-ADA

**JURY TRIAL DEMANDED**

**DEFENDANT INTEL CORPORATION'S OPPOSED MOTION TO**
**TRANSFER VENUE UNDER 28 U.S.C. §1404(a)**

## TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 2

       A.    Neither ParkerVision nor Intel has relevant connections to the Western
             District of Texas ........................................................................................... 2

             1.    ParkerVision has no relevant connections to this district ..................... 2

             2.    Intel has no connections to the Western District of Texas that
                   are material to this case ......................................................................... 4

       B.    Relevant witnesses and documents are more easily accessible from
             Oregon ........................................................................................................... 5

             1.    The Asserted Patents have no material connection to Texas ................. 5

             2.    The relevant documents and witnesses for the Intel Products At
                   Issue are more easily accessible from Oregon ...................................... 6

III.   THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF
       OREGON .................................................................................................................. 7

       A.    Legal Standard .............................................................................................. 7

       B.    Step 1:  This action could have been brought in the District of Oregon ............ 8

       C.    Step 2:  The District of Oregon is clearly more convenient than the
             Western District of Texas ............................................................................. 8

             1.    Factors Favoring Transfer ..................................................................... 8

             2.    Neutral Factors ..................................................................................... 14

IV.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED
       TO THE AUSTIN DIVISION ............................................................................... 15

V.     CONCLUSION ...................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010)..........................................................................7, 11

*Data Scape Ltd. v. Dell Techs. Inc. et al.*,
   No. 6:19-cv-129-ADA, D.I. 44 (W.D. Tex. June 7, 2019).......................................8, 9, 13

*DataQuill, Ltd., v. Apple, Inc.*,
   No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ...........................14

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)............................................................................8, 9, 12

*Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*,
   No. 1:14-CV-464-LY, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014) ...................10, 12

*In re Morgan Stanley*,
   417 Fed. App'x 947 (Fed. Cir. 2011)..................................................................13

*In the Matter of Certain RF Capable Integrated Circuits and Products*
   *Containing The Same*, Inv. No. 337-TA-982 (Dec. 15, 2015)...........................3

*Moskowitz Family LLC v. Globus Medical, Inc.*,
   No. 6:19-cv-672-ADA, D.I. 50 (W.D. Tex. July 2, 2020).....................................9, 10, 12

*ParkerVision, Inc. v. Apple Inc. et al., Corp.*,
   Case No. 3:15-cv-1477 (M.D. Fla.) .....................................................................3

*ParkerVision, Inc. v. Blu Products, Inc.*,
   No. 3:15-cv-888 (M.D. Fla.) ..............................................................................3

*ParkerVision, Inc. v. Bullit Group Ltd.*,
   No. 3:15-cv-896 (M.D. Fla.) ..............................................................................3

*ParkerVision, Inc. v. Infosonics, Corp.*,
   No. 3:15-cv-895 (M.D. Fla.) ..............................................................................3

*ParkerVision, Inc. v. Qualcomm Inc.*,
   621 F. App'x 1009 (Fed. Cir. 2015) ....................................................................3

*ParkerVision, Inc. v. Qualcomm Inc.*,
   No. 3:11-cv-719 (M.D. Fla.) ..............................................................................3

*ParkerVision, Inc. v. Qualcomm Inc.*,
   No. 6:14-cv-687 (M.D. Fla.)................................................................................3

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ....................................................... 8, 15

*In re Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ....................................................... 14

*Two-Way Media, LLC v. AT&T*,
   636 F. Supp. 2d 527 (S.D. Tex. 2009) ............................................... 9

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................... 7, 8, 12, 14

*In re WMS Gaming, Inc.*,
   564 Fed. App'x 579 (Fed. Cir. 2014) ............................................... 13

**Federal Statutes**

28 U.S.C. §1400(b) ................................................................... 8

28 U.S.C. §1404(a) ....................................................... 1, 7, 8, 12

**Other Authorities**

F.R.C.P. 45(c) ....................................................................... 14

Fed. R. Civ. P. 45(c)(B)(ii) ........................................................ 14

## I.      INTRODUCTION

Defendant Intel Corporation ("Intel") respectfully moves to transfer this action to the District of Oregon, or in the alternative, to the Austin Division under 28 U.S.C. §1404(a). After almost a decade of unsuccessful patent litigation in its home state of Florida, in Germany, and before the U.S. International Trade Commission ("ITC"), Plaintiff ParkerVision, Inc. ("ParkerVision") decided to try a new forum and filed this case in the Western District of Texas, Waco Division.   But neither ParkerVision nor this case has any connection to the Western District of Texas:

