UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PARKERVISION, INC.<br><br>                  Plaintiff,<br><br>vs.<br><br>INTEL CORPORATION<br><br>                  Defendant. | C.A. No.  6:20-cv-108-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT INTEL CORPORATION'S RESPONSE TO PARKERVISION'S SUPPLEMENTAL SUBMISSION REGARDING THE DISTRICT OF OREGON AND IN SUPPORT OF INTEL'S MOTION TO TRANSFER**

Intel respectfully submits this response to ParkerVision's September 4, 2020 Supplemental Submission (D.I. 45).

*First*, the potential for a stay in the transferee forum is not a relevant consideration in this case because Intel has already stated on the record that it does not intend to move to stay this action. ParkerVision argues that a court in Oregon could nevertheless *sua sponte* stay the case pending Intel's two petitions for IPR, but Intel has searched and found no instance where a judge in the District of Oregon has *sua sponte* stayed a patent case pending a petition for IPR, let alone where seven of nine asserted patents are not subject to IPR proceedings, as is the case here. As a result, the possibility of a stay pending IPR is not relevant to this case.

*Second*, even if there were a possibility of a stay, Federal Circuit precedent strongly suggests that where, as here, multiple factors weigh in favor of transfer, the potential for a stay in the transferee forum does not provide a valid basis to deny transfer. *In re Adobe, Inc.*, No. 2020-126, 2020 WL 4308164, at *3 (Fed. Cir. July 28, 2020); *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). In both *Adobe* and *Genentech*, the Federal Circuit found that where "'several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.'"

*Adobe*, 2020 WL 4308164, at *3 (quoting *Genentech*, 566 F.3d at 1347).  A stay is only potentially relevant in that it would impact time to trial so it follows that the mere possibility of a stay—*i.e.*, that the time to trial could be extended—cannot be grounds to deny transfer.  Accordingly, even if a stay pending IPR was a possibility if this case was transferred to Oregon—and it is not as stated above—it would still not be a valid basis to deny transfer.  *Id.*; *see also* D.I. 30 (Intel Br.) at 8-15 (identifying five factors that weigh in favor of transfer and three neutral factors).

Neither of the two district court decisions ParkerVision cites establishes otherwise.  Instead, both involved circumstances where:  (1) a party moved to transfer a case to a jurisdiction in which a related case was pending but stayed; and (2) the transferor courts found that the stay merely neutralized the movant's argument that the existence of the related case justified transfer.  In *Uniloc USA, Inc. v. Huawei Device USA, Inc.*, No. 2:17-CV-00736, 2018 WL 7138384 (E.D. Tex. Sept. 6, 2018), the question was whether transfer to a court that was already handling an earlier-filed case (which had been transferred from E.D. Tex. to N.D. Cal. and then stayed) involving the same, single asserted patent would serve judicial economy.  The moving party argued that transfer "will avoid duplicative litigation concerning claim construction and invalidity."  *Id.* at *5.  The court disagreed, finding that because ***the related case*** was already stayed pending IPR, the transferee court would not reach issues of claim construction or invalidity before the Eastern District of Texas.  *Id.*  Even then, the court did not find that the stay weighed ***against*** transfer but only that the relevant factor (the "all other practical problems" factor) was ***neutral***.  *Id.*

Similarly, in *J2 Global Comm's, Inc. v. Protus IP Soln's, Inc.*, No. 6:08–CV–211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009), the question was whether to transfer to a forum that was already handling a related earlier-filed case that had been stayed.  *Id.* at *6.  The movant argued that the existence of the related case favored transfer.  *J2 Global Comm's, Inc.*

*v. Protus IP Soln's., Inc.*, No. 6:08–CV–211, 2008 WL 5378010, at *5 (E.D. Tex. Dec. 23, 2008). Like the court in *Uniloc*, the court in *J2* disagreed, finding that the fact that the related case was stayed meant that consideration of judicial economy was *neutral*. *J2 Global*, 2009 WL 440525, at *6 ("Defendants have failed to show that judicial economy would best be served by transferring these cases.").

