**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **PARKERVISION, INC.,** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION 6:20-cv-00108-ADA** |
| | § | |
| **INTEL CORPORATION,** | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |
| | § | |

**ORDER DENYING DEFENDANT INTEL'S
MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

Came on for consideration this date the Motion of Defendant Intel to transfer under 28 U.S.C. § 1404(a), filed on July 10, 2020. ECF No. 30. Plaintiff ParkerVision moved for an extension of time to respond on July 15, 2020 (ECF No. 31) that was granted and responded on August 7, 2020 (ECF No. 33). ParkerVision subsequently clarified its position on the motion to transfer on August 19, 2020. ECF No. 36. Intel responded to ParkerVision's clarification of their position on transferring the case on August 26, 2020. ECF No. 41. The Court then held a hearing on this motion on September 2, 2020. ECF No. 43. On September 4, 2020, ParkerVision filed supplemental declarations post-hearing, which the Court has also taken into consideration. ECF No. 44, ECF No. 45. Intel replied to ParkerVision's supplemental submission on September 8, 2020. ECF No. 46. ParkerVision filed a notice of new facts relevant to Intel's motion to transfer on December 2, 2020 (ECF No. 62), and Intel filed a response on December 3, 2020 (ECF No. 63).

After careful consideration of the above briefing and the arguments presented at the hearing, the Court **DENIES** Intel's motion to transfer the case to the District of Oregon and

**DENIES** Intel's alternative motion to transfer the case to the Austin Division of the Western District of Texas, for the reasons described below.

## I.        Factual Background and Procedural History

ParkerVision filed this lawsuit on February 11, 2020 alleging infringement of U.S. Patents No. '706, '902, '444, '474, '725, '513, '736, and '673. ECF No. 1 at 9-12. The patents chiefly concern RF chips that are used in mobile devices. *Id.* at 8. ParkerVision then filed an amended complaint on May 15, 2020 that alleged infringement of two additional patents, the '518 patent and the '528 patent. ECF No. 14. Intel made and sold three wireless chips — Intel PMB 5750, PMB 5757, and PMB 5762 — that ParkerVision accuses of infringing upon their patents. ECF No. 33 at 4. These chips are used in (among other devices) Apple's iPhones and provide means for the phones to communicate with cellular networks. *Id.*

Intel filed a motion to transfer venue under 28 U.S.C. § 1404(a) requesting that the case be transferred to the District of Oregon or, in the alternative, to the Austin Division of the Western District of Texas ("WDTX"). ECF No. 30 at 1.

## II.        Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612,622 (1964)). The party moving for transfer carries the burden of showing good cause. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "Volkswagen II")

("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must ... clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)). However, it is not enough for the movant to merely show that the transferee venue is *as convenient* as the transferor venue. The movant must show the transferee venue is clearly *more convenient*. *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient.").

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(l) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "Volkswagen I") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(l) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A court may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018). A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to that choice. *Volkswagen II*, 545 F.3d at 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315; *see also QR Spex*, *Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under§ 1404(a) as "heavy").

### III.    Discussion Regarding Transfer to the District of Oregon

As a preliminary matter, neither party contests that venue is proper in the District of Oregon and that this action could have been filed there. This fact is sufficient to satisfy the threshold question of whether the civil action could have initially been brought in the requested venue. *Volkswagen II*, 545 F.3d at 312.

#### a.  Relative ease of access to sources of proof

In considering the relative ease of access to proof, a court looks to where documentary evidence is stored. *Volkswagen II*, 545 F.3d at 316. "To properly consider this factor, parties must "describe with specificity the evidence they would not be able to obtain if trial were held in the [alternate forum]." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).

Intel argues that this factor weighs in favor of transfer because "access to sources of proof is relatively easier in Oregon than in Waco." ECF No. 30 at 8. More specifically, Intel

states that schematics depicting the circuits at issue are stored on servers in Santa Clara, California, and Intel's engineers in Oregon have access to the schematics, rather than Intel's Texas employees. *Id.* at 9. Intel asserts that the schematics will be key evidence and that "***none*** of the relevant evidence is in the Western District of Texas." *Id.*

