**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

PARKERVISION, INC.,

               Plaintiff,

    vs.

INTEL CORPORATION,

               Defendant.

Civil Action No. 6:20-cv-00108-ADA

 **JURY TRIAL DEMANDED**

**INTEL CORPORATION'S OPPOSED MOTION FOR FURTHER CLAIM
CONSTRUCTION IN LIGHT OF PARKERVISION'S REPRESENTATIONS IN IPR
PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................1

II.    STATEMENT OF FACTS ................................................................................................3

     A.     ParkerVision Persuaded This Court To Construe The Down-
           Converter Terms To Have Their Purported Plain And
           Ordinary Meaning ...........................................................................................3

     B.     To Avoid Prior Art In Subsequent IPR Proceedings,
           ParkerVision Clearly And Unequivocally Disclaimed "Mixers"
           And "Mixing" .................................................................................................5

III.   ARGUMENT ...................................................................................................................8

     A.     ParkerVision's Unequivocal Representations To The PTAB
           Constitute A Clear Disclaimer of Claim Scope .................................................8

     B.     Having Preserved Validity By Disclaiming Claim Scope,
           ParkerVision Should Not Be Permitted To Now Walk Back
           Its Disclaimer ...............................................................................................13

IV.   CONCLUSION ............................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ajinomoto Co. v. International Trade Commission,*
    932 F.3d 1342 (Fed. Cir. 2019)..................................................................14

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mutual Pharmaraceutical Co.,*
    384 F.3d 1333 (Fed. Cir. 2004)..................................................................10

*Atofina v. Great Lakes Chemical Corp.,*
    441 F.3d 991 (Fed. Cir. 2006)...................................................................15

*Aylus Networks, Inc. v. Apple Inc.,*
    2016 WL 270387 (N.D. Cal. Jan. 21, 2016) .................................................8

*Aylus Networks, Inc. v. Apple Inc.,*
    856 F.3d 1353 (Fed. Cir. 2017)..........................................................1, 2, 8, 9

*Cook Group Inc. v. Boston Scientific Scimed, Inc.,*
    809 F. App'x 990 (Fed. Cir. 2020) ...........................................................15

*David Netzer Consulting Engineer LLC v. Shell Oil Co.,*
    824 F.3d 989 (Fed. Cir. 2016)...................................................................10

*Di Piazza v. Weather Grp. Television, LLC,*
    2021 WL 3598282 (N.D. Tex. Mar. 23, 2021) .............................................15

*Huawei Technologies Co. v. T-Mobile US, Inc.,*
    2017 WL 4385567 (E.D. Tex. Sept. 9, 2017), *report and recommendation adopted,* 2017 WL 4310161 (E.D. Tex. Sept. 28, 2017) ...............................9

*iLight Technologies, Inc. v. Fallon Luminous Prods. Corp.,*
    2010 WL 2330396 (Fed. Cir. 2010)......................................................11, 12

*MarcTec, LLC v. Johnson & Johnson,*
    394 F. App'x 685 (Fed. Cir. 2010) ...........................................................15

*MLC Intellectual Property, LLC v. Micron Technology, Inc.,*
    2018 WL 4616255 (N.D. Cal. Sept. 26, 2018) .............................................9

*Norian Corp. v. Stryker Corp.,*
    432 F.3d 1356 (Fed. Cir. 2005)..................................................................14

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.,*
    521 F.3d 1351 (Fed. Cir. 2008)...............................................................2, 3

*Omega Engineering, Inc v. Raytek Corp.*,
    334 F. 3d 1314 (Fed. Cir. 2003)....................................................................11, 12

*Ormco Corp. v. Align Tech., Inc.*,
    498 F.3d 1307 (Fed. Cir. 2007)...............................................................2, 10, 11

*Personalized Media Communications, LLC v. Apple Inc.*,
    952 F.3d 1336 (Fed. Cir. 2020)........................................................................11

*Ramot at Tel Aviv University Ltd. v. Cisco Systems, Inc.*,
    2020 WL 2517581 (E.D. Tex. May 15, 2020)....................................................8

*Ravgen v. Natera*,
    No. 20-CV-00692-ADA (W.D.T.X. Nov. 8, 2021)....................................10, 11

*Samsung Electronics Co. v. Elm 3DS Innovations, LLC*,
    925 F.3d 1373 (Fed. Cir. 2019)....................................................................2, 12

*Seachange International, Inc. v. C-COR, Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005)........................................................................11

*Sentry Protection Products, Inc. v. Eagle Manufacturing. Co.*,
    400 F.3d 910 (Fed. Cir. 2005)..........................................................................11

*Shire Development, LLC v. Watson Pharmaceuticals, Inc.*,
    787 F.3d 1359 (Fed. Cir. 2015)........................................................................11

