UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>                    Plaintiff,<br><br>       v.<br><br>INTEL CORPORATION,<br><br>                    Defendant. | Case No. 6:20-cv-00108-ADA<br><br>JURY TRIAL DEMANDED |

**PARKERVISION'S OPPOSITION TO INTEL'S
MOTION FOR FURTHER CLAIM CONSTRUCTION**

# **Table of Contents**

|      |                                                                                                                                                                                 | Page |
|------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | The timing of Intel's motion demonstrates that Intel is using the IPR as a *pretext* for a claim construction do-over. ........................................................ | 1    |
| II.  | There was no disclaimer of "mixers" or "mixing" during the IPR. .....................................                                                                            | 1    |
|      | A. ParkerVision's expert declaration demonstrates that there was no disclaimer of "mixers" or "mixing." ...........................................................             | 3    |
|      | B. A transcript of a call with the Board demonstrates that there was no disclaimer of "mixers" or "mixing." ........................................................            | 4    |
|      | C. ParkerVision's POR contrasting energy samplers from *specific types* of mixers demonstrates there was *no* disclaimer of "mixers" or "mixing." ..............                 | 6    |
| III. | There is objective evidence that there is no clear and unequivocal disclaimer. ................                                                                                  | 8    |
| IV.  | There is no other reason for the Court to change its prior claim construction. ....................                                                                              | 9    |
|      | A. Revisiting the construction of the downconverter terms would allow Intel to reargue the same claim construction positions that this Court has *rejected*. ........           | 10   |
|      | B. The case law upon which Intel relies does not support revisiting claim construction under the present facts. ..........................................................     | 12   |
| V.   | CONCLUSION............................................................................................................................                                         | 13   |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   805 F.3d 1368 (Fed. Cir. 2015) ............................................................................................. 11

*Aylus Networks, Inc. v. Apple Inc.*,
   856 F.3d 1353 (Fed. Cir. 2017) ............................................................................................ 2, 4

*Chrimar Sys. v. Alcatel-Lucent, Inc.*,
   2015 U.S. Dist. LEXIS 1801 (E.D. Tex., Jan. 7, 2015) ........................................................ 13

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018) ............................................................................................... 2

*Ericsson Inc. et al. v. TCL Comm. Tech. Holdings Ltd. et al.*,
   Case No. 2:15-cv-00011-RSP, Memorandum Opinion and Order
   (Nov. 4, 2017) (E.D. Tex.) .................................................................................................... 11

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d. 1314 (Fed. Cir. 2003) .............................................................................................. 2

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
   853 F.3d 1376 (Fed. Cir. 2017) ............................................................................................... 2

*SEB S.A. v. Montgomery Ward*,
   594 F.3d 1360 (Fed. Cir. 2010) ............................................................................................... 2

*Standard Oil Co. v. Am. Cyanamid Co.*,
   774 F.2d 448 (Fed. Cir. 1985) .............................................................................................. 4, 6

*Tech. Props. Ltd. v. Huawei Techs. Co.*,
   849 F.3d 1349 (Fed. Cir. 2017) ............................................................................................... 2

*VirnetX Inc. v. Apple Inc.*,
   931 F.3d 1363 (Fed. Cir. 2019) ............................................................................................... 3

**Statutes**

35 U.S.C. § 315(b) ....................................................................................................................... 12

**I.     The timing of Intel's motion demonstrates that Intel is using the IPR as a *pretext* for a claim construction do-over.**

Over *fourteen months* have passed since the Court issued its claim construction order in this case. Now that the case has developed, Intel realizes that it has a problem with infringement and needs to do something. So, Intel created a *pretext* – a purported disclaimer – for having this Court reconsider its constructions of terms (which Intel already *lost*). Intel does so in order to exclude anything called a "mixer"[1] (a term that has become ubiquitous for many types of circuits) from the asserted claims to further a non-infringement defense.

