UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PARKERVISION, INC., <br>                Plaintiff, <br> vs. <br> INTEL CORPORATION, <br>                Defendant. | Civil Action No. 6:20-cv-00108-ADA <br><br> **JURY TRIAL DEMANDED** <br><br> ▬▬▬▬▬▬▬▬ <br><br> **PUBLIC VERSION** |

**DEFENDANT INTEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES UNDER 35 U.S.C. § 287**

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................................... 1

II.  Background ................................................................................................................... 2

III. Legal Standard .............................................................................................................. 4

IV.  Argument ...................................................................................................................... 6

    A.   ParkerVision Failed To Comply With The Marking Statute With Respect To Its Milo
        WiFi Products. .................................................................................................... 6

       i.   Intel met its burden of production by identifying the Milo WiFi products as unmarked
           patented articles based on ParkerVision's own assertions. ....................................... 6

       ii.  ParkerVision has not met its burden of showing that its Milo WiFi products do not
           practice the Asserted Patents. ...................................................................................... 9

    B.   ParkerVision Did Not Provide Intel Actual Notice Of Alleged Infringement Of Any
        Asserted Patent. .................................................................................................. 11

V.   Conclusion ................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
    2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018) ................................................................. 11

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    24 F.3d 178 (Fed. Cir. 1994) ............................................................................................ 5, 6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .............................................................................................................. 4

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017) .............................................................................. 1, 5, 6, 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................................. 4

*Dunlap v. Schofield*,
    152 U.S. 244 (1894) .............................................................................................................. 5

*Eason v. Thaler*,
    73 F.3d 1322 (5th Cir. 1996) ............................................................................................... 4

*KAIST IP US LLC v. Samsung Elecs. Co.*,
    2018 WL 10498197 (E.D. Tex. May 22, 2018) ................................................................. 9

*Lubby Holdings LLC v. Chung*,
    11 F.4th 1355 (Fed. Cir. 2021) ......................................................................................... 12

*Packet Intell. LLC v. NetScout Sys., Inc.*,
    965 F.3d 1299 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021) ............................ 10

*VLSI Tech. LLC v. Intel Corp.*,
    2021 WL 2773013 (W.D. Tex. Apr. 12, 2021) ................................................................. 5

**STATUTES, RULES, AND REGULATIONS**

35 U.S.C. § 287 ............................................................................................................... 1, 5, 6

35 U.S.C. § 287(a) ............................................................................................................ 5, 12

Federal Rules of Civil Procedure 56(a) ............................................................................... 4

## I. INTRODUCTION

Intel respectfully moves for summary judgment of no pre-suit damages with respect to all Asserted Patents based on ParkerVision's failure to comply with 35 U.S.C. § 287, the "Marking Statute," or otherwise provide pre-suit actual notice of alleged infringement.[1]

*First*, there is no genuine issue of material fact regarding ParkerVision's failure to comply with the Marking Statute. In a complaint filed against another party in this Court, ParkerVision asserted that the down-conversion functionality of certain wireless products—at least one of which used a particular Realtek WiFi transceiver chip to perform the accused down-conversion functionality—infringes five of the six Asserted Patents. It is undisputed that ParkerVision's Milo WiFi products use that ***same*** Realtek WiFi transceiver chip to perform down-conversion, that ParkerVision sold its Milo WiFi products in the United States during the term of the Asserted Patents, and that ParkerVision did not mark the products with any patents.

Intel identified the Milo WiFi products to ParkerVision as unmarked patented articles based on ParkerVision's own prior assertions that products using the Realtek WiFi transceiver chip infringed the Asserted Patents. Therefore, ParkerVision bears the burden to prove that the Milo WiFi products did ***not*** embody the Asserted Patents. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017). But ParkerVision has disclaimed all knowledge of the operation of the Realtek transceiver chip (including its down-conversion functionality) in this case and, as a result, cannot meet that burden. Summary judgment of failure to mark is therefore appropriate, and ParkerVision cannot obtain pre-suit damages absent actual notice of alleged infringement by ParkerVision.

---

[1] ParkerVision is asserting U.S. Patent Nos. 6,580,902 (the "'902 patent"), 8,588,725 (the "'725 patent"), 9,118,528 (the "'528 patent"), 9,246,736 (the "'736 patent"), 9,444,673 (the '673 patent"), and 7,539,474 (the '474 patent") (collectively, the "Asserted Patents").

