IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br><br>Defendant. | Case No. 6:20-cv-00108-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF PARKERVISION, INC.'S OPPOSITION TO DEFENDANT INTEL CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES UNDER 35 U.S.C. § 287**

## TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

APPLICABLE LAW ..... 2

STATEMENT OF FACTS ..... 4

ARGUMENT ..... 6

I. Intel Has Not Met its Burden of Production. ..... 6

A. Intel's view of ParkerVision's marking obligations is wrong. ..... 7

B. Intel's Burden of Production cannot be Satisfied by its Attorneys' Views of the Allegations in the Buffalo Complaint. ..... 9

C. Intel's Reliance on the Buffalo Complaint is Unrelated to the '474 Patent ..... 11

D. Intel had actual notice of the '528 Patent ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AquaTex Indus. v. Techniche Sols.*,
479 F.3d 1320 (Fed. Cir. 2007)....................12

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
876 F.3d 1350 (Fed. Cir. 2017).................... *passim*

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
616 F.3d 1357 (Fed. Cir. 2010)....................3

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001)....................3, 4, 13

*HVLPO2, LLC v. Oxygen Frog, LLC*,
949 F.3d 685 (Fed. Cir. 2020)....................12

*KAIST IP US LLC v. Samsung Elecs. Co.*,
2018 WL 10498197, 2018 U.S. Dist. LEXIS 234952 (E.D. Tex. May 22, 2018) ....................8

*ParkerVision, Inc. v. Buffalo, Inc.*
(W.D. Tex., Case No. 6:20-CV-01009) ....................4

*Pavo Sols. LLC v. Kingston Tech. Co.*,
No. 8:14-cv-01352-JLS-KES, 2019 U.S. Dist. LEXIS 160197 (C.D. Cal. 2019) ....................3, 7

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
127 F.3d 1462 (Fed. Cir. 1997)....................3

**Statutes**

35 U.S.C. § 287 ....................2, 3

**INTRODUCTION**

Intel raises a marking defense and attempts to torpedo ParkerVision's entire damages based on a *third-party* WiFi chip – the Realtek RTL8811AU – that ParkerVision simply bought *off-the-shelf* and put into ParkerVision's short-lived "Milo" product. Because the chip is *proprietary* technology of Realtek (with layers of interconnected microscopic components), ParkerVision never had any information about the configuration/operation the chip. ParkerVision cannot mark its products based on third-party technology it does not know about.

Without any technical analysis to connect the claims of ParkerVision's patents to the Realtek RTL8811AU, Intel tries to play "gotcha" with the marking statute. But it presents no evidence regarding the relevant functionality of the RTL8811AU chip. It makes no effort to describe how the chip practices any element of any patent. And Intel's expert makes no mention of this chip in 2,235-pages of expert reports. Indeed, Intel admits that neither it nor ParkerVision has any technical information to suggest that the RTL8811AU chip practices the patents-in-suit.

Instead, Intel's defense is based solely on (1) Intel *attorney arguments* that contort allegations ParkerVision made in a *different* litigation about *different* Realtek chips, and (2) out-of-context snippets of deposition testimony of Jeffrey Parker (ParkerVision's CEO). To the extent that Mr. Parker's testimony is relevant at all, Mr. Parker provided a declaration (attached to this brief) refuting Intel's characterization of his testimony. Thus, there is a dispute of fact.

Under Intel's view, the baseless utterance of the words "Realtek RTL8811AU" chip satisfies its burden of production. It does not. *First*, while the bar to meet its burden of production with respect to a failure to mark may be "low," it is not non-existent. Intel cannot shift the burden to ParkerVision to affirmatively prove that a third-party chip does not practice every asserted claim without *any* technical analysis or admissible evidence. If Intel was right, a defendant could up-end a plaintiff's damages by simply claiming – without any evidence – that

all patentee and/or licensee products practiced the asserted patents. Such unfounded allegations would allow the type of "gamesmanship" that the Federal Circuit has specifically warned against.[1] Particularly in industries involving microscopic technology (like the Realtek RTL8811AU) – where basic analysis involves expensive teardowns, extractions, and simulations – such a standard would be the death knell to an innovators' ability to enforce its patents.