- ParkerVision is based in Florida and does not have *any* offices, employees, operations, or even a listed phone number in the Western District of Texas;

- *None* of the work that led to the asserted patents was performed in the Western District of Texas;

- *None* of the living inventors resides in the Western District of Texas;

- Intel has *no* physical presence in the Waco Division and no physical presence in the Western District of Texas that is material to this case;

- *None* of the design or development work that led to the products at issue was performed in the Western District of Texas;

- *None* of the Intel and third-party witnesses who developed the products at issue are based in the Western District of Texas;

- *None* of the schematics for the products at issue are accessible from the Western District of Texas; and

- *None* of the likely trial witnesses from Intel or third parties resides in the Western District of Texas.

By contrast, resolving ParkerVision's allegations against Intel will require testimony from witnesses living in Oregon, schematics accessible in Oregon, and former employees and third parties who are just a short flight away from Oregon:

- Intel engineers with knowledge of the structure, function, and operation of the products at issue work *in Oregon*;

- Highly confidential schematics that show the structure, function, and operation of the products at issue are accessible by Intel engineers *in Oregon*; and

- Key third-party witnesses—including the former Intel employee responsible for marketing the Intel products at issue—are located in Northern California, which offers convenient commuter flights to and from *Oregon*.

Any argument that Intel's presence in *Austin* weighs against transfer to Oregon misses the point because there is no material connection between this case and Austin, either. *None* of the engineers who designed or developed the products at issue works in Austin. To the contrary, the engineer with primary responsibility for designing the circuits at the core of ParkerVision's allegations resides *in Oregon*.

Should the Court nonetheless decide to keep this case in the Western District of Texas, Intel respectfully requests that it transfer the case to the Austin Division. ParkerVision agrees that this case should be transferred to Austin if it is not transferred to Oregon. For all the reasons that follow, however, Intel respectfully submits that this case should be resolved in the District of Oregon.

## II.   BACKGROUND

### A.   Neither ParkerVision nor Intel has relevant connections to the Western District of Texas.

#### 1.   ParkerVision has no relevant connections to this district.

ParkerVision is a Florida corporation that ceased product sales in 2019 to focus on patent litigation. D.I. 14, ¶ 2; Declaration of Jason Choy ("Choy Decl."), Ex. 1 (ParkerVision Apr. 14, 2020 10-K) at 4 ("We ceased sales of our Milo products during the fourth quarter of 2019 in order to focus solely on patent enforcement actions."). ParkerVision's headquarters are in Jacksonville, Florida, and it leases a second facility in Lake Mary, Florida. Choy Decl., Ex. 1 (ParkerVision Apr. 14, 2020 10-K) at 13.

ParkerVision can hardly claim that the Western District of Texas is the most convenient forum. Since 2011, ParkerVision has filed six district court actions asserting

patent infringement in the Middle District of Florida.[1]   One of those cases has reached a decision on the merits:  the district court granted judgment as a matter of law ("JMOL") of non-infringement on all asserted claims.  *ParkerVision, Inc. v. Qualcomm Inc.*, Case No. 3:11-cv-719, D.I. 545 (M.D. Fla.) ("*Qualcomm I*").  The Federal Circuit affirmed the district court's grant of JMOL and separately found ten of the asserted claims invalid.  *ParkerVision, Inc. v. Qualcomm Inc.*, 621 F. App'x 1009, 1017 (Fed. Cir. 2015).

In December 2015, ParkerVision filed a complaint for patent infringement against Qualcomm and several of its customers, including Apple Inc. ("Apple") in the ITC.  *In the Matter of Certain RF Capable Integrated Circuits and Products Containing The Same*, Inv. No. 337-TA-982 (Dec. 15, 2015) ("*Qualcomm ITC*"), D.I. 570655.  ParkerVision withdrew its complaint and the investigation was terminated in April 2017.  *Id*., D.I. 605309.