In short, neither case supports the proposition that the possibility that a case will be stayed weighs against transfer.  Both cases found that the existing stays in the transferee forum were *neutral* as to transfer, and indeed, ParkerVision itself admits that the possibility of a stay pending IPR in Oregon is *neutral* as to transfer.  D.I. 45 (ParkerVision Suppl. Submission) at 2 ("That 83% of cases in the District Court of Oregon are stayed pending an IPR does not favor transfer; at best, *it is neutral*.") (emphasis added).  A neutral factor cannot shift the balance of the transfer factors here, particularly where so many factors weigh in favor of transfer, and none weigh against.  *See In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013) (finding district court should have transferred where three of eight factors favored transfer, other factors were neutral, and no factor favored plaintiff's chosen division).

*Finally*, ParkerVision's attempt to suggest that the District of Oregon does not move cases forward expeditiously is simply wrong.  The Lex Machina data in the record shows that cases in the District of Oregon reach trial in 22 months on average, as compared to an average of 28 months in the Western District of Texas.  *See* D.I. 30-36, 30-37 (Choy Decl. Exs. 35, 36).  Moreover, the District of Oregon continues to move its cases forward efficiently, notwithstanding the COVID-19 pandemic and recent protests in Portland.  As proof of that fact, Intel submits the declaration of Renee Rothauge, a partner at the Portland office of Perkins Coie, who has practiced in Portland for 30 years, appeared before all but one judge in the District of Oregon, and litigated 21 patent cases in Oregon.  Rothauge Decl. ¶¶ 3-6.  As Ms. Rothauge explains, cases in Oregon are moving forward without significant

disruption, notwithstanding the pandemic and protests. Rothauge Decl. ¶¶ 10-14. Tellingly, a patent case this Court transferred from the Western District of Texas to the District of Oregon (under 28 U.S.C. § 1400(b)) just over a month ago had a telephonic scheduling conference within 24 days of this Court's transfer order. D.I. 44-12 (Ex. N-10) at D.I. 82 ("Telephonic conference held on 8/20/2020.").

The fact that only two of the thirteen current patent cases ParkerVision identified have trial dates does not weigh against transfer. As an initial matter, ParkerVision's analysis of only *pending* cases creates a skewed perspective on time to resolution in the District of Oregon by excluding cases that have *already* been resolved because they moved quickly (just like measuring life expectancy by considering only people who are still alive would lead to invalid results). In any event, different courts have different practices for when they set trial dates. The data described above show that, despite the differences in the manner in which trial dates are set, the District of Oregon is comparable to this District in terms of overall time to trial. Moreover, most cases—in Oregon *and* in this district—resolve before trial, as demonstrated by the three Intel cases in the District of Oregon that ParkerVision identified. D.I. 44-17 at D.I. 174 (dismissing case with prejudice after a stipulated motion to dismiss one month after the claim construction order); D.I. 44-18 at D.I. 170, 171 (dismissing case after claim construction briefing, but before the claim construction order); D.I. 44-19 at 216, 227 (dismissing case after granting Intel's motion for summary judgment).

In short, nothing in either party's research since the September 2, 2020 hearing weighs against transfer. For all the reasons stated in Intel's briefs—that there are no material connections to the Western District of Texas; that key evidence and witnesses are in the District of Oregon; and that the case involves a business unit that Intel sold, making Intel engineer Mr. Hull's testimony all the more critical and increasing the number of third parties with material knowledge—this case remains uniquely appropriate for transfer to Oregon.

Dated:  September 8, 2020

Michael J. Summersgill (admitted *Pro Hac Vice*)
Sarah B. Petty (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
T (617) 526-6000
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

Respectfully submitted,

*/s/ J. Stephen Ravel*
J. Stephen Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
T (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
T (254) 710-7670
james.wren@baylor.edu

*Attorneys for Defendant Intel Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 8, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system in accordance with Local Rule CV-5.

*/s/ J. Stephen Ravel*
J. Stephen Ravel