In its response, ParkerVision argues that this factor weighs against transfer because the accused chips were designed in Austria and Germany, not Oregon, and documents and witnesses may be located primarily in those countries. ECF No. 33 at 7. Additionally, Plaintiff highlights that only a single employee identified as having information relevant to the case and "not any design, marketing, or financial documents" are located in Oregon. *Id.* This employee, Mr. Hull, was seemingly involved in designing only one feature in one of the three accused chips. *Id.* at 8. And importantly, he seems to have had no involvement in designing the features relevant to this patent suit. *Id.* In other words, ParkerVision alleges that Intel's highlighted witnesses, while located in or near Oregon, do not offer testimony that is particularly relevant to the case at hand. *Id.* at 9. ParkerVision further argues  that (1) the schematics Intel identifies are housed on servers that are not in Oregon and (2) the electronic format of the schematics means they are likely also accessible from Intel's office in Austin. *Id.* at 10. Additionally, Plaintiff points out that no other documents besides the schematics are mentioned to support the transfer to Oregon. *Id.*

The Court finds that the "relative ease of access to sources of proof" does not weigh for or against transfer for the following reasons. First, although ParkerVision asserts that the relevant documents would be accessible from the Western District of Texas, because Intel is the accused infringer, it is likely that it will possess the bulk of the documents that are relevant in this case. *See, e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently,

the place where the defendant's documents are kept weighs in favor of transfer to that location."). However, it appears that any documents Intel may possess pertaining to the accused products – including the most relevant schematics – are located on remote servers and not in Oregon. ECF No. 30 at 9. While it may be that none of the relevant documentary evidence is located in the Western District of Texas, it would appear that none is located in Oregon either. And Intel fails to explain why engineers in Oregon are better equipped than those in Texas to access a server in California.[1]

---

[1] Although the Court wishes to make clear that it has followed Fifth Circuit precedent regarding this factor, the Court believes that the factor itself is at odds with the realities of modern patent litigation. In patent disputes like the one now before the Court, relevant documents are typically located on a server, which may or may not be in the transferee district (or given the use of cloud-based storage, may be located on multiple servers in multiple districts, or even multiple countries) and are equally accessible from both the transferee and transferor districts. Therefore, in this Court's view, there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic. District courts — particularly those with patent-heavy dockets that have very significant document productions — have recently begun to acknowledge this reality. *Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-00642-JRG, ECF No. 216 at 8-9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality in favor of a fictional analysis that has more to do with early Xerox machines than modem server forms.").  However, under current Fifth Circuit precedent, the physical location of electronic documents affects this factor's outcome. *See, e.g., Volkswagen II*, 545 F.3d at 316. Even though it would not have changed the outcome of this motion, this Court expresses its hope that the Fifth Circuit will consider addressing and amending its precedent  to explicitly give district courts the discretion to fully  consider the ease of accessing electronic documents.

**b. Availability of compulsory process to secure the attendance of witnesses**

In analyzing this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses — particularly non-party witnesses whose attendance may need to be secured by a court order. *Id.*

Intel "is not aware of any unwilling third-party witnesses who would be subject to the compulsory subpoena power of either forum" and asserts that this factor is neutral. ECF No. 30 at 14. ParkerVision, however, asserts that this factor weighs against transfer because Apple and Foxconn both have offices in Austin, and they "may have relevant knowledge about the accused products in this case." ECF No. 33 at 11-12. While neither Apple nor Foxconn are parties in this case, ParkerVision asserts that Apple's purchase of Intel's wireless chip business in December 2019 indicates that they may possess relevant documents or have relevant information through former Intel employees. *Id.* at 5, 11-12. Apple and Foxconn's location within the Western District of Texas puts them within subpoena power of this Court, which would not be available in Oregon. *Id.* at 12. Furthermore, one of the listed inventors of the patents, Mr. Young, may be subject to compulsory process because he resides in Texas. ECF No. 30 at 14-15 n.7. Mr. Young would also not be subject to the subpoena power of a Court in Oregon.

The Court finds this factor generally weighs against transfer. The fact that Apple and Foxconn are potential third-parties and are subject to the compulsory process of this Court tends to weigh against transfer. The fact that an inventor of a patent-in-suit is subject to the compulsory process of this Court tends to weigh against transfer. And finally, the fact that Intel has not alleged any non-party witnesses that would be subject to compulsory process in Oregon tends to weigh against transfer. Put simply, potential non-party witnesses are located within the

7

Western District Texas. To the best of the Court's knowledge, no such witnesses reside in the District of Oregon..

### c.  Cost of attendance for willing witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). The Court should consider all potential material and relevant witnesses. *See A/acritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343. The convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010).

As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses —and even fewer third-party witnesses, if any — will testify live at trial. Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor.