*Spectrum International, Inc. v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1998)......................................................................1, 8

*Technology Properties Ltd. v. Huawei Technologies Co.*,
    849 F.3d 1349 (Fed. Cir. 2017)........................................................................14

*Traxcell Technologies, LLC v. Nokia Sols. & Networks Oy*,
    15 F.4th 1136 (Fed. Cir. 2021) .......................................................................14

*Watts v. XL Systems, Inc.*,
    232 F.3d 877 (Fed. Cir. 2000)..........................................................................12

*X One, Inc. v. Uber Technologies, Inc.*,
    440 F. Supp. 3d 1019 (N.D. Cal. 2020) ............................................................9

## STATUTES, RULES, AND REGULATIONS

Fed. R. Evid. 801(d)(2)(A) ...............................................................................16

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Federal Circuit has made clear that positions taken by a patent owner in *inter partes* review ("IPR") proceedings become a relevant part of the prosecution history that should properly be considered in claim construction.  *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359-61 (Fed. Cir. 2017).  This ensures "claims are not argued one way in order to maintain their patentability and in a different way against accused infringers."  *Id.* at 1360.  It also protects the public's "right to rely on such definitive statements made during prosecution."  *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998) (quotations and citation omitted).  Further claim construction is required here for precisely these reasons.

ParkerVision asserts six related patents, all of which contain or incorporate by reference the "same disclosure regarding down-conversion," D.I. 51 at 4 n.4, and all of which are directed to ParkerVision's claimed down-conversion invention, which it calls "energy sampling," *id.* at 1 ("the claims are directed to … energy sampling.").  In IPR proceedings relating to one of the asserted patents, U.S. Patent No. 7,539,474 (the "'474 patent"), after the Court issued its claim construction ruling in this case, ParkerVision categorically disclaimed a device for and method of performing down-conversion called "mixers"/"mixing."  Specifically, to distinguish its claimed "energy sampling" invention from the prior art, ParkerVision clearly and unequivocally told the Patent Trial and Appeal Board ("PTAB") that its claimed "***energy sampling***" invention is "***fundamentally different***" from "***mixing***," and that "***[e]nergy samplers, unlike mixers, do not mix (i.e., multiply) two signals together in order to down-convert a signal***."  Ex. 1 at 22.  Based on these representations, the PTAB found (and Intel agreed) that the cited prior art references, which described "mixers," did not disclose ParkerVision's energy sampling device/method of

1

performing down-conversion and declined to invalidate the challenged claims of the '474 patent. Ex. 2 at 17-19.

ParkerVision should be held to its representations to the PTAB—it should not be permitted to argue its claims one way in order to preserve patentability before the PTAB and in a different way here. *Aylus*, 856 F.3d at 1361. Each of the asserted claims of the asserted patents recite "modules," "systems," and "apparatuses" that, as ParkerVision admits, are the elements that perform the down-conversion in its claimed energy sampling invention (i.e., "the Down-Converter Terms"). *See, e.g.*, D.I. 51 at 29 ("A 'frequency down-conversion module' is simply a module that down-converts an input signal."); D.I. 65 at 1 ("[T]he patents-in-suit pertain to the use of sampling to down-convert a signal."). Given ParkerVision's disclaimer, these elements cannot properly include modules/systems/apparatuses that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal. *See, e.g.*, *Aylus*, 856 F.3d at 1362 (patent owner disclaimed method for delivering media content by telling the PTAB that there are "***substantial differences*** between the challenged claims and the asserted references")[1]; *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007) ("When the application of prosecution disclaimer involves statements from prosecution of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed, those statements in the familial application are relevant in construing the claims at issue."); *Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1378-79 (Fed. Cir. 2019) ("clear[] and unambiguous[] disclaime[r]" applies "across all asserted patents" where they "'derive from the same parent application and share many common terms'").

---

[1] All emphasis added unless otherwise noted.

Accordingly, under the Federal Circuit's decisions in *Aylus* and *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008), Intel respectfully requests further claim construction proceedings to address the scope of the asserted claims in light of ParkerVision's disclaimer of mixers/mixing. *See O2 Micro*, 521 F.3d at 1360 (courts must resolve disputes regarding the scope of patent claims).