Specifically, Intel asserts that during IPR2020-01302 ("IPR-1302" or "IPR") of U.S. Patent No. 7,539,474 ("the '474 patent"), ParkerVision disclaimed "mixers" and "mixing" and this, in turn, not only affects the '474 patent but terms in *five additional* patents as well.[2] D.I. 117 at 2-3. Not so.

**II.    There was <u>no</u> disclaimer of "mixers" or "mixing" during the IPR.**

In the IPR, ParkerVision argued that the claims of the '474 patent relate to energy samplers (energy transfer systems). Ex. 1 (IPR-1302 Patent Owner Response) at 2 ("*all* of the challenged claims are directed to a *sampling* system, and in particular, an *energy sampling* system"); 20 ("[t]he challenged claims only cover energy *sampling* and the use of switches"); Ex. 2 (IPR-1302 Patent Owner Sur-Reply) at 1 ("the '474 patent claims are directed to a down-conversion technique called *sampling*"). ParkerVision's point was to explain that the particular conventional mixing method of the prior art ("a mixer us[ing] a continuous time-vary *resistor*") did not operate according to the claimed method (energy sampling, which involves the use of a *switch*). *See, e.g.,* Ex. 1 at 20-29; Ex. 2 at 2-3; Ex. 3 (IPR-1302 Declaration of Dr. Michael Steer)

---

[1] Intel is trying to exclude anything called a "mixer" regardless of its operation or function.
[2] Intel glosses over that ParkerVision's statements upon which Intel relies were filed *over 10 months ago* when ParkerVision first filed its Patent Owner's Response ("POR").

1

at ¶¶178-184; Ex. 4 (IPR-1302 Transcript from 11/10/2021 PTAB Conference Call) at 5:11-6:6. At bottom, Intel asserts that ParkerVision took the position in the IPR that energy samplers are not mixers and do not multiply any type of signal, and therefore clearly and unequivocally disclaimed "mixers" and "mixing." D.I. 117 at 3-15. But this is *false*. Intel misrepresents and contorts the facts in hopes of getting a claim construction do-over to support its non-infringement case.

It is well established that a disclaimer must be "clear and unequivocal" to be effective. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d. 1314, 1325-26 (Fed. Cir. 2003)). Further, the Federal Circuit has found that whether a statement to the PTO "constitutes a clear and unmistakable disavowal of claim scope *depends on the context*." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1376 (Fed. Cir. 2017) (quoting *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355 (Fed. Cir. 2014)); *see also Tech. Props. Ltd. v. Huawei Techs. Co.,* 849 F.3d 1349, 1357-58 (Fed. Cir. 2017) ("When determining whether disclaimer applies, we consider the statements in the context of the entire prosecution."). "When the alleged disclaimer is ambiguous or amenable to multiple reasonable interpretations, [the court] decline[s] to find prosecution disclaimer." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* 880 F.3d 1356, 1367 (Fed. Cir. 2018) (citing *Mass. Inst. of Tech. v. Shire Pharms., Inc.,* 839 F.3d 1111, 1119 (Fed. Cir. 2016)). Moreover, the Federal Circuit has declined to find clear and unequivocal disclaimer in prosecution history statements where an "attempt to create a disclaimer simply stretches [the] prosecution history too far." *SEB S.A. v. Montgomery Ward*, 594 F.3d 1360, 1371 (Fed. Cir. 2010); *see also Omega Eng'g*, 334 F.3d. at 1324.

A simple review of the IPR record demonstrates that ParkerVision made *no* disclaimer whatsoever, let alone a "clear and unequivocal" disclaimer of "mixers" or "mixing." Further, nothing in the context of the specification or other prosecution history of the '474 patent establishes a clear unequivocal disavowal of claim scope. *See VirnetX Inc. v. Apple Inc.,* 931 F.3d 1363, 1379 (Fed. Cir. 2019) (finding no disclaimer when the specification failed to evidence a clear disavowal of claim scope).