1

***Second***, the undisputed facts show that ParkerVision never provided actual notice of alleged infringement to Intel before filing its February 11, 2020 complaint in this case. Dkt. 1. It is undisputed that ParkerVision never sent a letter providing actual notice to Intel. Indeed, for five of the six Asserted Patents, ParkerVision does not even allege *any* actual notice. And for the sixth patent, the '528 patent, ParkerVision points only to ParkerVision's May 5, 2016, third-party subpoena to Intel in connection with an International Trade Commission ("ITC") investigation. But, following Intel's response to the subpoena, ParkerVision affirmatively stated on the record in that Investigation that it had "***never***" accused Intel of infringement. As a result, and as a matter of law, ParkerVision did not provide actual notice of alleged infringement of any Asserted Patent.

Based on the combination of ParkerVision's failure to mark and its failure to provide actual notice, Intel is entitled to summary judgment that ParkerVision may not recover damages before the filing of the complaint on February 11, 2020.

## II.   BACKGROUND

The Asserted Patents concern down-conversion functionality in transceiver chips. Ex. 1, Steer Opening Rpt., ¶¶458-59.[2] In another action in this Court, ParkerVision accused products that use WiFi transceiver chips from Realtek to perform down-conversion—including the Realtek RTL8811AU chip—of infringing five of the six Asserted Patents. Specifically, in its complaint accusing Buffalo, Inc. ("Buffalo") of infringement, ParkerVision accused the down-conversion functionality of Buffalo's "AirStation series and Wireless N-Media Bridge wireless networking products containing WiFi chips …." Ex. 2, Complaint, *ParkerVision, Inc. v. Buffalo Inc.*, No. 6:20-cv-01009, Dkt. 1, ¶¶1, 21, 73, 96, 112, 122, 134 (W.D. Tex. Oct. 30, 2020) (hereinafter, the "Buffalo Complaint"). In his deposition, ParkerVision's CEO, Jeff Parker, confirmed that

---

[2] All exhibits are attached to the Declaration of Harry Hanson, filed concurrently herewith.

ParkerVision's allegations were directed to *all* Buffalo AirStation products. Ex. 3, Parker Dep. at 613:17-24 ("Q. And ParkerVision accused all of Buffalo's AirStation series and wireless [N-Media] Bridge products of infringing its patents in that case; correct? A. Yes. I see that in the complaint."). At least one of Buffalo's AirStation products used the Realtek RTL8811AU chip to perform down-conversion. Ex. 4, 96100DOC00119098 at -098 (User Manual for the Buffalo AirStation WI-U2-433DM and WI-U2-300D); Ex. 5, 96100DOC00119094 at -095 (Internal photographs of the Buffalo AirStation WI-U2-433DM and WI-U2-300D showing that they incorporate an RTL8811AU).

ParkerVision further admits that: **(1)** ParkerVision's Milo WiFi products used that same WiFi transceiver chip from Realtek—the RTL8811AU—to perform down-conversion, (Ex. 6, PV Suppl. Resp. to Interrog. No. 13 (June 21, 2022) at 32 ("All Milo products used the RTL8811AU."); Ex. 7, PV Resps. to First Set of RFAs (Feb. 1, 2022) at 12-13 ("ParkerVision admits that the ParkerVision product under the brand name Milo used a ***Realtek proprietary WiFi transceiver chip*** for which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration.")); **(2)** ParkerVision sold its Milo WiFi products in the United States from 2017 to 2019, i.e., during the term of the Asserted Patents (Ex. 7, PV Resps. to First Set of RFAs (Feb. 1, 2022) at 6-7 ("ParkerVision admits that ***in 2017 ParkerVision first offered for sale a product under the brand name Milo***, which uses a third party proprietary WiFi transceiver chip for which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration."); Ex. 8, PV 2017 10-K (96100DOC00087616) at -627 ("We began selling our Milo WiFi products ***in the U.S.*** in 2017 primarily though Amazon.com and our own online store.")); and **(3)** ParkerVision never marked the Milo WiFi products with its patents, either actually or virtually (Ex. 7, PV Resps. to First Set of RFAs (Feb. 1, 2022) at 11 ("ParkerVision admits that

3

the ParkerVision product under the brand name Milo used a third-party proprietary WiFi transceiver chip for which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration and, thus, ***did not contain any patent information***."); Ex. 9, PV_040049 (Milo WiFi packaging which does not contain any patent numbers)).[3]