*Second*, as a factual matter, Intel cannot show that ParkerVision ever accused the RTL8811AU chip of infringing any patent – much less all the patents asserted here. It has not. In a litigation against Buffalo, ParkerVision specifically accused two unrelated RealTek chips (the RTL8192BU and RTL8188ER chips) of infringing five of the six patents asserted here.[2] While ParkerVision's complaint did not *exclude* the possibility that other chips may infringe, ParkerVision had no information to justify an affirmative claim of infringement with respect to any other chips – and never made one. Intel cannot contort the allegations in ParkerVision's complaint to plausibly assert that the RTL8811AU chip practices the patents-in-suit.

At a bare minimum, there is a genuine dispute of material fact regarding whether ParkerVision's previous allegations included the RTL8811AU chip. And Intel's motion based upon an unsupported and contested allegation of a failure to mark should be denied.

**APPLICABLE LAW**

35 U.S.C. § 287 allows a patentee to provide constructive notice to the public that certain articles are covered by patents through marking the relevant patent numbers on the article, its packaging, or virtually on a website. In some cases, failure to adequately mark patent numbers

---

[1] Such unfounded allegations could significantly increase litigation costs, extend discovery, and expand the scope of discovery to include extensive technical discovery from third parties.

[2] U.S. Patent Nos. 6,580,902 (the "'902 patent"), 8,588,725 (the "'725 patent"), 9,118,528 (the "'528 patent"), 9,246,736 (the "'736 patent"), 9,444,673 (the "'673 patent").

associated with a product can limit the period for which a patentee can recover damages in a patent infringement case. "Compliance with § 287(a)'s marking requirements is a question of fact." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).

When a defendant believes that a patentee has failed to mark products that should have been marked, that defendant bears the "initial burden of production" to "plausibly" identify specific products that should have been marked. *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1367-68 (Fed. Cir. 2017) (quoting *Unwired Planet, LLC v. Apple Inc.*, 2017 U.S. Dist. LEXIS 20935, 2017 WL 1175379, at *5 (N.D. Cal. Feb. 14, 2017) ("the infringer bears some initial burden of plausibly identifying products subject to the marking requirement."). "A 'burden of production' necessarily means a burden to come forward with some amount of admissible evidence." *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES, 2019 U.S. Dist. LEXIS 160197, at *6 (C.D. Cal. 2019) (denying summary judgment where evidence "insufficient to meet [defendant's] burden of production.") While the Federal Circuit has not determined "the minimum showing needed to meet the initial burden of production," it has given guidance regarding what is required to shift the burden of proof. *Id.* at 1368. It has directed that proffering an expert opinion indicating that the expert "review[ed] information regarding those models" and found that the products "practiced the Patents" is sufficient. *Id*.

Notice under 35 USC § 287 can also be provided through actual notice to the infringer. "Although there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *see also*, *Gart v. Logitech*, *Inc.*, 254 F.3d 1334, 1336-37 (Fed. Cir. 2001) ("as long as the communication from the patentee provides

sufficient specificity regarding its belief that the recipient may be an infringer, the statutory requirement of actual notice is met.”). Questions about actual notice are for the jury. *Id.* at 1339.

**STATEMENT OF FACTS**

ParkerVision sold a short-lived WiFi product by the name “Milo.” Intel now asserts that ParkerVision was required, but failed, to mark the Milo products with the patents-in-suit. *See* Intel’s MSJ of No Pre-suit Damages, (hereinafter “D.I. 172”) at 1. Intel’s purported belief for why the Milo products should have been marked is solely based on the presence of a proprietary third-party Realtek RTL8811AU chip found in the Milo product. *Id.* at 2. ParkerVision bought this chip off-the-shelf from Realtek and, thus, has no knowledge of how it was configured or operated. *See* Exhibit A, Declaration of Mr. Jeffery Parker, at ¶ 7.[3]

Intel’s entire marking defense related to Milo is based on Intel’s reading of an allegation in a 2020 patent infringement case ParkerVision brought against Buffalo, Inc. *ParkerVision, Inc. v. Buffalo, Inc.* (W.D. Tex., Case No. 6:20-CV-01009) (“the “Buffalo Litigation”). *See* Exhibit B (“the Buffalo Complaint”). That suit asserted infringement of certain claims of the ’902, ’528, ’725, ’736 and ’673 patents, but did *not* assert infringement of any claim of the ’474 patent. *Id.* In each of its infringement allegations, ParkerVision made clear that it only asserted infringement with respect to those products that were “covered by” specific claims, “capable of” performing certain activities, and which “include” certain structures and configurations. *See Id.* at ¶¶ 71-76, 94-97, 110-17, 120-29, 132-37. With respect to each patent, ParkerVision focused its allegations on the functionality of the accused chips. *Id.* The Buffalo Complaint referred to “Buffalo Chips” specifically naming two chips made by MediaTek (MT7612 and MT7620) and two chips made by Realtek (RTL8192BU and RTL8188ER). *Id.* at ¶ 21.