In February 2017, ParkerVision amended a complaint it had filed in the Munich Regional Court in Germany to accuse Apple devices that incorporate the Intel "PMB 5750" transceiver chip—which is also at issue here—of infringing European Patent 1 135 853 ("EP '853").  Choy Decl., Ex. 1 (ParkerVision Apr. 14, 2020 10-K) at 49; *compare* Choy Decl., Ex. 2 (Munich Regional Court, Apr. 25, 2019, 7 O 2141/17, Final Judgment (trans.) (Ger.)) at 4 ("The defendants sold smartphones . . . equipped with the attacked chip 'PMB 5750.'") *with* D.I. 14 ¶ 32 (accusing the PMB 5750).  The EP '853 patent claims priority to five U.S. patents, two of which (U.S. Patent Nos. 6,049,706 and 6,580,902) were asserted here until ParkerVision voluntarily dismissed the '706 patent.  Choy Decl., Ex. 3 (EP '853 patent) at cover; D.I. 14 ¶¶ 1, 36-38, 42-44, 66-71, 80-87 (asserting '706 and '902 patents); D.I. 20

---

[1]  *ParkerVision, Inc. v. Qualcomm Inc.*, No. 3:11-cv-719 (M.D. Fla.) ("*Qualcomm I*"); *ParkerVision, Inc. v. Qualcomm Inc.*, No. 6:14-cv-687 (M.D. Fla.) ("*Qualcomm II*"); *ParkerVision, Inc. v. Blu Products, Inc.*, No. 3:15-cv-888 (M.D. Fla.);  *ParkerVision, Inc. v. Infosonics, Corp.*, No. 3:15-cv-895 (M.D. Fla.); *ParkerVision, Inc. v. Bullit Group Ltd.*, No. 3:15-cv-896 (M.D. Fla.);  *ParkerVision, Inc. v. Apple Inc. et al., Corp.*, Case No. 3:15-cv-1477 (M.D. Fla.).

(voluntarily dismissing the '706 patent).  In April 2019, the Munich Regional Court ruled that Apple's Intel-based phones do not infringe the EP '853 patent and ordered ParkerVision to bear the costs of that proceeding.[2]  Choy Decl., Ex. 1 (ParkerVision Apr. 14, 2020 10-K) at 50.

In February 2020, ParkerVision filed the present suit—its first in the Western District of Texas.  D.I. 1.  On May 15, 2020, ParkerVision filed its First Amended Complaint, adding two additional asserted patents.  D.I. 14 ¶¶ 39-41, 57-59, 72-79, 117-126 (asserting the '518 and '528 patents).  Then, on June 24, 2020, ParkerVision voluntarily dismissed the '706 patent.  D.I. 20.  Neither complaint alleges any connection between ParkerVision or any of the asserted patents to the Western District of Texas.

> **2.      Intel has no connections to the Western District of Texas that are material to this case.**

Intel is a leader in the design and development of semiconductor technology and microprocessor products, including the transceiver chips at issue here.  Intel's largest design and development facility is in Hillsboro, Oregon.  *See* Declaration of Chris Hull ("Hull Decl."), ¶ 6.  Intel has over 21,000 employees and four campuses in Oregon.  *Id.*

The transceiver chips at issue here were primarily designed overseas.  *Id.* ¶ 9. However, Intel sold most of its cellular transceiver business (*i.e.*, its "smartphone modem

---

[2] Intel also challenged the validity of the EP '853 patent in a separate nullity (*i.e.*, invalidity) action in the German Federal Patent Court.  Choy Decl., Ex. 1 (ParkerVision Apr. 14, 2020 10-K) at 49-50.  In December 2019, the German Federal Patent Court found that all elements of the EP '853 patent are disclosed in the prior art article *A 900-MHz RF Front-End with Integrated Discrete-Time Filtering*, IEEE J. OF SOLID-STATE CIRCUITS, Band 31, Nr. 12 (Dec. 1996) by Shen, D. H., et al., ("Shen"), and rejected ParkerVision's argument that it invented a "fundamentally different approach to energy transmission down-conversion."  Choy Decl., Ex. 4 (Bundespatentgericht [BPatG] [Federal Patent Court], Dec. 16, 2019, 5 Ni 19/17 (EP), Decision on Costs and Determination of the Value in Dispute (Ger.) (trans.)) at 10; *see also id.* at 15 ("Thus all features of claim 1 of the patent in suit are apparent from [Shen].").  Based on that and other findings, ParkerVision was ordered to pay Intel's costs.  *Id.* at 2 ("The defendant [ParkerVision GmbH] has to pay the costs.").