First, Intel contends that the "employee in the best position" to address the accused circuits, Chris Hull, lives and works in Oregon. ECF No. 30 at 10. Furthermore, Oregon would be more convenient for the "multiple third-party witnesses in the Bay Area." *Id.* These witnesses include Kevin Constantine, a former Intel employee, and his counterparts

at Apple who negotiated with him. *Id.* at 10-11. Intel further argues that neither party has a facility in the Waco Division, no Austin Intel employees were involved in the development of the Products at Issue, and no listed inventors of the accused patents live in the Western District of Texas. *Id.* at 11. Intel also points out that some of the listed inventors reside in California, Utah, and Idaho and that they would more easily travel to Oregon from those state than to Texas. ECF No. 30 at 12. Finally, Intel describes multiple-third-party witnesses in the Bay Area, for whom Oregon would be a much more convenient venue.

In its response, ParkerVision notes first that some Intel engineers who worked on the accused chips are located in Europe and that a flight to Austin would be shorter than a flight to Portland. ECF No. 33 at 12. Moreover, ParkerVision witnesses are located in Florida, which is much closer to the Western District of Texas than the District of Oregon. *Id.* at 13.  As for potential third-party witnesses, ParkerVision points out that some former Intel engineers who worked on the accused patents also reside in Europe. *Id.* at 12. As is the case for any party witnesses traveling from Europe, the large distance these third-party-witnesses would need to travel would make any added mileage a significant burden. Other former Intel engineers are now employed by Apple, which (like Intel) has an office in the Western District of Texas. *Id.* at 12. Apple does not have an office in Oregon. *Id.* Finally, while ParkerVision acknowledges that patent inventors are spread across the country, it also notes that several reside in Florida and one resides in Texas. *Id.*

The Court finds that the convenience of party witnesses weighs against transfer. Though Oregon would clearly be more convenient for witnesses like Mr. Hull, who

reside in Oregon, it would be quite inconvenient for any party witnesses traveling from Europe. Moreover, it would be easier for Florida-based ParkerVision to travel to the Western District of Texas than to Oregon. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (holding that courts may consider the convenience of plaintiffs in its analysis.) Put simply, the Western District of Texas would likely serve as something of a midpoint for both parties' potential witnesses. But as noted above, courts give the convenience of party witnesses little weight.

More to the point, the Court must consider the convenience of third-party defendants and witnesses. *Volkswagen II* , 371 F.3d 201, 205 (5th Cir. 2004). While Oregon is more convenient for potential third-party witnesses in the Bay Area, those witnesses still reside outside the District of Oregon. The third-party witnesses that ParkerVision describes are located within the Western District of Texas. Because it is likely cheaper for one set of third-party witnesses to travel to the Western District of Texas than it is for two sets of third-party witnesses to travel to the District of Oregon, these facts tends to weigh against transfer.

Finally, as previously noted, the patents' listed inventors are spread throughout the United States and do not reside within either judicial district. Given their varied locations across the country, the somewhat centrally located Western District of Texas is considerably more convenient than a judicial district situated on the west coast. Indeed, Intel itself notes that six listed inventors live in Florida and one in Texas, suggesting that travel to the Western District would likely be less expensive for the majority of listed inventors. ECF No. 30 at 6.

Because it is likely more convenient for the majority of party witnesses, third-party witnesses, and the listed inventors to travel to the Western District of Texas than to Oregon,

the Court finds that the cost of attendance of willing witnesses factor weighs against transfer.

### d. All other practical problems that make trial of a case easy, expeditious and inexpensive

Intel asserts that this factor favors transfer because the Court has not yet invested significant judicial resources in the case, so judicial economy would not be undermined. ECF No. 30 at 12. In its response, ParkerVision contends that transferring this case to Oregon would delay the parties and that significant resources have already been invested in the case in the Western District of Texas. ECF No. 33 at 13-14. Plaintiff further states that Defendant's motivation for seeking a transfer is because "it believes there is a greater chance of obtaining a stay pending IPRs." *Id.* at 14. Based on Docket Navigator, from 2017-present, the District Court of Oregon has stayed cases pending IPRs 83% of the time, while this Court has stayed cases 30% of the time. *Id.* at 14 n.11.

Intel counterargues that the "potential for a stay in the transferee forum is not a relevant consideration" because Intel has stated that it does not intend to move to stay this action, the District of Oregon has not moved *sua sponte* for a stay pending IPR, and seven of the nine asserted patents in this case are not subject to IPR proceedings. ECF No. 46 at 1. Furthermore, according to Intel, Federal Circuit precedent suggests the potential for a stay in the transferee forum is a neutral factor and does not outweigh multiple other factors in favor of transfer. *Id.* at 1-3. Intel reasserts that cases are moved forward more expeditiously in the District of Oregon than in the Western District of Texas based on Lex Machina data and the declaration of a lawyer currently practicing in Portland. *Id.* at 3-4.