## II.   STATEMENT OF FACTS

### A.   ParkerVision Persuaded This Court To Construe The Down-Converter Terms To Have Their Purported Plain And Ordinary Meaning

ParkerVision currently asserts six patents, including the '474 patent, in this case.  D.I. 108 at 2.[2]  As ParkerVision admits, all the asserted claims are directed to "down-conversion," and all the asserted patents incorporate ParkerVision's original down-conversion patent, U.S. Patent No. 6,061,551 (the "'551 patent"), in its entirety.  *See* D.I. 51 at 4 ("Down-conversion is the subject of the patents-in-suit"); D.I. 54-6, 1:6-10 (the '902 patent "is a continuation-in-part of … U.S. Pat. No. 6,061,551, which is herein incorporated by reference in its entirety"); D.I. 54-11, 1:30-34 (same for the '528 patent); D.I. 54-12, 1:32-36 (same for the '736 patent); D.I. 54-13, 1:42-46 (same for the '673 patent); D.I. 54-9, 1:24-27 (the '725 patent incorporating by reference the '551 patent "in [its] entiret[y]"); D.I. 54-8, 11:29-33 (same for the '474 patent).  As such, ParkerVision admits that all six asserted patents "have the ***same disclosure*** regarding down-conversion" or "specifically incorporate such disclosure by reference."  D.I. 51 at 4 n.4.

ParkerVision further admits that all the asserted claims of all six asserted patents require a specific method of down-conversion that uses "***sampling***"—something ParkerVision describes as

---

[2] Asserting the '474 patent and U.S. Patent Nos. 6,580,902 (the "'902 patent"), 8,588,725 (the "'725 patent"), 9,118,528 (the "'528 patent"), 9,246,736 (the "'736 patent"), and 9,444,673 (the "'673 patent").

its "energy sampling" invention.[3]  D.I. 51 at 1 ("the claims are directed to … ***energy sampling***");
D.I. 65 at 1 ("[T]he patents-in-suit pertain to the use of ***sampling*** to down-convert a signal."); D.I.
77 at 41 ("***in all cases sampling is occurring***").  ParkerVision further admits that all the asserted
claims require that the claimed down-conversion by sampling be performed at a specific rate,
called an "***aliasing rate***."  D.I. 51 at 27 ("aliasing" refers to a rate "at which an input signal is
sampled"); *see* D.I. 77 at 21 (ParkerVision admitting at oral argument that "this concept of ***aliasing***
rate … it's in ***all the claims*** already.…  ***The claims*** -- and I'll go through this -- ***all have that***
***concept.  They have the concept of aliasing***."); *id.* at 15 ("***aliasing rates*** … [are] ***included in the***
***claims***").

Each of the asserted claims recites a "module," "system" or "apparatus"—i.e., the "Down-
Converter Terms"—that, as ParkerVision admits, performs the down-conversion in the claimed
invention.  *See, e.g.*, D.I. 51 at 29 ("A 'frequency down-conversion module' is simply a ***module***
***that down-converts*** an input signal.").  Intel proposed during claim construction proceedings that
the Down-Converter Terms be construed to require down-converting by sampling at an aliasing
rate.  D.I. 53 at 9-12.  ParkerVision argued, in response, that the Down-Converter Terms should
be given their purported "plain and ordinary meaning."  D.I. 51 at 29-32.  While ParkerVision
acknowledged that all the claims require sampling at an aliasing rate, it argued that this feature is
required by other elements in the claims—i.e., certain "components" of the Down-Converter
Terms—and that the Down-Converter terms themselves should be given their plain and ordinary
meaning.  D.I. 77 at 22.  The Court accepted ParkerVision's argument and construed the

---

[3] Intel disputed ParkerVision's use of the term "***energy*** sampling" because it never appears in the
asserted patents but agreed that all the asserted claims require "***sampling***."  D.I. 58 at 2 (emphasis
in original).

Down-Converter Terms to have their purported "plain-and-ordinary meaning" in its January 28, 2021 Claim Construction Order.  D.I. 75 at 2-3.

### B.  To Avoid Prior Art In Subsequent IPR Proceedings, ParkerVision Clearly And Unequivocally Disclaimed "Mixers" And "Mixing"

In September 2020, Intel filed an IPR petition challenging the validity of certain claims in the asserted '474 patent.  Ex. 3.  The claims that Intel challenged did not expressly recite sampling and, at the time that Intel filed its IPR petition, ParkerVision had not yet taken the position in this case that all of the asserted claims require "energy sampling."  *Compare* Ex. 3 (Sept. 2, 2020); *with* D.I. 51 (Oct. 30, 2020).  Intel's petition thus sought to invalidate claims in the '474 patent based on prior art that taught a well-known down-conversion system/method using "mixers"/"mixing."  *See, e.g.*, Ex. 2 at 17-18 (PTAB describing the asserted prior art "*mixers*").