### A.   ParkerVision's expert declaration demonstrates that there was *no* disclaimer of "mixers" or "mixing."

*First*, the IPR record includes a sworn declaration of Dr. Michael Steer (ParkerVision's expert) attached to ParkerVision's POR. Ex. 1 at vi ("Exhibit No. 2027[,] Declaration of Dr. Michael Steer"); Ex. 3. Importantly, Dr. Steer's declaration directly contradicts Intel's disclaimer argument. Specifically, Dr. Steer explained that energy samplers *can be referred to as mixers*.

> Prior to the time of the invention of the '474 patent, a "mixer" referred to the configuration set forth above, which was not an energy sampler. *After the time of the invention of the '474 patent, companies began to develop energy samplers and refer to them as "mixers*.[3]

Ex. 3 at ¶163.

Dr. Steer went on to explain that the term "mixer" has become a generic term and in order to understand what a "mixer" refers to, one must analyze the circuit.

> As such, *the term "mixer" has become a generic term to refer to different configuration that performs down-conversion* or up-conversion. As used today, the term "mixer" really says nothing about how a circuit operates or the specific configuration of the circuit. As such, *when analyzing a component referred to as a "mixer" one needs to look at the operation and configuration of the circuit to determine the technology that is being implemented*.

*Id.* at ¶163.

ParkerVision once again reiterated this statement in its sur-reply. Ex. 2 at 4 n.2.

---

[3] Unless otherwise noted, all emphasis has been added.

3

Unsurprisingly, Intel now ignores these statements from Dr. Steer, despite the fact that they are in the prosecution record. Ex. 2 at 4; *see Aylus*, 856 F.3d at 1359 (citing *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). Dr. Steer's statements alone demonstrate that ParkerVision did *not* disclaim a "mixer" from being an energy sampler. Quite the opposite – Dr. Steer stated that energy samplers *are* sometimes called "mixers." This directly contradicts Intel's proposed constructions which seek to exclude anything called a "mixer" or "mixing" from the asserted claims.

> **B.  A transcript of a call with the Board demonstrates that there was *no* disclaimer of "mixers" or "mixing."**

*Second*, the IPR record includes a transcript of a conference call with the Board during which ParkerVision expressly stated that it was not disclaiming "mixers" or "mixing." Ex. 4 at 5:11-6:6. That conference call was prompted by Intel's attempt in its papers to mischaracterize the following, out-of-context passage from *hundreds* of pages of argument that ParkerVision filed as part of the IPR record:

> In seeking to develop a solution for down-converting an RF signal, however, ParkerVision took a different approach and focused on energy sampling instead of mixing. Energy sampling (also known as energy transfer) was/is a fundamentally different and competing method to mixing. Energy samplers, unlike mixers, do not mix (i.e., multiply) two signals together in order to down-convert a signal.

Ex. 1 at 22 (original emphasis omitted).

As expected, Intel attempts the same mischaracterization trick here, using this statement as the foundation for its present disclaimer argument. D.I. 117 at 5 (citing Ex. 1 at 22) (original emphasis omitted). But ParkerVision already foresaw Intel's plan, and therefore clarified the above-quoted passage *as part of the IPR record* and called out Intel's misrepresentation to the Board.

4

During the November 10, 2021 conference call, citing its previously-filed POR and Sur-Reply brief, ParkerVision explained that it did *not* disclaim "mixers" in general (a term that has become ubiquitous) or that energy samplers do not multiply:

> Intel requested a written decision to include what Intel says is ParkerVision's representation regarding sampling. And I just want to make sure ParkerVision's [sic] representation is clear for the record.
>
> Intel characterizes ParkerVision's position, at least as they did in the last paper that they filed, are mixers that multiplied signals are not samplers.
>
> To be clear that's *not* ParkerVision's position. That's Intel's view of our position.
>
> Our position or ParkerVision's position in the POR, and today, is that *the claimed samplers can be modeled to multiply a sine wave with a rectangular pulse* resulting in a transistor acting as a switch that samples.
>
> This is different than mixers of the prior art marked in the Larson/Butler references, which multiplied two sine waves resulting in no sampling because the transistor acts as a continuous time varying resistor. *Our point was that multiplying different signals results in transistors operating differently, not that mixers multiply and energy samplers do not.*

Ex. 4 at 5:11-6:6 (capitalization removed).