Despite accusing products that use the Realtek RTL8811AU chip of infringement in another case, ParkerVision in this case now disclaims any knowledge of the configuration, operation, architecture, or design of the Realtek RTL8811AU chip used in its own product. Ex. 6, PV Suppl. Resp. to Interrog. No. 13 (June 21, 2022) at 32 ("From the time Milo products were made, used, sold, and offered for sale through today, ***ParkerVision has no information about configuration, operation, architecture, or design of the Realtek RTL8811AU***."); Ex. 7, PV Resps. to First Set of RFAs (Feb. 1, 2022) at 6-7, 11, 12-13 ("ParkerVision admits that the ParkerVision product under the brand name Milo used a Realtek proprietary WiFi transceiver chip ***for which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration***.").

### III. LEGAL STANDARD

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[M]ere conclusory allegations are … insufficient … to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

---

[3] All emphases are added unless otherwise noted.

4

Under 35 U.S.C. § 287(a), in order to obtain damages prior to the filing of a complaint, a patentee that makes or sells a patented article must either mark such articles or provide the accused infringer with actual notice of the alleged infringement.

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them ... may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent …. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

"The burden of proving compliance with marking is and at all times remains **on the patentee**." *Arctic Cat*, 876 F.3d at 1367. "[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Id.* at 1368. "***[T]his is a low bar***." *Id.*; *see also VLSI Tech. LLC v. Intel Corp.*, 2021 WL 2773013, at *3 (W.D. Tex. Apr. 12, 2021) ("The alleged infringer's initial burden of production is a 'low bar' and ***can be satisfied by identifying those products the alleged infringer believes practices the patents***."). "The alleged infringer's burden is a burden of production, not one of persuasion or proof." *Arctic Cat*, 876 F.3d at 1368. "Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention." *Id.*

A patentee that fails to mark can only collect damages after it has provided actual notice. 35 U.S.C. § 287(a). "Actual notice requires the ***affirmative communication of a specific charge of infringement by a specific accused product or device***." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (citing *Dunlap v. Schofield*, 152 U.S. 244, 244

5

(1894)). "The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Id.* at 186-87.

## IV.   ARGUMENT

ParkerVision asserts apparatus claims for all six Asserted Patents, and therefore cannot collect pre-suit damages unless it either marked any patented articles under the Marking Statute or gave Intel actual notice of alleged infringement of the Asserted Patents. ParkerVision neither complied with the Marking Statute nor provided actual notice to Intel of alleged infringement of any Asserted Patent, and there is no genuine issue of material fact as to any relevant issue. Intel is therefore entitled to summary judgment that ParkerVision cannot collect pre-suit damages.

### A.   ParkerVision Failed To Comply With The Marking Statute With Respect To Its Milo WiFi Products.

ParkerVision cannot show compliance with the Marking Statute. Intel met its burden of production by identifying ParkerVision's Milo WiFi products as unmarked patented articles (based on ParkerVision's own assertions). But ParkerVision cannot, by its own admission, meet its burden of showing that its Milo WiFi products do not practice the Asserted Patents.

#### i.   Intel met its burden of production by identifying the Milo WiFi products as unmarked patented articles based on ParkerVision's own assertions.

An alleged infringer such as Intel bears only "an initial burden of production" to identify allegedly unmarked patented articles; the Federal Circuit has specifically stated that this burden is a "***low bar***." *Arctic Cat*, 876 F.3d at 1368. Intel has easily cleared that low bar here by identifying ParkerVision's Milo WiFi products as products that, ***according to ParkerVision's own assertions***, are unmarked patented articles.

During discovery, Intel notified ParkerVision that ParkerVision's Milo WiFi products constituted unmarked patented articles based on ParkerVision's allegations. Ex. 10, Intel Suppl. Resp. to Interrog. No. 14 (Apr. 22, 2022) at 47-48, 49 ("In sum, the Milo WiFi product is an

6

unmarked product sold in the United States that, according to ParkerVision's own statements, practices at least one claim of U.S. Patent Nos. 6,580,902, 8,588,725, 9,118,528, 9,246,736, 9,444,673, and 7,539,474.").