[3] All exhibits referenced herein are exhibits to the accompanying declaration of Oded Burger.

Intel has not presented any information regarding the functioning of the RTL8811AU chip or any technical analysis to suggest that the chip practices the claimed elements of any asserted patent. It is undisputed that neither party to this litigation has ever been in possession of any of Realtek's proprietary information concerning the RTL8811AU chip that would be sufficient to allow a party to plausibly assert infringement (or the practice of any claim) of the asserted patents in this litigation.[4] As explained by ParkerVision's technical expert:

> The configuration/operation of chips is highly proprietary/confidential. It is not something that is publicly available. … [I]n order to determine how the chip is configurated/operates on a circuit level from a technical point of view, one needs to obtain schematics from the chip manufacturer or obtain an extraction (reverse engineering) report from a reputable company . . . . Even then, one would need to understand component values to perform an analysis and determine how the chip is configurated/operates at the circuit level. Information from the chip manufacturer is the best source of component value information. Unless ParkerVision makes a chip or has schematic/component value information from a third party (which is difficult/expensive to obtain), there is no way for ParkerVision to know how a particular chip is configured/operates at the circuit level. Without the information I discuss above, even in ParkerVision's … own products, if a third-party chip is used, ParkerVision … will not know the configuration/operation of the chip. And, without the information I discuss above, there is no way for ParkerVision to determine whether a ParkerVision patent covers a chip used in a product …. Finally, I note that transceiver/receiver chips are extremely small and have microscopic components. One cannot just look at a physical chip and see the details that are necessary to perform an analysis as to the circuit configuration/operation of the chip. One needs expensive equipment, sophisticated imaging techniques, specialized software, and other processes to extract circuit level information. Extraction reports can take months and costs over $100,000. In some cases, such reports can cost hundreds of thousands of dollars.

*See* Exhibit D, Rebuttal Expert Report of Dr. Michael Steer at ¶¶ 99-102. It is also undisputed that Intel's experts have not provided any technical opinion (or analysis of any kind whatsoever) to support Intel's allegation that the Realtek RTL8811AU chip within the Milo Wi-Fi product practices any of the claims of the patents-in-suit. *See* D.I. 172 generally.

[4] *See,* Exhibit C, Defendant Intel Corporation's August 12, 2022, Supplemental Responses and Objections to Plaintiff ParkerVision, Inc.'s Fourth Set of Interrogatories (Nos. 14-17) at p. 40, admitting that Intel does not have sufficient technical information to determine whether ParkerVision's products practiced any asserted patent. *See also* Ex. A at ¶ 7.

Lacking any technical predicate for asserting that the Milo Wi-Fi product practiced any claims of the patents-in-suit, Intel attempts to expand the allegations in the Buffalo Complaint to cover the Realtek RTL8811AU chip. *See Id*. at 2. Intel also attempts to extrapolate the allegations in yet another case (that has nothing to do with the Realtek RTL8811AU chip) to cover the '474 patent – which was indisputably not asserted in either the Buffalo Complaint or the second litigation. *See* D.I. 172 at p. 7n.4. As explained in the declaration of Jeffery Parker, "ParkerVision has ever accused the Realtek RTL8811AU chip of infringing any of the asserted patents in this case. That chip is never mentioned in the Buffalo Complaint, and [he is] not aware of any ParkerVision legal assertion about that chip or any claim that the RTL8811AU chip infringes or practices any ParkerVision patents." Ex. A at ¶ 6. Indeed, contrary to Intel's assertions, the only products that ParkerVision specifically accused of infringement involved unrelated chips. Ex. B at ¶¶ 18, 21, 71-76, 94-97, 110-17, 120-29, 132-37.