business") to Apple in December 2019.[3]  D.I. 14, ¶ 35.  As part of the sale, approximately 2,200 Intel employees (along with intellectual property, equipment, and leases) went to Apple.  *See* Hull Decl., ¶ 13; *see also* Choy Decl., Ex. 5 (Apple Press Release), https://www.apple.com/newsroom/2019/07/apple-to-acquire-the-majority-of-intels-smartphone-modem-business/.  Of the remaining Intel employees who worked on the design and development of the circuits at issue, the most knowledgeable engineers are in Oregon.  *See* Hull Decl., ¶ 16.

Although Intel has facilities in Austin, none of those facilities or any of the employees based at those facilities has any material connection to the transceiver chips at issue here.  Intel did not design or develop the Intel products at issue in Austin, does not maintain schematics or documents related to the chips at issue in Austin, and does not have any employees material to this case in Austin.  *See* Hull Decl., ¶¶ 20, 22-23.  Moreover, Intel has no facilities in the Waco Division, does not develop or manufacture any products (including any of the products at issue) in the Waco Division, does not maintain technical documents or schematics or marketing information relating to the products at issue in the Waco Division, and does not have any employees in the Waco Division.  *See* Hull Decl., ¶¶ 7, 18-23.

B.     **Relevant witnesses and documents are more easily accessible from Oregon.**

1.     **The Asserted Patents have no material connection to Texas.**

ParkerVision now asserts nine patents against Intel in this case:  U.S. Patent Nos. 6,266,518;  6,580,902;  7,110,444;  7,539,474;  8,588,725;  8,660,513;  9,118,528;  9,246,736; and 9,444,673 (collectively, the "Asserted Patents").  D.I. 14 ¶¶ 36-65; D.I. 20 (dismissing the '706 patent).  None of the eleven listed inventors lived in the Western District of Texas when the patents issued, and based on Intel's investigation, none lives in the Western District

---

[3] Intel retained the right to sell the Products At Issue to certain non-smartphone market segments.

of Texas now.  When the patents issued, seven of the inventors lived in Florida, and four

lived in Utah.  According to public records, six inventors today live in Florida, one lives in

California, one in Idaho, one in Keller, Texas (in the Northern District of Texas), one in Utah,

and one is deceased.  Choy Decl., Exs. 6-16 (Accurint Reports and Westlaw Report for listed

inventors).  The prosecution histories for the asserted patents show that the prosecuting

attorneys work in Washington, D.C. and/or Utah.  *Id.*, Exs. 17-26 (excerpts from file

histories).

The ownership history of the asserted patents likewise shows no connection to the

Western District of Texas.   All nine asserted patents were originally assigned to

ParkerVision, which has been located in Jacksonville, Florida at all relevant times.

All nine asserted patents have expired.[4]

## 2. The relevant documents and witnesses for the Intel Products At Issue are more easily accessible from Oregon.

ParkerVision accuses three Intel cellular transceivers of infringement:  the PMB 5750,

the PMB 5757, and the PMB 5762 (collectively, the "Products At Issue").  D.I. 14, ¶¶ 32-35.

ParkerVision specifically accuses circuits of these products that convert a high frequency,

wirelessly transmitted signal ("RF signal") into a lower frequency signal—a process referred

to as "down-conversion."  *Id.*, ¶¶ 66-146.  ParkerVision does not allege any connection

between the design or development of the circuits at issue and the Western District of Texas.

Nor could it:

- Each of the nine counts alleging infringement of the asserted patents accuses the local oscillator circuits in the Products At Issue, and seven of those counts explicitly accuse the "25% duty cycle" in the Products At Issue.  Chris Hull, the engineer who designed the local oscillator distribution of the PMB 5750 and has personal knowledge of the duty cycle, resides *in Oregon*; Hull Decl., ¶¶ 1,12;

- Kevin Constantine, formerly Intel's Senior Director for the Apple Global Account, worked *in Santa Clara, California* when he led the effort to market

---

[4] U.S. Patent No. 6,049,706, the patent ParkerVision voluntarily dismissed, has also expired.

the Products At Issue to Apple, and now works for a third-party, Qorvo, Inc., *in San Jose, California*; Hull Decl., at ¶ 17;

- The highly confidential schematics for the circuits in the Products At Issue are stored on servers *in Santa Clara, California*; a limited number of engineers *in Oregon, Arizona, and Santa Clara* have access to those schematics; no one in Texas has permission to access the servers.  Hull Decl., ¶ 18.