Finally, since filing the action against Intel, ParkerVision has subsequently filed various suits in the Western District, all concerning nearly identical patents to those asserted in this case. ECF No. 62 at 2. ParkerVision argues that this weighs against transfer of the case, since trying

11

all related cases in the Western District of Texas would minimize conflicting rulings and preserve judicial resources. *Id.* at 2-3. But Intel argues that the transfer analysis must be evaluated at the date the case was filed — meaning that ParkerVision's subsequently filed cases should not be considered in the transfer analysis. *Id.* at 1-2. Intel also asserts that the newly filed cases involve different technologies, products, witnesses, and evidence.. *Id.* at 2-3. Next, Intel states that the Court has not invested significant judicial resources in this case, and that new facts that ParkerVision asserts do not have any bearing on judicial economy. *Id.* at 3. Finally, Intel points out that ParkerVision has cases concerning the present accused patents that have progressed past claim construction in other federal district courts, indicating that "judicial economy benefits and consistent claim construction rulings" are not present because ParkerVision has already chosen to assert the same patents in multiple venues. *Id.* at 3-4.

While judicial economy may be served by having the Court try cases that involve the same patents, cases involving the same patents but different defendants, products, and witnesses will not necessarily be expedited by being in the same court. *See Hammond Dev. Int'l, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 110984 (W.D. Tex. June 24, 2020) (denying motion to transfer venue and finding that judicial economy was served by having the same district court try cases involving the same patents). Additionally, the new cases ParkerVision filed concerning the same patents were not  filed in this Court  before the current action , and the transfer analysis must be evaluated at the date  this case was filed. These facts do not weigh against transfer but remain neutral.

While the Court has invested significant judicial resources into the case at this point, that investment itself does not make trial significantly easier, more expeditious, or less costly in the Western District. Similarly, the data provided by the parties indicates that there is greater

potential for a stay in Oregon. But since most of the patents in the case are not subject to the IPR process, this fact would also not significantly impact the trial process. With the above in mind, the Court finds this factor does not weigh in favor or against transfer.

### e. Administrative difficulties flowing from court congestion

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963). The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

Based on Lex Machina data, Intel states that patent cases reach trial more quickly in the District of Oregon (22 months) than in WDTX (28 months), then argues that time to trial "should be afforded little, if any, weight" when the plaintiff does not make or sell products involving the claimed invention. ECF No. 30 at 13. Based on Docket Navigator statistics, Intel also highlights that the Waco Division has seen 401 patent infringement cases filed in 2020 at the time of their motion's filing, contrasted with the District of Oregon's 14 total open patent infringement cases. *Id.* Thus, Intel asserts that this factor supports transfer of the case. *Id.* at 14.

In its response, ParkerVision cites United States District Court statistics over a 12-month period ending March 21, 2020, which show that the median time to trial in WDTX is 24.6 months versus 25 months in Oregon. ECF No. 33 at 14. ParkerVision states that the trial date in this case is set for February 7, 2022, and it is not likely the Oregon court would conduct a trial by or before February 2022 in the event of a transfer, based on the medium times to trial. *Id.*

ParkerVision's time-to-trial statistics concern all cases within the Western District of Texas, whereas Intel's statistics focus on patent cases. Because the statistics proffered by the

parties are from different sources and cover different time frames, comparing the two is not an

exact science.  Further, the comparison of time to trial throughout the Western District of Texas

may overlook a faster time-to-trial within the Waco Division. Importantly, the Waco Division

has its own patent-specific Order Governing Proceedings ("OGP") that ensures efficient

administration of patent cases.

In fact, a trial date has already been set in February 2022, which is roughly 13 months

away. While the proffered statistics indicate that time to trial for patent cases may be faster in

Oregon, it does not constitute an "appreciable difference in docket congestion." And because a

trial date has already been set that is roughly 24 months from the case's filing, docket congestion

is not a reason to transfer the case. Based on the parties' statistics, the existing trial date was set

sooner than average for both patent and overall cases in the Western District of Texas. Indeed,

though there are significantly more patent cases currently filed in the Western District of Texas

than in the District of Oregon, the time between ParkerVision's filing and its 2022 trial date

is quite comparable to the stated time-to trial for patent cases in Oregon. If anything, these facts

indicate a greater efficiency of bringing patent cases to trial in the Western District of Texas than

in the District of Oregon. This factor weighs against transfer.