In January 2021, the PTAB instituted the IPR, and in May 2021, ParkerVision filed its Patent Owner Response ("POR").  Exs. 4 and 1.  ParkerVision conceded that one of the challenged claims was invalid.  *See* Ex. 1 at 1 n.1; Ex. 5.  As to the remaining claims, ParkerVision distinguished the prior art by unequivocally disclaiming the use of "mixing" and "mixers" to perform down-conversion.  Specifically, ParkerVision represented to the PTAB that its claimed "energy sampling/energy transfer" invention is "fundamentally different" than performing down-conversion using a mixer to multiply two signals together:

> *In seeking to develop a solution for down-converting an RF signal*, however, ParkerVision took a *different approach* and focused on *energy sampling instead of mixing*.  *Energy sampling* (also known as energy transfer) was/is a *fundamentally different* and competing method to *mixing*.  *Energy samplers, unlike mixers, do not mix (i.e., multiply) two signals together* in order to down-convert a signal."  Ex. 1 at 22.

ParkerVision repeated this unequivocal disclaimer throughout its Patent Owner Response:

- "The *operation of an energy transfer/sampling system*, however, is *fundamentally different* than the *operation of a mixer/mixing system*.  *Whereas a mixer forms a down-converted signal by mixing two signals* (an RF signal and an LO signal)

together, *an energy transfer system uses sampled energy* from the RF signal to form a down-converted signal." *Id.* at 73-74.

- "The *difference* between *energy transfer/sampling and mixing* systems is *significant*. Indeed, *energy transfer/sampling and mixing* systems are *fundamentally different* and competing technologies." *Id.* at 3.

- "*[A]ll of the challenged claims are directed to* a *sampling* system and, in particular, an *energy sampling* system (also known as an energy transfer system). …. [Intel's prior art references], however, disclose a *different* technology known as a *mixing* system." *Id.* at 2-3.

- "[Intel's prior art] specifically discusses *mixing* and makes no mention or suggestion of using an *energy sampling* solution.  There is no teaching, suggestion, or motivation in [Intel's prior art] to use *energy sampling* to down-convert a signal.  Indeed, *mixing and energy sampling* systems are *fundamentally different* and competing technologies." *Id.* at 74.[4]

ParkerVision argued that this distinction between energy samplers/sampling and mixers/mixing is "why Intel's prior art fails to invalidate challenged claims."  Ex. 1 at 20.

After receiving ParkerVision's POR, Intel agreed that if the PTAB accepted ParkerVision's clear and unequivocal disclaimer of "mixers"/"mixing," then the asserted prior art, which teaches using a mixer to down-convert, would not invalidate the challenged claims.  Ex. 6 at 1-2.  In its Final Written Decision, the PTAB accepted ParkerVision's disclaimer, stating: "the parties agree that the claims at issue in this proceeding require *sampling*.  The parties' agreement as to 'sampling' is dispositive of the issues presented in this proceeding because the parties also agree that neither [of] the prior art references asserted by Petitioner in this proceeding, teach 'sampling.'"

---

[4] ParkerVision specifically distinguished its sampling invention from the cited prior-art Larson and Butler references based on their mixing functionality: "Larson and Butler pertain to non-linear *mixing* …."  Ex. 1 at 20 (emphasis in original).  And ParkerVision repeatedly explained that what distinguishes mixing from its "energy transfer" sampling invention is that mixing involves "multiplying" two signals together.  Ex. 7 at 17 ("Whereas a non-linear mixer forms a down-converted signal by *mixing (multiplying)* two signals (an RF signal and an LO signal) together, an energy transfer system *uses sampled energy* from the RF signal to form a down-converted signal."); *id.* ("[A]ll teaching, suggestion, and motivation in Larson demonstrates that Larson relates only to a non-linear mixing system, which *mixes (multiplies)* two signals together.").

Ex. 2 at 14.  Rather than disclosing sampling, as the PTAB explained, Intel's prior art discloses "**mixers**."  *Id.* at 17-18.  Thus, the Board declined to invalidate the challenged claims because "(1) the claims at issue in this proceeding **require 'sampling'** and (2) [Intel's prior art references] **do not disclose 'sampling'**."  *Id.* at 19.

After IPR briefing had concluded, and the record was closed, ParkerVision unsuccessfully tried to walk back its disclaimer.  Ex. 2 at 3 n.1.  Specifically, ParkerVision improperly argued during a procedural "conference call" after the record was closed that it had disclaimed only certain types of mixers and mixing.  *Id.*  But the PTAB rejected this attempt, stating on the call that "the briefing in this case is closed."  Ex. 8 at 8:28-9:4.  The PTAB also stated on the call:

> On the [issue of] what is patent owner's position on the claims and how petitioner has presented it or patent owner has presented it, the briefs speak to all those issues. **We are not taking argument on today's call about positions that are already set forth in the briefing**.