A certified court reporter prepared a transcript of the conference call and the Board requested that the transcript be filed as an exhibit i.e., *so that it could be put into the record*. ("JUDGE GERSTENBLITH: . . . You probably already know this but once you get the draft of the transcript, please share it with petitioner. Once everybody confirms that it's accurate, please file it as an exhibit in the [IPR2020-]1302 case."). *Id*. at 4:3-9. As the Board requested, *Intel confirmed the accuracy* of the transcript and it was filed as Exhibit 2031 *in the IPR record*.

ParkerVision's statements in the transcript (on the record), however, are problematic for Intel. So now Intel attempts to argue that the transcript is not part of the IPR record.[4] But Intel is

---

[4] Intel's position is that the Board did not rely on the transcript, so it is not part of the record. D.I. 117 at 14. Whether or not the Board relied on the transcript, however, does not expunge the

5

wrong. Indeed, the Board's Final Written Decision (FWD) directly contradicts Intel's position. In particular, the FWD states: "[a]t Patent Owner's request, we held a conference call on November 10, 2021, *a transcript of which is in the record*. Ex. 2031." Ex. 5 (IPR-1302 Final Written Decision) at 3 n.1. The Board also specifically cited to the transcript in its Final Written Decision. *Id*. at 14[5]; *see also id.* at 19. Moreover, *nowhere* in the IPR record did the Board ever indicate that ParkerVision's statements were being interpreted as a disclaimer.[6]

Consequently, ParkerVision's on-the-record statements during the November 10th call demonstrate that ParkerVision did not disclaim "mixers" or "mixing."

### C.   ParkerVision's POR contrasting energy samplers from *specific types* of mixers demonstrates there was *no* disclaimer of "mixers" or "mixing."

Intel points to the passage quoted in Section I.B. above as well as other instances in the IPR where ParkerVision compared and contrasted energy samplers with mixers/mixing systems. D.I. 117 at 5-6. But all of those statements were made in the context of the prior art disclosures – context that Intel *ignores* in its arguments. But that context is key here.

In its POR, ParkerVision was *not* distinguishing energy samplers from *all* so-called "mixers."[7] Instead, ParkerVision contrasted energy samplers from the *specific type* of prior art

---

transcript from the IPR record. *See Standard Oil Co.*, 774 F.2d at 452. Regardless of whether the Board relied on the transcript, ParkerVision's statements on the call were merely a summary of ParkerVision's briefing on which the Board relied.

[5] The Board stated: "The parties' agreement as to 'sampling' is dispositive of the issues presented in this proceeding because the parties also agree that neither Larson nor Butler, the prior art references asserted by Petitioner in this proceeding, teach 'sampling.' See Pet. Reply 13 (agreeing that Larson and Butler do not render unpatentable the claims remaining in the case); see ***Ex. 2031***, 6:20–22 (*Patent Owner explaining that, 'as the Board is aware both parties agree that sampling is in the claims, and the claims are not invalid in view of all the cited prior art'*)."
[6] In fact, the Board's Final Written Decision repeatedly characterizes the '474 patent claims as "requir[ing] sampling," *never* as disclaiming mixers or mixing. The Board's understanding of the claims is consistent with the statements and positions ParkerVision made in the IPR record.
[7] ParkerVision did not distinguish energy samplers from "mixers" in general because, after the invention of the '474 patent, "mixer" became a generic term without a well-defined meaning and *encompassed energy samplers*.

6

"mixers" – mixers that use continuous time-varying *resistors*, instead of *switches*, to down-convert a signal.