***First***, Intel explained that, according to ParkerVision's own assertions regarding the Asserted Patents, the Milo WiFi products were patented articles. Intel pointed to ParkerVision's admission that its Milo WiFi products incorporated a Realtek WiFi transceiver chip (the Realtek RTL8811AU) to perform down-conversion, and the fact that ParkerVision had accused the down-conversion functionality in other products that use the *same* Realtek WiFi transceiver chip to perform down-conversion of infringing five of the six patents asserted in this case.[4] Ex. 10, Intel Suppl. Resp. to Interrog. No. 14 (Apr. 22, 2022) at 38-40 (citing Ex. 7, PV Resps. to First Set of RFAs (Feb. 1, 2022) at 12-13 ("ParkerVision admits that the ParkerVision product under the brand name Milo used a ***Realtek proprietary WiFi transceiver chip*** for which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration."); Ex. 6, PV Suppl. Resp. to Interrog. No. 13 (June 21, 2022) at 17 ("ParkerVision asserted that the RF integrated circuits identified in the complaint in *ParkerVision, Inc. v. Buffalo, Inc.* (W.D. Tex., Case No. 6:20-CV-01009) and *ParkerVision, Inc. v. Zyxel Communications Corp.* (W.D. Tex., Case No. 6:20-cv-01010) practice or embody one or more claims of U.S. Patent Nos. 6,580,902; 8,588,725; 9,118,528; 9,246,736 and 9,444,673."); Ex. 2, Buffalo Complaint, ¶21); Ex. 11, Intel Suppl. Resp. to Interrog. No. 14 (July 1, 2022) at 52-54 (citing Ex. 2, Buffalo Complaint, ¶21 ("Buffalo Products including, but not limited to, ***the AirStation series*** and Wireless N-Media Bridge wireless networking products, ***include modules containing Wi-Fi chips*** including, ***without limitation***,

---

[4] For the sixth Asserted Patent, the '474 patent, Intel's interrogatory response provided claim charts comparing the claims of the '474 patent to ParkerVision's allegations against Realtek chips. Ex. 10, Intel Suppl. Resp. to Interrog. No. 14 (Apr. 22, 2022) at 40-47.

7

MediaTek MT7612 and MT7620 and Realtek RTL8192BU and RTL8188ER (each a 'Buffalo Chip'; collectively, the 'Buffalo Chips'). Buffalo Chips *provide wireless connectivity* for the Buffalo Products."); Ex. 3, Parker Dep. at 613:17-24 ("Q. And ParkerVision accused all of Buffalo's AirStation series and wireless [N-Media] Bridge products of infringing its patents in that case; correct? A. Yes. I see that in the complaint.")).

Intel identified to ParkerVision a Buffalo AirStation wireless networking product that used the Realtek RTL8811AU to perform the accused down-conversion functionality. *See* Ex. 11, Intel Suppl. Resp. to Interrog. No. 14 (July 1, 2022) at 52-54 (citing Ex. 4, 96100DOC00119098 at -098 (User Manual for the Buffalo AirStation WI-U2-433DM and WI-U2-300D)); Ex. 5, 96100DOC00119094 at -095 (Internal photographs of the Buffalo AirStation WI-U2-433DM and WI-U2-300D showing that they incorporate an RTL8811AU)). Intel thus explained that according to ParkerVision's own allegations against the down-conversion functionality of *all* Buffalo AirStation products (including those that use the RTL8811AU to perform down-conversion), the Milo WiFi product (which also used the RTL8811AU to perform down-conversion) would also practice the Asserted Patents.[5]

***Second***, Intel provided evidence that the Milo WiFi products were sold during the term of each Asserted Patent and that they were unmarked. Specifically, Intel pointed to ParkerVision's admission to selling the Milo WiFi products from 2017-2019 during the term of all Asserted

---

[5] Consistent with this, ParkerVision's SEC filings stated that the Milo WiFi products contained integrated circuits based on ParkerVision's "*proprietary technologies*." Ex. 8, PV 2017 10-K (96100DOC00087616) at -625 ("[F]rom 2013 through 2017, we also designed and developed products that included integrated circuits ('ICs') based on our proprietary technologies as well end-user WiFi products aimed at the home and small business networking market. These product development efforts culminated in the launch of our Milo brand product line, which began selling in October 2017.").

8

Patents;[6] cited ParkerVision's admission that its Milo WiFi products "did not contain any patent information"; and noted that the Milo WiFi packaging did not contain any patent numbers. Ex. 10, Intel Suppl. Resp. to Interrog. No. 14 (Apr. 22, 2022) at 37-38 (citing Ex. 7, PV Resps. to First Set of RFAs (Feb. 1, 2022) at 6-7, 11; Ex. 9, PV_040049 (Milo WiFi packaging)).