Moreover, ParkerVision's expert, Dr. Steer, explained that the RTL8192BU and RTL8188ER chips accused in the Buffalo Complaint have different functionalities and that no conclusions can be drawn about the similarities or differences between the configuration/operation of those chips and the Realtek RTL8811AU without detailed proprietary schematics and component values. Ex. D at ¶¶ 64, 77-83.

## ARGUMENT

### I. Intel Has Not Met its Burden of Production.

Intel posits that because it simply listed the "Milo Wi-Fi" in an interrogatory response (without any evidentiary support), that, under *Arctic Cat*, it is now ParkerVision's burden to prove that proprietary third-party components within that product did not fall within the patent claims. But *Arctic Cat* was a very different case than this one – and it never suggests that the mere utterance of a product name, without more, is sufficient to meet Intel's burden here. In

*Arctic Cat*, the alleged infringer put forth an expert who "testified that he 'review[ed] information regarding those models" and opined that he believed the products "practiced the Patents." *See Arctic Cat*, 876 F.3d 1350, 1368. The Court noted that "[t]his was sufficient to satisfy [a defendant's] initial burden of production." *Id.* Here, there is *no evidence of record* and *no opinion of any kind from an Intel expert* to underlie a good-faith belief that the Milo Wi-Fi products were plausibly covered by any of the patent-in-suit. And, given the facts here, there can be no reasonable basis for Intel's litigation gambit.

Intel notes that the "bar is low" -- but it is not that low, nor is it non-existent. The *Arctic Cat* Court did not "determine the minimum showing needed to meet the initial burden of production." *Id.* Intel's view of the law, however, would all but eliminate the burden altogether. Intel suggests that all it must do is say "Milo" or "RTL8811AU" and then the burden shifts to ParkerVision. But intel's view that it need not come forward with *any* corroborative evidence is not what the law requires, and could result in exactly the "fishing expedition" and "gamesmanship" that the *Artic Cat* Court sought to avoid. *Arctic Cat*, 876 F.3d 1350, 1368; *see also Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES, 2019 U.S. Dist. LEXIS 160197, at *6 (C.D. Cal. 2019)("A 'burden of production' necessarily means a burden to come forward with some amount of admissible evidence.")

### A. Intel's view of ParkerVision's marking obligations is wrong.

The RTL8811AU chips that ParkerVision purchased from Realtek were *off-the-shelf* chips and, thus, ParkerVision has no proprietary knowledge of the circuit configuration or operation of those chips. Ex. A at 7. Such information is proprietary to RealTek. Ex. D at ¶¶ 99-102. Indeed, one cannot even observe the configuration/operation of the chips by simply looking at the chips. The chips themselves have *layers of interconnected microscopic* components and,

thus, understanding the configuration/operation of the chips to make a marking determination would require expensive and time-consuming reverse engineering and subsequent analysis. *Id*.

Under Intel's theory of a patentee's marking obligations, manufacturers would need to reverse engineer all third-party components (perhaps hundreds) used in their product and determine if their patents covered those third-party components. Otherwise, manufacturers could be subject to future claims of failure to mark – even in the absence of any good-faith basis to claim that those components practiced any specific patent. This onerous burden is not the law.

Intel cites no legal support for its contention the mere identification of the Milo Wi-Fi product with a RTL8811AU chip, without a scintilla of technical support, is sufficient to thrust upon ParkerVision the expensive burden of reverse engineering a third-party proprietary component part. The closest support that Intel can muster is a single inapposite footnote in a Magistrate's recommendation that is not binding upon this Court. *See* D.I. 172 at 9, *citing KAIST IP US LLC v. Samsung Elecs. Co.*, 2018 WL 10498197, at *3 n.1, 2018 U.S. Dist. LEXIS 234952, at *12 n.1 (E.D. Tex. May 22, 2018). To the extent that *KAIST* goes beyond the holding in *Arctic Cat* (in which expert evidence was offered), it is wrong. But, even the *KAIST* recommendation bases its decision on the fact that the patentee had "specifically alleged" infringement of the very product defendant complained about and provided detailed claim charts regarding infringement – a very different situation than exists here. *Id.* at *6, *12 n.1. In its brief, Intel uses a bracket in its parenthetical to avoid that fact. See D.I. 172 at 9.[5]

Intel needs some technical support to "plausibly" allege a good faith belief that the Milo

---

[5] And, in *KAIST*, the recommendation ultimately was a denial of summary judgment because the lack of technical analysis by defendant left questions of fact regarding whether the named products practiced the patents and there remained questions of fact regarding whether actual notice was provided. As further described here, the same is true in this case.

practiced the claims of the asserted patents when using an off-the-shelf RealTek chip. *Arctic Cat* at 1367. Intel has none. It has presented no evidence regarding the relevant functionality of the RTL8811AU chip and has made no effort to describe how this chip practices any element of any patent. And Intel's expert does not mention the chip in his expert reports, leaving only the unrebutted testimony of ParkerVision's expert related to the Realtek RTL8811AU chip.