To Intel's knowledge, none of its former employees who worked on the design, development, sale, or marketing of the Products At Issue now works in Texas.  Hull Decl., ¶ 14.  Based on Intel's investigation, all former employees who worked on the design, development, sale, and marketing of the Products At Issue are located over 900 miles outside the Western District of Texas.  *Id.*, ¶ 15.

## III.   THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF OREGON

### A.   Legal Standard

Under 28 U.S.C. §1404(a), a district court may transfer a case to "any other district or division where it might have been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice . . . ."  28 U.S.C. §1404(a).  A motion to transfer venue involves a two-step analysis.  *First*, courts decide "whether a civil action 'might have been brought' in the destination venue."  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen*").  *Second*, courts consider eight factors to decide whether transfer would promote the convenience of the parties and witnesses and/or the interest of justice.  *Id.* at 314-15.  If analysis of those factors shows that the proposed transferee forum is "clearly more convenient" than the current forum, the case should be transferred.  *Id.* at 315; *see also, e.g.*, *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (transfer from E.D. Tex. to N.D. Cal. where case had "significant connections" to transferee forum and no likely sources of proof were in the transferor venue).[5]

---

[5] Unless otherwise noted, all internal citations and quotation marks have been omitted from case citations, and all emphasis is added.

**B.      Step 1:  This action could have been brought in the District of Oregon.**

The first step in the transfer analysis is easily met because ParkerVision could have brought this action in the District of Oregon.  It is beyond dispute that Intel has "a regular and established place of business" in Oregon:  Intel maintains its largest facilities in Oregon, where it employs over 21,000 employees, including Chris Hull, who designed key portions of the circuits ParkerVision accuses.  *See* Hull Decl., ¶¶ 6, 12; *see also* 28 U.S.C. §1400(b).  The District of Oregon would thus have personal jurisdiction over Intel and would also have subject matter jurisdiction over ParkerVision's claims for patent infringement.  Accordingly, the Court may transfer this case to the District of Oregon.  *Volkswagen*, 545 F.3d at 312.

**C.      Step 2:   The District of Oregon is clearly more convenient than the Western District of Texas.**

The second step of the analysis leaves no doubt that the District of Oregon is the "clearly more convenient" forum and that the case should be transferred.  At least five of the eight factors considered under §1404(a) favor transfer to the District of Oregon and the other three factors are neutral.  No factor favors the Western District of Texas.  *See In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (finding district court should have transferred where three of eight factors favored transfer, other factors were neutral, and no factor favored plaintiff's chosen division).

**1.      Factors Favoring Transfer**

**a.      Relative ease of access to sources of proof**

Under the first factor, "the question is *relative* ease of access, not *absolute* ease of access."  *Data Scape Ltd. v. Dell Techs. Inc. et al.*, No. 6:19-cv-129-ADA, D.I. 44, at 3 (W.D. Tex. June 7, 2019) (citing *Radmax*, 720 F.3d at 288); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Thus, if access to sources of proof is relatively easier in Oregon than in Waco, this factor supports transfer.  *See Data Scape*, No. 6:19-cv-00129-ADA, D.I. 44 at 3.  That is clearly the case here.

ParkerVision's allegations of infringement focus on the circuitry of the Products At Issue.  D.I. 14, ¶¶ 66-146. The highly confidential schematics that show the layout of the circuits at issue are stored on secure servers in Santa Clara, California.  *See* Hull Decl. ¶ 18. A small group of Intel engineers in Oregon have access to the schematics for the Products At Issue in the ordinary course of their business.  *Id.*  None of Intel's employees in Texas has access to the schematics for the Products At Issue.  *Id.*