### f.  Local interest in having localized interests decided at home

There is "a local interest in having localized controversies decided at home." *Gulf Oil

Corp. v. Gilbert*, 330 U.S. 501, 511 (1947); *Piper Aircraft*, 454 U.S. 235, 260 (1981).

Intel asserts that the District of Oregon has a "substantially greater interest in the outcome

of this case" than the Western District of Texas because Intel's largest facility is in Oregon, over

21,000 Intel employees work there, and neither party has a facility in the Waco Division. ECF

No. 30 at 14. Furthermore, Intel states that Intel's employees in Oregon have a greater stake in

the outcome than anyone in the WDTX because they contributed to the design of the circuits at issue. *Id.*

In its response, ParkerVision argues that Intel has "no more of an interest to have this case heard in Oregon than in another state where Intel has an established place of business, including Austin." ECF No. 33 at 15. Furthermore, ParkerVision asserts that Intel concedes in its alternative motion for transfer that Austin has an interest in this case due to Intel's facility there. *Id.* ParkerVision also notes that Apple has an office in Austin, further indicating the local interest in resolving the dispute within the Western District of Texas due to Apple's connection to the accused products. *Id.*

The Court finds that this factor weighs against transfer. First, Intel has a significant number of employees in both Oregon and the Western District of Texas, so both districts have a significant interest in this case. As such, the Western District of Texas has a localized interest with respect to Intel. Weighing each district equally, Intel's contribution to this factor is neutral. ParkerVision itself does not have a presence in the Western District of Texas or the District of Oregon that would constitute a localized interest, so ParkerVision's contribution could  also be seen as neutral.  But, as ParkerVision alleges,  Apple's presence in this district may also contribute towards a higher localized interest in this case because they now control the development of some accused products. *Id.* at 7. More specifically, Apple has over 7,000 employees in the Western District of Texas. *Id.* Given that Apple is a large Austin employer and may be involved in designing infringing products in this case, Apple's significant presence in this District weighs against transfer. *See, e.g., Tex. Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 647 (E.D. Tex. Jan. 12, 2011) (holding that third-party manufacture of accused product within the transferor district "creates" a local interest).

Accordingly, given that both Intel and ParkerVision's presence in both districts is neutral, Apple's presence in the Western District of Texas weighs against transfer, and the Court finds that the local interest in having localized interests decided at home weighs against transfer.

### g.   Familiarity of the forum with the law that will govern the case

Both parties agree that this factor is neutral. ECF No. 30 at 14-15 (Intel), ECF No. 33 at 15 (ParkerVision). The Court also agrees.

### h.   Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral. ECF No. 30 at 15 (Intel), ECF No. 33 at 15 (ParkerVision). The Court also agrees.

### i.   Summary of Findings

Having found that the access to proof, other practical problems, familiarity of the forum, and conflict of laws factors are neutral, and that compulsory process to secure the attendance of witnesses, cost of attendance for willing witnesses, court congestion, and localized interest factors weigh against transfer, the Court finds that Intel has not met its "heavy burden" to demonstrate that the District of Oregon is "clearly more convenient." *Volkswagen II*, 545 F.3d at 314 n.10, 315; *QR Spex*, 507 F. Supp. 2d at 664.

### IV.   Discussion regarding alternative motion to transfer to Austin

Intel's alternative motion is to transfer this case to the Austin Division because Austin would be relatively more convenient for Intel and third-party witnesses, and the Intel facility in Austin indicates a greater interest in the resolution of this dispute in Austin than in Waco. ECF No. 30 at 15. ParkerVision disagrees that this case should be transferred to Austin because a different case schedule in the Austin Division means it "would not be a clearly more convenient forum than Waco." ECF No. 36 at 2. Intel points out that ParkerVision initially advocated for a

transfer to Austin and reasserts that this case has no material connection to the Waco Division. ECF No. 41 at 1-2. Intel also argues that ParkerVision has not indicated how further discovery will change the transfer analysis factors. *Id.* at 2.

The Court does not agree that the Austin Division is more convenient than the Waco Division because the transfer would not improve judicial efficiency, and the Waco Division has already set a clear schedule for the case. Therefore, the Court finds that Intel has not met its "heavy burden" of demonstrating that Austin is "clearly more convenient" than Waco.

## V.    Conclusion

It is therefore **ORDERED** that Intel's motion for transfer venue to the District of Oregon is **DENIED**. It is further **ORDERED** that Intel's alternative motion is **DENIED** and that the above-styled case remain on the docket of United States District Judge Alan D Albright and according to the scheduling order that was entered in this case on October 8, 2020.

Signed on January 26, 2021.

The Honorable Alan D Albright
US District Judge