*Id.* at 12:24-13:1.  The PTAB then further stated in its Final Written Decision:

> Patent Owner sought to clarify its position in light of statements made by Petitioner at the pre-hearing conference.  Petitioner expressly disagreed with what it considered to be Patent Owner's attempt to supplement the record during the November 10th conference call.  The sole purpose of the pre-hearing conference was to determine if an oral hearing was needed in light of the positions set forth in the briefing.  **The parties' briefs** set forth the arguments upon which this Final Written Decision is based.

Ex. 2 at 3 n.1 (citations omitted).  As shown above, ParkerVision's briefs unequivocally disclaimed down-converting using "mixers"/"mixing."  *See, e.g.*, Ex. 1 at 3, 20, 22, 73-74.[5]

---

[5] Intel also challenged three claims in another ParkerVision patent, U.S. Patent No. 7,110,444 (the "'444 patent"), that ParkerVision had previously asserted in this case.  Ex. 9; D.I. 1 (original complaint).  In response to Intel's IPR petition, ParkerVision voluntarily disclaimed two of the challenged claims, Ex. 10 at 1 n.1; Ex. 11, and the PTAB invalidated the remaining claim as "unpatentable," Ex. 12 at 3.  ParkerVision has voluntarily dismissed the '444 patent from this proceeding.  D.I. 108.

## III.   ARGUMENT

### A.   ParkerVision's Unequivocal Representations To The PTAB Constitute A Clear Disclaimer of Claim Scope

The Federal Circuit has expressly held that "statements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer." *Aylus*, 856 F.3d at 1361; *see also, e.g.*, *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*, 2020 WL 2517581 at *16 (E.D. Tex. May 15, 2020) (patent owner's statements to the PTAB regarding disputed term constituted a disclaimer and "intrinsic evidence").

The rationale for this rule is straightforward—it is a fundamental principle of patent law that patent owners cannot argue claims one way to preserve validity and another way to try to show infringement. *Aylus*, 856 F.3d at 1359-61 (courts should ensure that "claims are not argued one way in order to maintain their patentability and in a different way against accused infringers"); *Spectrum Int'l*, 164 F.3d at 1378 ("claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers"). Thus, where a patent owner makes statements to the PTAB relevant to claim scope, further claim construction proceedings are warranted. *Aylus*, 856 F.3d at 1364.

In *Aylus*, for example, the Federal Circuit held that, through its IPR statements, patent owner Aylus disclaimed an entire method of controlling and delivering media content. 856 F.3d at 1357. Aylus had alleged that certain software infringed its method for "controlling and delivering media content," which involved determining whether to invoke a "Control Point Proxy (CPP)" and/or a "Control Point (CP)" to stream videos. *Aylus Networks, Inc. v. Apple Inc.*, 2016 WL 270387, at *2 (N.D. Cal. Jan. 21, 2016). During claim construction in the district court, the term "the CPP is invoked" was not construed. *Id.* at *4. Months later, Aylus filed a preliminary response to an IPR petition and represented to the PTAB that there are "***substantial differences***

8

between the challenged claims and the asserted references," including that "the challenged claims *require selectively invoking* the CP logic and/or CPP logic," which "is a *key aspect* of the claimed invention." *Aylus*, 856 F.3d at 1362-63. Relying on those representations, the PTAB declined to institute IPR. *Id.* The district court then undertook further claim construction to address Aylus's IPR statements and ruled that the phrase "the CPP is invoked" limited the challenged claims to methods where "*only* the CPP logic is invoked," and excludes methods where "*both* the CP and CPP" logic is invoked. *Aylus*, 856 F.3d at 1358. The Federal Circuit affirmed, holding that Aylus's IPR statements were a "clear and unmistakable disavowal of claim scope." *Id.* at 1364.

Other cases have likewise engaged in further claim construction in light of patent owner's statements to the PTO. *See, e.g.*, *Huawei Techs. Co. v. T-Mobile US, Inc.*, 2017 WL 4385567, at *5 (E.D. Tex. Sept. 9, 2017) (patent owner "clearly and unmistakably disclaimed a recovery process in which the GGSN marks the PDP context invalid … As a result, the claims of the '339 patent no longer encompass such a process."), *report and recommendation adopted*, 2017 WL 4310161 (E.D. Tex. Sept. 28, 2017); *X One, Inc. v. Uber Techs., Inc.*, 440 F. Supp. 3d 1019, 1042-44 (N.D. Cal. 2020) (reopening claim construction to address IPR disclaimer); *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2018 WL 4616255, at *6 (N.D. Cal. Sept. 26, 2018) (reconsidering claim construction in light of developments in ex parte reexamination).