Indeed, ParkerVision and its expert spent a significant amount of time describing the differences in operation between energy sampling and mixing using a continuous time-varying resistor. *See, e.g.,* Ex. 1 at 20-29; Ex. ¶¶158-162, 178-202, 219-229. ParkerVision noted that while both methods use similar components (e.g., transistors, such as field effect transistors (FETs)), these components are used in different *ways* in a circuit to create a desired result. Ex. 1 at 29.

ParkerVision explained that "[t]he way in which a FET behaves (and is used) depends, in part, on the LO signal (e.g., independent control input) that the FET receives." Ex. 1 at 26. Specifically, ParkerVision explained that a local oscillator can generate different types of signals as shown below. Ex. 1 at 25-26; Ex. 3 at ¶¶102-107.



ParkerVision explained that when a transistor in a mixer receives a sine wave from the LO, the transistor acts as a continuous time-varying resistor (i.e., the mixer is a continuous time-varying/resistive mixer). *Id.* at ¶201, 217. But, when a transistor in a mixer receives a square wave or a train of pulses from the LO, the transistor acts as a switch. *Id.* at ¶202, 217.

7



Notably, as shown above, when discussing mixers, ParkerVision showed a *specific type* of mixer – one multiplying two sinusoidal waves (yellow) (the RF sine wave and a sine wave from the local oscillator). *Id*. at ¶¶157-163. Thus, ParkerVision was illustrating a continuous time-varying mixer.

It is within this context that ParkerVision discussed energy samplers and mixer/mixing systems. ParkerVision's argument in its POR was as follows: whereas a continuously time-varying mixer has a transistor that can multiply two sine waves together, an energy sampler has a transistor that can multiply a sine wave with a square wave/pulse. Ex. 1 at 20-49; *see also* Ex. 4 at 5:22-6:6. Accordingly, contrary to Intel's position, ParkerVision was *not* generally distinguishing energy samplers from all "mixer[s]" or from mixers that multiply any type of signal. Instead, ParkerVision was contrasting a *specific type* of mixer (i.e., a continuously time-varying mixer) from an energy sampler.

For the foregoing reasons, there was *no* disclaimer at all in the IPR or anywhere else in the prosecution record, let alone a clear and unmistakable disclaimer of "mixers" or "mixing," and therefore, there is no need for this Court to revisit claim construction.

### III. There is objective evidence that there is no clear and unequivocal disclaimer.

Intel states that ParkerVision made a clear and unequivocal disclaimer during the '474 patent IPR. If the purported disclaimer were so clear and unequivocal, then Intel certainly would have at least mentioned this issue during claim construction in the other case between the parties

in this Court - Case No. 6:20-cv-00562 ("the 562 case"). But Intel did *not* do so. This further demonstrates that Intel's motion is a last-ditch effort to back-door a non-infringement position into the instant case - 6:20-cv-00108 ("the 108 case").

As the Court is aware, ParkerVision and Intel are involved in another, related litigation before this Court. That case involved U.S. Patent No. 6,049,706 ("the '706 patent"), which relates to the same technology as the patents-in-suit in the 108 case.[8] One of the disputed terms with regard to the '706 patent was "down-convert and delay module." On May 18, 2021, ParkerVision served its POR (and expert declaration) in the '474 patent IPR – the same document that Intel relies upon in its motion. D.I. 117 at 5 (*citing* Ex. 1). The Court held a first *Markman* hearing in the 562 case *over a month later* on June 24, 2021 and a second *Markman* hearing on July 22, 2021. As such, Intel knew of ParkerVision's position, which Intel now purportedly characterizes as a disclaimer, well before the *Markman* hearings and when the Court ruled on claim construction in the 562 case. At no time did Intel seek to file a supplemental claim construction brief or file a motion to limit the "down-convert and delay module" term as it is now seeking to with the down-convert modules terms in the 108 case.