Accordingly, when Intel identified the Milo WiFi products as unmarked patented articles based on ParkerVision's own allegations, Intel met—and exceeded—the "low bar" required by *Arctic Cat*, and triggered ParkerVision's burden of proving that the Milo WiFi products do *not* use the Asserted Patents. *See Arctic Cat*, 876 F.3d at 1368 ("The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products."), 1369 ("It was Arctic Cat's burden to prove those products—once identified—do not practice the patents-at-issue."); *KAIST IP US LLC v. Samsung Elecs. Co.*, 2018 WL 10498197, at *3 n.1 (E.D. Tex. May 22, 2018) ("A court would be hard-pressed to conclude an alleged infringer could not rely on [allegations by a patentee that a product practices its patents] to meet its burden under *Arctic Cat*.").

> ii. **ParkerVision has not met its burden of showing that its Milo WiFi products do not practice the Asserted Patents.**

Because Intel met its burden of production by identifying the Milo WiFi as an unmarked patented article sold in the United States during the term of the Asserted Patents based on ParkerVision's own admissions, ParkerVision bears the burden of proving that it complied with its marking obligations. To establish compliance with its marking obligations under the Marking Statute, ParkerVision must prove that its products do not practice the Asserted Patents. *See Arctic Cat*, 876 F.3d at 1368 ("Once the alleged infringer meets its burden of production, … ***the patentee bears the burden*** to prove the products identified do not practice the patented invention.").

---

[6] The '902, '725, '528, '736, and '673 patents expired on October 21, 2018, and the '474 patent expired on March 14, 2020.

9

ParkerVision cannot meet that burden because, notwithstanding the fact that ParkerVision used the RTL8811AU WiFi transceiver chip *in its own products*, and notwithstanding the fact that ParkerVision has accused products that use that chip of infringing its patents, it has repeatedly disclaimed all knowledge of the RTL8811AU WiFi transceiver chip in this case. *See* Ex. 7, PV Resps. To First Set of RFAs (Feb. 1, 2022) at 6-7 ("ParkerVision admits that in 2017 ParkerVision first offered for sale a product under the brand name Milo, which uses a third party proprietary WiFi transceiver chip *for which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration*."), 11 ("ParkerVision admits that the ParkerVision product under the brand name Milo used a third-party proprietary WiFi transceiver chip for *which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration* and, thus, did not contain any patent information."), 12-13 ("ParkerVision admits that the ParkerVision product under the brand name Milo used a Realtek proprietary WiFi transceiver chip *for which ParkerVision had/has no knowledge of the circuit level design, architecture, or configuration*."); Ex. 6, PV Suppl. Resp. to Interrog. No. 13 (June 21, 2022) at 32 ("From the time Milo products were made, used, sold, and offered for sale through today, *ParkerVision has no information about configuration, operation, architecture, or design of the Realtek RTL8811AU*."). ParkerVision never sought additional discovery about the RTL8811AU chip in this case even though Intel first identified the Milo WiFi to ParkerVision months before the end of fact discovery.

ParkerVision's "head-in-the-sand" approach cannot avoid summary judgment because, under *Artic Cat*, it is **ParkerVision's burden** to prove that its Milo WiFi products did not practice the Asserted Patents. With "no information" about the operation of the RTL8811AU transceivers used in ParkerVision's Milo WiFi products (including the manner in which the RTL8811AU transceivers perform down-conversion), ParkerVision cannot meet that burden. *See Packet Intell.*

10

*LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1314 (Fed. Cir. 2020) ("Because Packet Intelligence failed to present substantial evidence to the jury that matched the limitations in any claim of the '789 patent to the features of the MeterFlow product, NetScout is entitled to judgment as a matter of law that it is not liable for pre-suit damages based on infringement of the '789 patent."), *cert. denied*, 141 S. Ct. 2521 (2021); *see also Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2018 WL 1525686, at *7 (E.D.N.Y. Mar. 27, 2018) ("[D]isputing the significance of the evidence which defendant has presented, including plaintiff's admissions and the Randall Report, does not suffice to show existence of a genuine issue for trial."). Summary judgment of failure to mark is therefore appropriate, and ParkerVision is not entitled to pre-suit damages absent actual notice of infringement by ParkerVision.