Unable to rely on actual evidence, Intel is forced to rely on its *attorneys'* view of allegations that ParkerVision made against Buffalo in the Buffalo Complaint.

### B. Intel's Burden of Production cannot be Satisfied by its Attorneys' Views of the Allegations in the Buffalo Complaint.

Intel's marking argument regarding Milo depends entirely on *its attorneys'* contorted reading of the allegations in the Buffalo Complaint. The view of Intel attorneys regarding the Buffalo Complaint, however, is not evidence. Intel cannot simply meet its burden with a litigation-inspired, and unreasonably expansive, interpretation of the Buffalo Complaint. That would be the ultimate in gamesmanship – a result that *Arctic Cat* specifically sought to avoid. *See Arctic Cat*, 876 F.3d 1350, 1368.

In its brief, Intel selectively quotes a portion of paragraph 21 of the Buffalo Complaint to create the misimpression that the ParkerVision had accused *all* AirStation Series networking products, including, implausibly, products for which ParkerVision and its attorneys had no technical information or analysis. *See* D.I. 172 at pp. 3-4; Ex. B generally; Ex. A at 7. That paragraph contains no infringement allegations, and simply defined the term "Buffalo Products," which was further limited in the context of the actual infringement counts to those "Buffalo Products" that are "capable of filtering and down-converting a higher-frequency signal to a lower frequency signal as claimed in" the '902, '528, '725, '736 and '673 patents. Ex. B at ¶¶ 72, 95, 111, 121, and 133. The allegations were also limited to the two chips made by MediaTek and

two chips made by Realtek (RTL8192BU and RTL8188ER) identified to possess certain functionality and/or structures, as evidenced by the fact that all of the technical allegations reference *only* those chips. *See* Ex. B at ¶¶ 18, 21, 58-59, 64-65, 72-74, 76, 80-81, 86-89, 95-96, 101-107, 111-115, 117, 121-125, 129, and 133-135.

With regard to the Buffalo Complaint, Intel's attorneys engage in a series of mental gymnastics to support their marking theory. The Buffalo Complaint identifies Buffalo AirStations with particular chips (not the RTL8811AU chip) of infringing the '902, '528, '725, '736 and '673 patents. According to Intel, because ParkerVision accused the Buffalo AirStation series of infringement and there is an FCC application for a unaccused Buffalo AirStation that included the RTL8811AU chip,[6] ParkerVision effectively accused the Buffalo AirStation with the RTL8811AU chip of practicing the patents. Thus, according to Intel, the Milo product including a RTL8811AU chip needed to be marked. This attenuated analysis is not the sort of analysis required under *Artic Cat*. At a bare minimum, there is a genuine dispute of material fact regarding whether ParkerVision's previous allegations included the RTL8811AU chip.

Realizing that the plain language of the Buffalo Complaint did not support their litigation theory, Intel's attorneys asked Mr. Parker (a non-attorney) to interpret the Buffalo Complaint. On three separate occasions, Mr. Parker was asked whether ParkerVision accused "all" of Buffalo's AirStation products. *See* Exhibit E, Excerpts of the deposition of Mr. Jeffery Parker at 590:6-11; 597:4-598:1; and 613:17-24. Mr. Parker consistently explained that he did not recall the scope of ParkerVision's accusations against Buffalo. *Id*. Mr. Parker was then shown paragraph 21 of the Buffalo Complaint (which does not contain any infringement allegations) and asked to confirm

[6] Intel makes no allegation (and presents no evidence) to indicate that the AirStation products it claims contained the RTL8811AU were actually used, made, sold, offered-for-sale, or imported into the United States. Thus, these products could not have been the subject of the litigation.

that the words included "all" Buffalo AirStation products and Mr. Parker answered that he "see[s] that in the complaint" and inadvertently adopted counsel's mischaracterization of the infringement allegations. *Id*. As Mr. Parker explains in his declaration, however, he did not intend his deposition responses to alter the actual accusations made in the complaint and believed he was just confirming the existence of words in the complaint. Ex. A at ¶¶ 5-6.