The Federal Circuit has recognized that "the bulk of the relevant evidence usually comes from the accused infringer" in patent infringement cases.  *Genentech*, 566 F.3d at 1345; *see also id.* at 1346 ("Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred if the case were to proceed in the Northern District of California."); *see also Moskowitz Family LLC v. Globus Medical, Inc.*, No. 6:19-cv-672-ADA, D.I. 50 at 5 (W.D. Tex. July 2, 2020) (citing *Genentech*, 566 F.3d at 1345).   There can be no debate that schematics showing the layout of the circuits at issue will be key evidence in this case.  Intel has facilities and employees who access that critical source of proof in the ordinary course of business in Oregon, but not in Texas.  In fact, ***none*** of the relevant evidence is in the Western District of Texas.  *See, e.g.*, *Two-Way Media, LLC v. AT&T*, 636 F. Supp. 2d 527, 533 (S.D. Tex. 2009) (in granting transfer from Corpus Christi to San Antonio, "[t]he Court acknowledge[d] that the documentary evidence in this case originated from several sources that are located throughout the country. However, it is undisputed that *none* of the documentary evidence originated or now exists in the Corpus Christi Division.") (emphasis in original).

Access to sources of proof is therefore far easier in Oregon than in Waco or Austin, and the first factor supports transfer.  *Data Scape*, No. 6:19-cv-00129-ADA, D.I. 44, at 3 ("As Dell demonstrates, access to sources of proof is *relatively* easier in Austin than it is in

Waco.  This factor thus supports transfer.").

b.     **Cost of attendance of willing witnesses**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1343; *see also Moskowitz*, No. 6:19-cv-672, D.I. 50 at 8 (citing *Genentech*, 556 F.3d at 1342).  This factor "appropriately considers the cost of attendance of *all* willing witnesses," including both non-party and party witnesses.  *Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*, No. 1:14-CV-464-LY, 2014 WL 12479284, at *2 (W.D. Tex. Aug. 12, 2014) (emphasis in original).

Of the employees who remained at Intel after the sale of Intel's cellular modem business to Apple, the employee in the best position to address the circuits ParkerVision accuses of infringement works in Oregon.  ParkerVision's complaint contends that the local oscillator in the Products At Issue plays a role in the alleged infringement of each asserted patent, and contends that a 25% duty cycle in the Products At Issue plays a role in the alleged infringement of seven of the nine asserted patents.  D.I. 14, ¶¶ 70, 76-77, 83, 91, 97, 104-05, 110-11, 113, 120, 122, 130, 132, 143.  Chris Hull was one of the key designers involved with the local oscillator and has personal knowledge of the duty cycle in the Products At Issue. *See* Hull Decl., ¶¶ 12, 16.  Mr. Hull lives in Portland and works at Intel's facility in Hillsboro, Oregon.  *Id.*, ¶ 1.  Testifying at the Federal courthouse in Portland would clearly be more convenient for Mr. Hull than travelling 4,000 miles round-trip to testify in the Western District of Texas.

Oregon would likewise be more convenient for the multiple third-party witnesses in the Bay Area who will likely be called to testify at trial.  Kevin Constantine led Intel's effort to market the cellular transceivers at issue to Apple, but left Intel in February 2020 and now works for a third-party.  *Id.*, ¶ 17.  Both Mr. Constantine and his counterparts at Apple who selected the Products At Issue (and ultimately acquired much of Intel's cellular transceiver

10

business) all live in the Bay Area, which is a short commuter flight away from Portland. Travelling to and from Oregon to testify (requiring approximately a total of 4 hours of flights round trip) would be much more convenient for those witnesses than 11-hour round-trip flights to and from Waco or 7-hour round-trip flights to and from Austin. *See Moskowitz, Inc.*, No. 6:19-cv-672-ADA D.I. 50 at 9 (noting that "the cost of attendance of non-party witnesses [has] considerably more weight" in the transfer analysis).

On the other side of the ledger, Intel is not aware of any likely trial witnesses who reside in the Western District of Texas. Neither Intel nor ParkerVision has a facility in the Waco Division, and none of the Intel employees in Austin was involved in the development of the Products At Issue. *See* Hull Decl., ¶¶ 7, 14, 15, 19-20, 22-23. Similarly, based on public records, none of the living inventors reside in the Western District of Texas—they are scattered across the country in California, Florida, Idaho, the Northern District of Texas,[6] and Utah—and the prosecuting attorneys are based in Washington, D.C. and/or Utah. Choy Decl., Exs. 6-26. That variety of locations does not favor one district over the other.