Here, after the Court issued its claim construction ruling, ParkerVision represented to the PTAB that its claimed "energy sampling" invention is "*fundamentally different*" from "mixing," and its "[e]nergy samplers, *unlike mixers, do not mix (i.e., multiply)* two signals together in order to down-convert a signal." Ex. 1 at 20, 22. ParkerVision emphasized that the "difference between energy transfer/sampling and mixing systems is *significant*" and a "*critical distinction*" over the prior art. *Id.* at 3, 20. And ParkerVision was explicit that it was making this disclaimer for the

purpose of distinguishing its claimed energy sampling invention from the prior art in order to preserve validity.  *See* Ex. 1 at 20 ("***the difference between these technologies is critical to understanding why Intel's prior art fails to invalidate challenged claims of the '474 patent***"). The PTAB relied on ParkerVision's representations regarding the scope of its claims to find that the cited prior art did not invalidate ParkerVision's claims.  Ex. 2 at 17-19.

ParkerVision's IPR representations thus constitute a clear and unequivocal disclaimer and require further claim construction.  *See also, e.g.*, *Ormco Corp.*, 498 F.3d at 1314-15 (claims limited to an "automatic" process for orthodontists to position teeth, because inventors sought "to distinguish their invention" on the grounds that it is "fully automated," while the prior art required "an operator [to] manipulate" and undertake "decision making" in positioning teeth, meaning that a "fully automated [process] … is lacking"); *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 995 (Fed. Cir. 2016) ("patentee clearly disclaimed conventional extraction," including by "twice stat[ing] during prosecution" that the claimed invention produces a product that "need not" have the same characteristics as products produced through conventional extraction); *Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("clear disavowal" of "nonsurfactant solubilizers" where the patentee described the invention as being "included in" a structure indisputably formed by surfactants).

This Court recently relied on a patent owner's "clear and unambiguous prosecution statements" to rule that patent owner had disclaimed "EDTA and other chelators used as anticoagulants" from the scope of a disputed claim term related to "cell lysis inhibitors."  *Ravgen v. Natera*, No. 20-CV-00692-ADA, (W.D.T.X. Nov. 8, 2021) D.I. 176.  As this Court explained, by representing to the Patent and Trademark Office ("PTO") that EDTA, an "anticoagulant," is "***not*** an 'agent that inhibits cell lysis'" and "***not*** … a cell lysis inhibitor," patent owner

"unequivocally disavowed a certain meaning to obtain his patent." *Id.* at 5 (quoting *Omega Eng'g, Inc v. Raytek Corp.*, 334 F. 3d 1314, 1324 (Fed. Cir. 2003)); *see also Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005) ("Where an applicant argues that a ***claim possesses a feature that the prior art does not possess*** in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language."); *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 915 (Fed. Cir. 2005) ("The prosecution history modifies the scope of a claim term if the patentee distinguished that term from prior art on the basis of a particular embodiment [or] expressly disclaimed subject matter….") (quotations and citation omitted).[6]  The same holds true here.

All six asserted patents (including the '474 patent) fully incorporate the same parent patent. *See supra* p. 3.  And as ParkerVision acknowledges, all six asserted patents "have the ***same disclosure regarding down-conversion***" or "incorporate such disclosure by reference."  D.I. 51 at 4 n.4.  ParkerVision has also represented to this Court that all of its asserted claims are directed to its claimed "energy sampling" invention—the same invention at issue in the '474 IPR proceedings. *Compare* D.I. 51 at 1 ("the claims [including the '474 claims] are directed to … ***energy sampling***"), *with* Ex. 1 at 2 ("***all*** of the challenged claims are directed to a sampling system and, in particular, an ***energy sampling*** system").  ParkerVision's disclaimer of mixers/mixing to perform down-conversion therefore applies to all of the asserted claims in this case. *See Ormco Corp.*, 498 F.3d at 1311, 1314-17 (disclaimer made during prosecution of unasserted "familial

---

[6]  ParkerVision's representations regarding claim scope would remain relevant to claim construction even if they did "not rise to the level of unmistakable disavowal." *Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1345 (Fed. Cir. 2020) ("the Board erred by effectively requiring the prosecution history evidence to rise to the level of a disclaimer in order to inform the meaning of the disputed claim term") (quoting *Shire Dev., LLC v. Watson Pharm., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015)).

patent" applied to asserted related patents that "***share a common specification***"); *iLight Techs., Inc. v. Fallon Luminous Prods. Corp.*, 2010 WL 2330396, *2 (Fed. Cir. 2010) (disclaimer applied to all asserted claims because the applicant distinguished ***"the invention as a whole"*** "in order to avoid certain prior art"); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 883 (Fed. Cir. 2000) ("While Watts' remarks occur in a discussion of the rejection of claim 1, they are ***general in nature and apply to any claim that contains the [same limitation]***."); *Omega Eng'g*, 334 F.3d at 1333 ("prosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications"); *Samsung Elecs.*, 925 F.3d at 1378 ("Where multiple patents derive from the same parent application and share many common terms, ***we must interpret the claims consistently across all asserted patents***.") (quotations and citation omitted).