Accordingly, Intel's own actions further demonstrate that there was no clear and unequivocal disclaimer during the '474 patent IPR.

**IV.     There is no other reason for the Court to change its prior claim construction.**

This Court concluded the claim construction process for the downconverter terms over *fourteen* months ago. *See* Claim Construction Order (1/28/2021), D.I. 75. Yet, Intel suggests that ParkerVision's statements in the IPR record merit revisiting those claim constructions, even if the IPR record statements do not rise of the level a disclaimer. D.I. 117 at 11 n.6 (citing

---

[8] The '706 patent incorporates by reference a common specification with the patents-in-suit in the 108 case.

9

*Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1345 (Fed. Cir. 2020)). Intel is wrong. Again, as shown above, there was no disclaimer in the IPR proceeding. Moreover, all of ParkerVision's statements and positions in the IPR record are fully consistent with the Court's constructions of the downconverter terms. Thus, revisiting those terms would be a waste of the Court's time.

### A. Revisiting the construction of the downconverter terms would allow Intel to reargue the same claim construction positions that this Court has *rejected*.

ParkerVision's IPR claim construction positions on the '474 patent are not new to Intel. ParkerVision has argued the same points – that the claims of the patents-in-suit (including claim 1 of the '474 patent) are "directed to . . . energy transfer (i.e., energy sampling)," and the downconverter terms should receive their plain and ordinary meaning – since filing its Opening Claim Construction Brief on October 30, 2020. *See, e.g.,* D.I. 51 at 1, 29-30; D.I. 57 at 2, 27-28; D.I. 65 at 1, 19-20; D.I. 77 at 15:18; D.I. 75 at 2. And ParkerVision maintained these same positions in the IPR proceeding of the '474 patent since May 18, 2021 when it filed the Patent Owner Response. *See, e.g.,* Ex. 1 at 2, 20, 52; Ex. 3 at ¶¶182-184; Ex. 2 at 1-2; Ex. 4 at 6:17-27 ("[A]s we discussed with the Board about two weeks ago, ParkerVision's only representation is that the claims require sampling.").

Intel's attempts to advance incorrect claim constructions that support its non-infringement positions are also not new. Specifically, Intel has taken every opportunity before this Court and the Board to inject the concept of an "aliasing rate" into claim 1 of the '474 patent. *See, e.g.,* D.I. 53 at 9-10; D.I. 58 at 5-6; D.I. 66 at 3-6; D.I. 77 at 18:6-13; D.I. 75 at 2; Ex. 6 (IPR-1302 Petitioner's Supplemental Notice Regarding Claim Construction (dated October 30, 2020)) at 1; Ex. 7 (IPR-1302 Petitioner's Reply to Patent Owner's Response) at 12. But Intel has consistently failed in this endeavor.

10

Intel is up to its same tricks once again, this time under the guise of alleged disclaimer. Intel's new strategy for advancing the failed "aliasing rate" claim construction is to first twist ParkerVision's consistent and straight-forward position – that the claims are directed to energy sampling, and the downconverter terms should receive their plain and ordinary meaning – into a wholesale disclaimer of "mixers" and "mixing." Intel then uses that unilateral distortion as a vehicle to sneak in the same claim constructions that the Court previously considered and *rejected* over one year ago. *See* D.I. 117 at 13 ("*Intel believes that the appropriate construction would be to attach ParkerVision's disclaimer to Intel's initial proposed construction for these terms.*") (citing D.I. 53 at 9-10).

But Intel's new strategy is no more compelling than its previous arguments and should be rejected once again. *First*, no disclaimer exists in the IPR record. *See* Sections II-III above. Hence, there is no disclaimer for Intel to "attach" to its initial proposed construction. *Second*, ParkerVision's statements in the IPR record, which are consistent with the Court's existing claim constructions, do not provide good cause for the Court to revisit those constructions. *See Ericsson Inc. et al. v. TCL Comm. Tech. Holdings Ltd. et al.*, Case No. 2:15-cv-00011-RSP, Memorandum Opinion and Order (Nov. 4, 2017) at 33 (E.D. Tex.) (citing *Nuance Commc'ns, Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368, 1373 (Fed. Cir. 2016); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015).