## B. ParkerVision Did Not Provide Intel Actual Notice Of Alleged Infringement Of Any Asserted Patent.

Given that ParkerVision cannot meet its burden to show that its Milo WiFi products were outside of the scope of the Asserted Patents, ParkerVision can recover pre-suit damages ***only*** if it provided actual pre-suit notice of alleged infringement to Intel. It failed to do so.

It is undisputed that ParkerVision never sent any notice letters to Intel asserting that Intel products infringed the Asserted Patents. Ex. 6, PV Suppl. Resp. to Interrog. No. 1 (June 21, 2022) at 1-5. Indeed, for five of the six Asserted Patents,[7] ParkerVision has not even alleged that it provided actual notice of alleged infringement. *Id*. Therefore, any damages arising out of the alleged infringement of these patents cannot predate the filing of the complaint on February 11, 2020.

ParkerVision alleges only that it provided actual notice of the '528 patent. Specifically, ParkerVision claims to have given Intel notice of alleged infringement of the '528 patent by

---

[7] The '902, '725, '474, '736, and '673 patents.

11

serving a third-party subpoena on Intel in May 2016 in connection with an ITC investigation involving Apple and others. *Id*. at 3; Ex. 12, PV ITC Subpoena (PV_039870). But ParkerVision's argument ignores that, following Intel's production of documents and testimony in response to ParkerVision's subpoena, ParkerVision affirmatively stated on the record in that ITC investigation that it was **not** accusing Intel's transceiver chips of infringement. Ex. 13, *Certain RF Capable Integrated Circuits and Products Containing the Same* (ITC, Inv. No. 337-TA-982), Determination Number 14 (I.T.C. Aug. 15, 2016) (PV_055448) at -453 ("ParkerVision states that it has never accused the Intel-Based iPhones [*i.e.*, the iPhones that used Intel chips] of infringement …."). Thus, far from putting Intel on actual notice of alleged infringement, ParkerVisions's subpoena and subsequent statements in the ITC proceedings establish the opposite—that ParkerVision was **not** accusing Intel of infringement. Accordingly, the subpoena cannot as a matter of law constitute actual notice.[8]

## V.   CONCLUSION

ParkerVision never marked its Milo WiFi products with any patent numbers and cannot satisfy its burden that those products do not embody the Asserted Patents. ParkerVision also failed to provide Intel any actual notice of alleged infringement. There is no genuine issue of material fact as to any of these issues, and Intel therefore respectfully requests that the Court enter summary judgment that ParkerVision is not entitled to damages prior to February 11, 2020.

---

[8] Indeed, ParkerVision does not even allege that the subpoena included a demand that Intel abate any alleged infringement (because it indisputably did not) as is required to meet the actual notice requirement. *See Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360 (Fed. Cir. 2021) ("As we have long explained, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, ***accompanied by a proposal to abate the infringement***, whether by license or otherwise." (citations and quotations omitted)).

12

Dated: October 28, 2022

Michael J. Summersgill (admitted *Pro Hac Vice*)
Sarah B. Petty (admitted *Pro Hac Vice*)
Harry Hanson (admitted *Pro Hac Vice*)
Samuel C. Leifer (admitted *Pro Hac Vice*)
Alicia Coneys (admitted *Pro Hac Vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
T (617) 526-6000
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com
harry.hanson@wilmerhale.com
samuel.leifer@wilmerhale.com
alicia.coneys@wilmerhale.com

Todd Zubler (admitted *Pro Hac Vice*)
Isley M. Gostin (admitted *Pro Hac Vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
T (202) 663-6636
todd.zubler@wilmerhale.com
isley.gostin@wilmerhale.com

Mary (Mindy) V. Sooter
Wilmer Cutler Pickering Hale and Dorr LLP
1225 17th Street, Suite 2600
Denver, CO 80202
T (720) 274-3135
mindy.sooter@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

Harry J. Gillam, Jr.
GILLAM & SMITH, LLP
303 South Washington Ave.
Marshall, Texas 75670
T (903) 934-8450
F (903) 934-9257
gil@gillamsmithlaw.com

Respectfully submitted,

*/s/ J. Stephen Ravel*

J. Stephen Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
T (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
T (254) 710-7670
james.wren@baylor.edu

**ATTORNEYS FOR DEFENDANT INTEL CORPORATION**

13

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via electronic mail on October 28, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