To the extent that the Court finds the Buffalo Complaint (which never mentions the RTL8811AU chip whatsoever) to have any relevance to the question of whether ParkerVision had an obligation to mark products that were not at issue in that litigation, it is respectfully submitted that, at best, there is a genuine factual dispute over scope of that complaint. And, regardless of how the allegations themselves are viewed, there is a genuine dispute of material fact as to whether the RTL8811AU chip actually practices the claims of any relevant patent. The existence of both factual disputes precludes a grant of summary judgment.

### C. Intel's Reliance on the Buffalo Complaint is Unrelated to the '474 Patent.

Intel does not dispute that the '474 patent was not asserted in the Buffalo Complaint. *See* D.I. 172 at 7.n4. Despite the absence of any allegations with respect to the '474 patent, Intel has also moved "for summary judgment of no pre-suit damages" with respect to that patent. *Id*. at 2. Intel does not credibly advance its position with respect to the '474 patent and includes its *entire argument* with respect to that patent in a *conclusory one-sentence-long footnote* simply referencing its interrogatory response. *See* D.I. 172 at 7.n4 (Citing Ex. C at pp. 40-47.)

Intel's conclusory argument is deficient in several meaningful respects. *First*, the reference to "Realtek chips" in its footnote indisputably *do not include* the RTL8811AU chip. Rather, the interrogatory response that Intel refers to in its footnote makes no effort to tie the allegations in the Buffalo Litigation to the '474 patent and instead refers to a different litigation with Hisense accusing only the Realtek RTL8812BU chip of infringement of different patents

(not the '474 patent). *See* Ex. C at pp. 40-47. As such, Intel doesn't even attempt to connect either ParkerVision's Milo product or Realtek's RTL8811AU chip to the '474 patent. *Second*, the purported "claim charts" referenced in the footnote do not contain any mapping of claim limitations from the '474 to any Realtek chips whatsoever, but rather are a mishmash of quotations from multiple complaints and claim construction proceedings that, again, had no relevance to the RTL8811AU chip or the '474 patent. *Third*, Intel's reliance on selective quotations from unrelated documents in unrelated cases about unrelated products is additionally improper, because Intel provides no expert or technical support for their highly conclusory and technical attorney argument. *See e.g., HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir. 2020) ("The prohibition of unqualified witness testimony extends to the ultimate conclusions of infringement and validity as well as to the underlying technical questions."); *AquaTex Indus. v. Techniche Sols.*, 479 F.3d 1320, 1329 n.7 (Fed. Cir. 2007) ("expert infringement testimony is generally required in cases involving complex technology.")[7]

The deficiencies in Intel's allegations are particularly significant here, where ParkerVision's expert has offered an *unrebutted* opinion that the allegations concerning the Realtek RTL8812BU chip referenced in Intel's so-called "claim charts" were completely irrelevant to the question of whether the RTL8811AU chip practiced any claim of the '474 Patent. *See* Ex. D at ¶ 64 (refencing Intel's interrogatory responses with respect to the complaints filed against Hisense (Case nos. 6:20-cv-870 and 6:21-cv-562) regarding the Realtek RTL8812BU and Intel's argument that such allegations "can [allegedly] be used to map the Realtek RTL8811AU to claims 1 and 12 of the '474 patent"); ¶¶ 69-76 (providing a factually-

---

[7] This case involves highly complex technology as evidenced, for example, by the Court's appointment of a technical advisor. *See* D.I. 64. *See also* D.I. 124

corroborated and unrebutted expert opinion detailing why "one cannot rely on ParkerVision's statements made regarding the Realtek RTL8812BU and apply them to the Realtek RTL8811AU"). On a motion for summary judgment, Intel's one-sentence footnote argument is insufficient to satisfy its burden of production and cannot eliminate the material factual disputes raised in ParkerVision's unrebutted expert's opinion.