Thus, if the litigation were to proceed in Texas, Intel's witnesses, willing non-party witnesses, and many of the listed inventors would "likely incur significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work"—expenses and losses that would be lessened if the case were to proceed in Oregon. *In re Acer*, 626 F.3d at 1255. For example, to testify at trial in Waco or Austin, Intel's witnesses in Portland and the non-party witnesses in the Bay Area would have to travel between approximately ***1,700 to 2,000 miles*** each way, with no direct flights to Waco. *See* Choy Decl., Exs. 27-30 (Google maps directions from Hillsboro, Oregon and the Bay Area to the U.S. District Courthouse in Waco). To testify in Oregon, on the other hand, Mr. Hull

---

[6] Based on public records, Mr. Jamison L. Young, is believed to reside in Keller Texas, which is in the Northern District of Texas. Mr. Young is listed as an inventor on a single asserted patent (the '474 patent).

would have to travel *fewer than 21 miles* without ever setting foot in an airport, and the non-party witnesses in the Bay Area would only have to travel fewer than *700 miles* each way on direct flights.  *See id.*, Exs. 31-34 (Google maps directions from Hillsboro, Oregon and the Bay Area to the U.S. District Courthouse in Portland).  Similarly, the listed inventors in California, Idaho, and Utah live closer to Portland than Waco.  There can be no doubt that the costs and burden of attendance for willing witnesses— particularly in the midst of the COVID-19 pandemic—would be significantly reduced if this case was transferred to Oregon.  *See Genentech*, 566 F.3d at 1343 ("When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses *increases* in direct relationship to the additional distance to be travelled.") (quoting *Volkswagen*, 545 F.3d at 317); *see also Moskowitz*, No. 6:19-cv-672, D.I. 50 at 9.  Accordingly, this factor weighs in favor of transfer.

> c.  **All other practical problems that make trial of a case easy, expeditious, and inexpensive**

This case is still in its earliest stages, and this Court has not yet invested judicial resources in construing the claims or analyzing the lengthy specifications of the nine asserted patents.  Nor has this Court analyzed any other ParkerVision patents, as this is ParkerVision's first suit in the Western District of Texas.  As such, transfer would not undermine judicial economy or cause any meaningful delay in the case schedule.  *Mimedx*, 2014 WL 12479284, at *2 ("Having been filed in May 2014, this case is at the earliest stages and the court has not yet entered a scheduling order.").  As a result, this factor also favors transfer.

> d.  **The administrative difficulties flowing from court congestion**

The court congestion factor also favors transfer.  Courts analyzing this factor may consider the speed with which a case can be tried and resolved. *Genentech*, 566 F.3d at 1347.  But as the Federal Circuit has noted, this factor is speculative, and "case disposition statistics

may not always tell the whole story." *Id.* Although this Court's default schedule for patent infringement actions anticipates proceeding from initial case management conference to trial in about 18 months, no patent cases have yet gone to trial in the Waco Division. As a result, there is no available data establishing that the time-to-trial is likely to be longer in the District of Oregon. In fact, existing historical data shows that since 2000, the median time to trial in the District of Oregon is as little as 22 months. *See* Choy Decl., Ex. 35 (Lex Machina statistics). By contrast, the median time to trial in the Western District of Texas is approximately 28 months. *Id.* Ex. 36 (Lex Machina statistics).

And even if evidence established that the time to trial for patent cases was shorter in this Court, that should be afforded little, if any, weight because the relative times to trial are not "of particular significance" where the plaintiff "does not make or sell any product that practices the claimed invention." *In re Morgan Stanley*, 417 Fed. App'x 947, 950 (Fed. Cir. 2011); *see also In re WMS Gaming, Inc.*, 564 Fed. App'x 579, 581 (Fed. Cir. 2014) (noting that the plaintiff's market position was not threatened because it did not practice the asserted patent). Here, ParkerVision abandoned product sales in 2019 and now focuses entirely on patent litigation. D.I. 14, ¶ 2; Choy Decl., Ex. 1 (ParkerVision Apr. 14, 2020 10-K) at 4 ("We ceased sales of our Milo products during the fourth quarter of 2019 in order to focus solely on patent enforcement actions."). As a non-practicing entity, ParkerVision has no particular need for a marginally quicker resolution of the case.