Each of the asserted claims of the asserted patents recite "modules," "systems," and "apparatuses" that ParkerVision admits are the elements that perform the down-conversion in ParkerVision's claimed energy sampling invention (i.e., "the Down-Converter Terms"). *See, e.g.*, D.I. 51 at 29 ("A 'frequency down-conversion module' is simply a module that down-converts an input signal."); D.I. 65 at 1 ("[T]he patents-in-suit pertain to the use of sampling to down-convert a signal."). Given ParkerVision's disclaimer, these elements cannot properly include modules/systems/apparatuses that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal. The Down-Converter Terms should therefore be limited as follows to account for PV's disclaimer:

| Term | Court's Current Construction | Intel's Proposed Further Construction[7] |
|---|---|---|
| "energy transfer module" ('902 patent, claim 1) | Plain-and-ordinary meaning | The claimed module does not include modules that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal |
| "frequency down-conversion module" ('474 patent, claim 1) | Plain-and-ordinary meaning | The claimed module does not include modules that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal |
| "aliasing module" ('725 patent, claim 1) | Plain-and-ordinary meaning | The claimed module does not include modules that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal |
| "system for frequency down-converting" ('528 patent, claim 1; '736 patent, claim 1) | Preamble is limiting. Plain-and-ordinary meaning. | The claimed system does not include systems that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal |
| "frequency down-conversion module" ('673 patent, claim 1) | Plain-and-ordinary meaning | The claimed module does not include modules that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal |
| "apparatus for down-converting" ('673 patent, claim 13) | Preamble is limiting. Plain-and-ordinary meaning. | The claimed apparatus does not include apparatuses that use a mixer to mix (i.e., multiply) two signals together in order to down-convert a signal |

### B.  Having Preserved Validity By Disclaiming Claim Scope, ParkerVision Should Not Be Permitted To Now Walk Back Its Disclaimer

As it unsuccessfully tried to do with PTAB after the record had "closed," Ex. 8 at 8:28-9:4, ParkerVision will no doubt attempt to walk back its disclaimer before this Court as well.  As discussed above, ParkerVision argued during a procedural "conference call" that it had purportedly distinguished (or intended to distinguish) only certain types of mixers and mixing.  Ex. 2 at 3 n.1. The PTAB rejected ParkerVision's attempt to supplement the record and this Court should as well.

---

[7] Intel believes that the appropriate construction would be to attach ParkerVision's disclaimer to Intel's initial proposed construction for these terms—*e.g.*, "A module that down-converts an input signal at an aliasing rate (i.e. by sampling at less than or equal to twice the frequency of the input signal)."  *See* D.I. 53 at 9-10.  Intel is not rearguing its initial proposed construction in this motion because the Court has already ruled on that language.  But Intel respectfully reserves the right to argue on appeal that its initial proposed construction should be adopted as well.

***First***, the PTAB expressly foreclosed ParkerVision's belated efforts, stating in its Final Written Decision that although "Patent Owner sought to clarify its position" after the briefing had closed, the "parties' ***briefs*** set forth the arguments upon which this Final Written Decision is based." *Id.* As set forth above, ParkerVision's briefs broadly, repeatedly, and unequivocally disclaimed using a "mixer" to "mix (i.e., multiply) two signals together in order to down-convert a signal." *E.g.*, Ex. 1 at 3, 20, 22-23, 73-74. Its unsuccessful attempt to walk back those unequivocal disclaimers is not part of the prosecution record. Ex. 2 at 3 n.1.[8]

***Second***, the Federal Circuit has repeatedly found that "the patentee is held 'to the ***actual arguments made***, not the arguments that could have been made.'" *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1144 (Fed. Cir. 2021) (quoting *Tech. Props. Ltd. v. Huawei Techs. Co.*, 849 F.3d 1349, 1357 (Fed. Cir. 2017)); *Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1351 (Fed. Cir. 2019) ("***A patentee must be held to what he declares during the prosecution of his patent***, because a contrary rule would undermine the public notice function of a patent." (quotations and citations omitted)).