Further, Intel argues that further claim construction is justified in part because ParkerVision "had not yet taken the position in this case that all of the asserted claims require 'energy sampling'" when the IPR was filed. D.I. 117 at 5. But that argument omits the deliberate and strategic litigation decisions Intel had already made in this case. Intel deliberately *chose* to file the IPR on September 2, 2020. At that time, Intel was aware of the following facts: (1) it had

11

until February 11, 2021 to file the IPR, one year after the filing date of this case (*see* 35 U.S.C. § 315(b)); (2) it could expect to receive ParkerVision's detailed claim construction positions on October 30, 2020 upon exchanging Opening Claim Construction Briefs (*see* D.I. 34 (Scheduling Order dated August 7, 2020) at 3); and (3) it could expect to present oral arguments on claim construction on January 22, 2021 by participating in the *Markman* hearing (*see* D.I. 34 at 3). Yet, even though Intel expected the *Markman* hearing to conclude before the statutory deadline for filing the IPR, Intel *strategically chose* to file the IPR more than *five months* earlier than necessary.[9] Of course, that was Intel's right to file the IPR on that date. But as such, it is only fair that Intel not be excused from the consequences of its own deliberate and strategic litigation decisions. Intel would not be prejudiced in any way by this Court refusing to revisit claim constructions for the downconverter terms that have already been adjudicated. On the other hand, it would be unfair for ParkerVision to now be forced into supplemental claim construction just because Intel now regrets its decision to prematurely file its IPR.

### B. The case law upon which Intel relies does *not* support revisiting claim construction under the present facts.

During the IPR, ParkerVision made no amendments to the claim language, nor did it make any statements that clearly and unequivocally disclaimed any claim scope. Realizing that these facts are fatal to its arguments for revisiting claim construction, Intel tries to bolster its case by citing to several cases throughout its brief. D.I. 117 at 1-15. But for each of those cases, Intel's reliance is completely misplaced because the revisitation of claim construction was triggered by a finding that disclaimer had occurred in the prosecution record. As demonstrated above, no such disclaimer occurred in the prosecution record of the '474 patent. *See* Sections II-

---

[9] Indeed, even if Intel had waited just two more months to file the IPR, it would have received ParkerVision's Opening Claim Construction Brief which clearly stated in the very first paragraph that all of the asserted claims were directed to sampling. D.I. 51 at 1.

12

III. The absence of any disclaimer confirms that the current plain and ordinary meaning construction of the downconverter terms is the correct construction. *See Chrimar Sys. v. Alcatel-Lucent, Inc.*, 2015 U.S. Dist. LEXIS 1801 (E.D. Tex., Jan. 7, 2015) at *19 (citing *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014), and *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). Therefore, no further construction is necessary on these terms.

For the foregoing reasons, the claim constructions for the downconverter terms should not be revisited, and Intel's motion should be denied.

V. **CONCLUSION**

ParkerVision respectfully requests that the Court deny Intel's motion.

Dated: April 4, 2022

Respectfully submitted,

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel/Fax: 512-865-7950

*Of Counsel:*
Ronald M. Daignault (*pro hac vice*)*
Chandran B. Iyer (*pro hac vice*)
Jason S. Charkow (*pro hac vice*)*
Stephanie R. Mandir (*pro hac vice*)
rdaignault@daignaultiyer.com
cbiyer@daignaultiyer.com
jcharkow@daignaultiyer.com
smandir@daignaultiyer.com
DAIGNAULT IYER LLP
8618 Westwood Center Drive, Suite 150
Vienna, VA 22182
**Not admitted in Virginia*
*Attorneys for ParkerVision, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on April 4, 2022.

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