**D. Intel had actual notice of the '528 Patent.**

Intel asserts that there was no actual notice of infringement. But to the extent any notice was required, on May 5, 2016, ParkerVision served Intel with both an application for issuance of a subpoena in its ITC litigation with Apple, which included allegations of infringement, as well as the subpoena, which was directed towards Intel's infringing chips. *See* Exhibit F, ParkerVision's ITC Subpoena Application, at p. 2 (accusing intel's "radio frequency capable integrated circuits for use in Apple products" that "infringe U.S. Patent Nos. … 9,118,528"); Exhibit G, ParkerVision's ITC Subpoena to Intel, at pp. 4-5 (providing a schedule of accused "Intel Products."); see also Exhibit H, ParkerVision' 6/21/22 Response to Interrogatory No. 13 at 32-34. The subpoena specifically identifies at least Intel RF transceivers/transmitters/receivers as falling within the scope of the ITC investigation and used in the Apple iPhone 7, which is a reference to the SMARTi 5 (PMB5750). Ex. G at 4-5. As such, Intel was on actual notice that its products infringed the '528 patent at least as early as May 5, 2016. *See* Ex. G at 3.

The material served upon Intel is sufficient to provide Intel with notice of infringement. *See e.g., Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001) (actual notice satisfied "as long as the communication from the patentee provides sufficient specificity regarding its belief that the recipient may be an infringer").

Intel attempts to evade this notice, by asserting that "ParkerVision affirmatively stated on the record in that ITC investigation that it was not accusing Intel's transceiver chips of

infringement." D.I. 172 at 12, citing *Certain RF Capable Integrated Circuits and Products Containing the Same* (ITC, Inv. No. 337-TA-982), Order No. 14 at 6. Intel, however, ignores the context of the ITC's Order, which turned on whether the meager and illegible discovery with respect to Apple's intel-based iPhones was "sufficient such that ParkerVision could make an infringement determination." *Id*. at 5, 12. In other words, [REDACTED] [REDACTED], ParkerVision simply did not have time to prepare adequate infringement contentions. *Id.* at 5. ParkerVision thus reserved the adjudication of its claims against Intel for another proceeding – *i.e.*, this one. The statement Intel relies on does not alter the fact that ParkerVision informed Intel that its chips infringed the '528 patent. Indeed, when [REDACTED] [REDACTED]. Exhibit I, Excerpt of the Deposition Transcript of Ms. Pamela Hays at 95:17-96:14; and Exhibit J, Ex. 13 thereto. Tellingly, Intel hired *litigation* counsel to deal with the subpoena – the same lawyers handling this litigation.

Intel's claims that it didn't understand that its products were being accused of infringment ring hollow. At a bare minimum, given the disagreement between Intel and ParkerVision regarding the interpretation of the facts surrounding the ITC subpoena, there is a genuine dispute of material fact regarding whether ITC application and subpoena put Intel on actual notice of its infringement of the '528 patent.[8]

---

[8] Lastly, Intel argues that ParkerVision's notice to Intel was deficient based on an alleged lack of a "proposal to abate the infringement." D.I. 172 at 12.n8. Intel completely ignores the fact that the Subpoena it received was issued as a part of a proceeding seeking no less of an abatement than a total importation ban of all iPhones incorporating their infringing RF chips.

Dated: November 15, 2022

Respectfully submitted,

THE MORT LAW FIRM, PLLC

/s/Raymond W. Mort, III
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
501 Congress Avenue, Suite 150
Austin, Texas 78701
Tel/Fax: 512-865-7950

OF COUNSEL:

Ronald M. Daignault (pro hac vice)*
Chandran B. Iyer (pro hac vice)
Jason S. Charkow (pro hac vice)*
Stephanie R. Mandir (pro hac vice)
Zachary H. Ellis (Texas Bar No. 24122606)*
Shailendra Maheshwari (pro hac vice)*
Christian E. Samay (pro hac vice)*
Scott R. Samay (pro hac vice)*
Oded Burger (pro hac vice forthcoming)*

DAIGNAULT IYER LLP
rdaignault@daignaultiyer.com
cbiyer@daignaultiyer.com
jcharkow@daignaultiyer.com
smandir@daignaultiyer.com
zellis@daignaultiyer.com
smaheshwari@daignaultiyer.com
csamay@daignaultiyer.com
ssamay@daignaultiyer.com
oburger@daignaultiyer.com
8618 Westwood Center Drive, Suite 150
Vienna, Virginia 22182
*Not Admitted in Virginia*

*Attorneys for Plaintiff ParkerVision, Inc.*