Finally, the total number of patent cases filed in each court supports transfer. The Waco Division has been inundated with patent infringement suits over the past 18 months. This year alone, this Division has seen 401 new patent infringement cases. *Id.* Ex. 37 (Docket Navigator statistics). If patent infringement filings continue at the same rate, approximately 768 new patent cases will be filed in this Division by year's end. By contrast, the District of Oregon has only 14 open patent cases currently. *Id.* Ex. 38 (Docket Navigator

13

statistics).  Thus, even considering the Court's default schedule for patent cases, the evidence shows that court congestion supports transfer of this case to the District of Oregon.

> e.    **The local interest in having localized interests decided at home**

This factor looks at the ***relative*** interest between the forums.  *Data Scape*, No. 6:19-cv-129-ADA, D.I. 44, at 6 ("[T]he local interest factor, like all § 1404 factors, is concerned with the *relative* interests between the transferee and transferor forums.").  The District of Oregon has a substantially greater interest in the outcome of this case than the Western District of Texas.  Intel maintains its largest facility in Oregon, where it employs over 21,000 people, including Mr. Hull, who designed key portions of the circuits at issue.  *See* Hull Decl., ¶¶ 1, 6, 12.  In contrast, neither Intel nor ParkerVision maintains a facility in the Waco Division, and no one at Intel's Austin facility even has access to the circuit designs at issue.  *Id*. ¶¶ 7, 18; *see DataQuill, Ltd., v. Apple, Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (ordering transfer to N.D. Cal. in part because "DataQuill has failed to demonstrate the existence of any meaningful documents at Apple's Austin campuses").  There is no question that Intel's many employees in Oregon and the Intel engineers in Oregon who contributed to the design of the circuits at issue have a greater stake in the outcome of this case than anyone in the Western District of Texas.  This factor thus also favors transfer.  *See Volkswagen*, 545 F.3d at 318 (local interest favored transfer where there were no connections between the case and the plaintiff's chosen forum).

> 2.    **Neutral Factors**

The remaining factors are neutral.  *First*, Intel is not currently aware of any unwilling third-party witnesses who would be subject to the compulsory subpoena power of either forum.[7]  *See* F.R.C.P. 45(c).  *Second*, both forums are eminently capable of applying patent

---

[7] If named inventor Mr. Young in fact lives in Keller, Texas (as public sources suggest), he could be commanded to attend trial in Waco or Austin if he would not incur substantial

law.  *See In re Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("The district court was further correct in concluding that it was in no better position than the Southern District of Ohio in deciding this patent case.  As the district court noted, '[p]atent claims are governed by federal law,' and as such 'both [courts are] capable of applying patent law to infringement claims.'" (citing *Lear Corp. v. TS Tech*, No. 2:07-cv-406, slip op. at 6 (E.D. Tex. Sep. 10, 2008)).  *Finally*, Intel is not aware of any conflicts of law that would weigh in favor of or against transfer.

## IV.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE AUSTIN DIVISION

If the Court nonetheless decides to keep this case in the Western District of Texas, Intel respectfully requests that the case be transferred to the Austin Division.  ParkerVision has agreed that the case should be transferred to Austin if this Court denies transfer to Oregon.  As set forth above, this case has no relevant connections to the Waco division.  Moreover, as between Waco and Austin, Austin would be relatively easier for Intel and third-party witnesses, all of whom reside outside of Texas.  Finally, because Austin has an Intel facility, it has a relatively greater interest in the resolution of this dispute than Waco.  *Radmax*, 720 F.3d at 290 (transfer appropriate where three factors favored transferee forum, and none favored transferor forum).

## V.   CONCLUSION

For the convenience of the parties and witnesses, and in the interest of justice, Intel respectfully requests that the Court transfer this case to the District of Oregon.  If the Court nonetheless decides to keep the case in the Western District of Texas, Intel respectfully submits that the case should be transferred to the Austin Division.

---

expense.  Fed. R. Civ. P. 45(c)(B)(ii).  Intel is not aware whether Mr. Young is willing or unwilling to testify live at trial at this stage of the case.

Dated:  July 10, 2020

Respectfully submitted,

*/s/ J. Stephen Ravel*

Michael J. Summersgill (admitted *Pro Hac Vice*)
Sarah B. Petty (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
T (617) 526-6000
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

J. Stephen Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
T (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
T (254) 710-7670
james.wren@baylor.edu

*Attorneys for Defendant Intel Corporation*

## CERTIFICATE OF CONFERENCE

Plaintiff opposes the relief sought by Defendant.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Civil Rule CV-5(b) on July 10, 2020.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

16