That is the case even where a patentee asserts that the disclaimer is broader than what was necessary to avoid the prior art. *See, e.g.*, *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005) ("[T]here is no principle of patent law that the scope of a surrender of subject matter during prosecution is limited to what is absolutely necessary to avoid a prior art reference. To the contrary, it frequently happens that patentees surrender more through amendment than may

---

[8] Notably, the PTAB's rules state that patent owners "may only present arguments relied upon ***in the papers previously submitted***." *Patent Trial and Appeal Board Consolidated Trial Practice Guide,* § II.M at 85 (Nov. 2019), *see* https://www.uspto.gov/sites/default/files/documents /tpgnov.pdf?MURL. The PTAB's decision to expressly state in a written opinion that ParkerVision's statements came during a "conference call" and that the PTAB was relying on "the parties' briefs"—as its rules require—confirms that ParkerVision's belated and improper statements are not part of the prosecution history.

have been absolutely necessary to avoid particular prior art. In such cases, *we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to*."); *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 998 (Fed. Cir. 2006) (rejecting patentees' arguments that because the prior art taught only a certain type of non-chromium catalyst, their prosecution statements were likewise "intended to distinguish only nickel-chromium catalysts," and stating: "That the applicants only needed to surrender nickel-chromium catalysts to avoid a prior art reference *does not mean that its disclaimer was limited to that subject matter*…. Here, the patentee spoke expressly to the meaning of 'chromium catalyst' … in the prosecution history, noting that the catalyst was limited to 'pure chromium (without the addition of another metal oxide).' We therefore agree with the district court that Atofina surrendered *all* catalysts containing non-chromium metal oxides."); *MarcTec, LLC v. Johnson & Johnson*, 394 F. App'x 685, 687 (Fed. Cir. 2010) ("*Limitations clearly adopted by the applicant during prosecution are not subject to negation during litigation*, on the argument that the limitations were not really needed in order to overcome the reference. When an applicant yields claim scope in order to secure allowance of the patent, the public notice aspect of the record inhibits later retrenchment to recover what was yielded.").[9]

---

[9] At a minimum, if this Court does not further construe the claims as requested, ParkerVision's IPR statements are admissible evidence the jury should be permitted to consider. *See Di Piazza v. Weather Grp. Television, LLC*, 2021 WL 3598282, at *2 (N.D. Tex. Mar. 23, 2021) (prior statements are admissible where "relevant, admissible under an exception to the rule against hearsay, and … properly authenticated."). They are highly relevant to ParkerVision's claims of infringement—indeed, even ParkerVision admits that they concern a "*significant*" and "*critical distinction*" in assessing the system/method of down-conversion required by all the asserted claims. Ex. 1 at 3, 20. Nor is there any question of authenticity, undue prejudice, or hearsay. ParkerVision made these representations in a public IPR filing in a successful effort to defend the validity of claims it had been asserting in this litigation for over a year. *See Cook Grp. Inc. v. Bos. Sci. Scimed, Inc.*, 809 F. App'x 990, 999-1000 (Fed. Cir. 2020) (IPR admission appropriately

**IV.   CONCLUSION**

Under *Aylus* and the settled precedent cited above, ParkerVision should not be permitted to argue its claims one way to avoid invalidity and another way to attempt to establish infringement. Accordingly, Intel respectfully requests that the Court order further claim construction proceedings to account for ParkerVision's disclaimer of mixing/mixers.

---

considered by factfinder because "[i]t is well established … that a statement made by a party in an individual or representative capacity may be offered as evidence against that party"); Fed. R. Evid. 801(d)(2)(A).

Dated:  March 21, 2022

Respectfully submitted,

*/s/ J. Stephen Ravel*

Michael J. Summersgill (admitted *Pro Hac Vice*)
Sarah B. Petty (admitted *Pro Hac Vice*)
Marissa A. Lalli (admitted *Pro Hac Vice*)
Samuel C. Leifer (admitted *Pro Hac Vice*)
Alicia Coneys (admitted *Pro Hac Vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
T (617) 526-6000
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com
marissa.lalli@wilmerhale.com
samuel.leifer@wilmerhale.com
alicia.coneys@wilmerhale.com

Todd Zubler (admitted *Pro Hac Vice*)
Isley M. Gostin (admitted *Pro Hac Vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
T (202) 663-6636
todd.zubler@wilmerhale.com
isley.gostin@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

J. Steven Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
T (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
T (254) 710-7670
james.wren@baylor.edu

**ATTORNEYS FOR DEFENDANT
INTEL CORPORATION**

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 21, 2022, Intel's counsel conferred in good faith with opposing counsel pursuant to Local Civil Rule 7(g), and ParkerVision is opposed to the relief sought. Accordingly, this Motion and the relief requested herein are submitted to the court for resolution.

*/s/ J. Stephen Ravel*
J. Stephen Ravel

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on March 21, 2022.

*/s/ J. Stephen Ravel*_____
J. Stephen Ravel
