UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PARKERVISION, INC.<br><br>                      Plaintiff,<br><br>  vs.<br><br>INTEL CORPORATION<br><br>                      Defendant. | C.A. No. 6:20-cv-108-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>████████████<br><br>PUBLIC VERSION |

**DEFENDANT INTEL CORPORATION'S SEALED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT**

**TABLE OF CONTENTS**

A.  ParkerVision's Response Confirms There Is No Evidence of Intent To Infringe ......... 1

B.  ParkerVision's Arguments At Most Show That Intel Had Knowledge Of The Existence Of Some Asserted Patents ............................................................................. 5

C.  ParkerVision's Remaining Evidence Does Not Relate To The Asserted Patents And Could Not Plausibly Establish Intent To Infringe .................................................. 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bayer Healthcare LLC v. Baxalta Inc.*,
  2017 U.S. Dist. LEXIS 126904 (D. Del. Aug. 10, 2017) ...................................................... 6

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021) ..................................................................................... *passim*

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) ............................................................................................................... 1

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
  2019 WL 1987172 (E.D. Tex. Apr. 12, 2019) ..................................................................... 5

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
  2018 WL 4620713 (S.D. Tex. July 31, 2018) ...................................................................... 1

*State Indus. v. A.O. Smith Corp.*,
  751 F.2d 1226 (Fed. Cir. 1985) ............................................................................................ 2

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
  2016 WL 7177844 (S.D.N.Y. Dec. 7, 2016) ........................................................................ 6

*Windy City Innovations, LLC v. Microsoft Corp.*,
  193 F. Supp. 3d 1109 (N.D. Cal. 2016) ............................................................................... 6

ParkerVision's Response to Intel's Motion for Summary Judgment demonstrates exactly why ParkerVision's willfulness claim fails as a matter of law.  ParkerVision presents a collection of purported evidence that it contends demonstrates willfulness, including for example: an article regarding an unasserted parent patent, high-level presentations on ParkerVision's "D2D" technology, a reference by Infineon to ▓▓▓▓ an ITC subpoena to Intel, and a marketing document regarding another a third-party patent portfolio that references two ParkerVision patents.  But notably missing from *any* of that is a single piece of evidence—taken individually or with other evidence—that could plausibly show deliberate infringement of the *Asserted Patents* as required to show willfulness.  ParkerVision's purported evidence of willful infringement, even taking all reasonable inferences in ParkerVision's favor, at most establishes pre-suit knowledge of three Asserted Patents, but does not come close to demonstrating willful infringement.

The Supreme Court and the Federal Circuit have repeatedly held that the standard for willful infringement is not met by a typical patent infringement case, and should instead be reserved for cases where there is evidence of deliberate infringement.  *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016); *see also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021); *M & C Innovations, LLC v. Igloo Prods. Corp.*, 2018 WL 4620713, at *5 (S.D. Tex. July 31, 2018) (noting that courts routinely dismiss such willfulness-based enhanced damages claims in "'garden-variety' patent case[s] that *Halo* affirms [are] ill-suited for a finding of willfulness").  Intel respectfully requests that the Court grant summary judgment of no willful infringement.

   A.   **ParkerVision's Response Confirms There Is No Evidence of Intent To Infringe.**

ParkerVision misstates the law when it argues that "[a] finding of willfulness requires only knowledge" of asserted patents.  Dkt. 211, ParkerVision Response ("Resp.") at 8.  To the contrary, the Federal Circuit recently reaffirmed that "[k]nowledge of [an] asserted patent …

1

is necessary, but not sufficient, for a finding of willfulness." *Bayer*, 989 F.3d at 988. ParkerVision points to only four pieces of evidence that it contends show Intel intentionally infringed the Asserted Patents, but that evidence is insufficient as a matter of law to establish willfulness.

*First*, ParkerVision quotes an October 17, 2008 meeting invitation as purported evidence that "Mr. Boos and Intel were planning to use the asserted patented technology in their products." Resp. at 11. But no reasonable jury could make such an inference because the email says nothing about any Asserted Patent, which is not surprising since five of the six Asserted Patents had not even issued at the time. Dkt. 174, Intel Motion ("Mot.") at 5; *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."). Moreover, Mr. Boos ***did not work at Intel in 2008***, and the undisputed evidence shows that Intel did not implement the feature ParkerVision accuses of infringement (a passive mixer with a 25% duty cycle) ***until years later*** ▇▇▇. Resp. Ex. 14, Schelmbauer Dep. at 233:14-234:8.[1]

*Second*, ParkerVision references Zdravko Boos's purported assessment of ParkerVision and its patents in 2007 and 2008. Resp. at 11. But again, none of the evidence ParkerVision cites regarding Mr. Boos says anything about any *Asserted Patent*—which again is not surprising, since only one of the Asserted Patents (the '902 patent) issued before 2009.

---

[1] ParkerVision argues that it is "worth noting that the discussions about using ParkerVision intellectual property occurred after Intel engineers had decided not to cooperate with ParkerVision because it would cost too much." Resp. at 11 (emphasis omitted). ParkerVision's own documents demonstrate that is not accurate, as the Infineon documents ParkerVision cites are from 2006 and October 2008, and ParkerVision continued to try to interest Infineon in its transmitter technology into January of 2009. Ex. 1, ParkerVision Business Development Planning & Strategy Slides at 4 ("Marketing:  2009 Week 1 Summary (Jan 5 – Jan 9)"); *see also id.* ("JL [of ParkerVision] meets with Infineon at CES …. Bernd Adler [of Infineon] does not think our technology is viable …."). All exhibits are attached to the Declaration of Harry Hanson, filed concurrently herewith. Citations to "Mot. Ex." are to the exhibits filed with the October 28, 2022 Declaration of Harry Hanson accompanying Intel's Motion, Dkt. 174-1. Citations to "Resp. Ex." are to the exhibits filed with ParkerVision's Response, Dkt. 211.

At most, those documents refer generically to ParkerVision, its technology and unspecified patents. The Federal Circuit has made clear that "[k]nowledge of the ***asserted patent[s]***"[2]—not awareness of the patentee or its "technology"—"is necessary … for a finding of willfulness." *Bayer*, 989 F.3d at 988. Evidence that Infineon—not Intel—was aware of ParkerVision patents and technology generally years before the development of the products-at-issue cannot save ParkerVision's claims of willful infringement. *Dali Wireless, Inc. v. Corning, Inc.*, No. 6:20-cv-01108-ADA (W.D. Tex. Feb. 1, 2022), Dkt. 55 at 5 ("[Plaintiff] Dali requests that, because Corning was interested in Dali's DAS technology from 2010-2014 and learned of the '508 patent years later, the Court should infer that Corning knew or should have known it was infringing the '508 patent. It will not do so.").

ParkerVision argues that Intel had an incentive "to surreptitiously incorporate ParkerVision's patented technology into its products, because it had determined that the 'high royalty cost' that would be due ParkerVision for its patents was not what it wanted to pay." Resp. at 11. But the sentence from which ParkerVision takes the phrase "high royalty cost" demonstrates why no reasonable jury could infer an intent to infringe the asserted ***receiver*** claims from that statement: "Parker Vision ***transmitter concept*** has been evaluated and ***based on the complexity and required chip area*** plus a very high royalty cost cooperation has been rejected." Resp. Ex. 33 at 96103DOC00100149. Not only does the full sentence make clear that the "concept" Infineon was discussing with ParkerVision related to a transmitter—not the receiver at issue in this case—it also demonstrates that Infineon rejected that concept based on its technical shortcomings (i.e., "complexity and required chip area") not merely the proposed royalty rate.[3] Mot. at 5. A generic reference to ParkerVision's transmitter technology that does not even mention the Asserted Patents cannot plausibly establish willful infringement of

---

[2] Emphases are added, unless otherwise noted.
[3] Here again the document quoted is from 2006—years before five of the six Asserted Patents issued.

3

the asserted receiver claims.[4]

Nor could a reasonable jury infer that "Intel misappropriated ParkerVision's patented technology" based on ParkerVision's technical expert's (Dr. Steer's) opinion that Intel allegedly "needed the technological benefits of the patented inventions in order to have a commercially viable product going forward" given the absence of evidence that Intel even knew of the Asserted Patents in ▮, when Intel incorporated the accused feature into the products-at-issue.  Resp. Ex. 14, Schelmbauer Dep. at 233:14-234:8; *see also* Section II.B., *infra*.

***Third***, ParkerVision argues that its 2016 ITC subpoena raises a "genuine dispute of fact as to whether Intel was on notice that ParkerVision believed that [Intel's] chips infringed" the asserted '528 patent.  Resp. at 12.  But there can be no dispute that ParkerVision represented to the ALJ in that ITC Investigation that it "**has <u>never</u> accused the Intel-based iPhones [which include SMARTi5] of infringement**."  Mot. Ex. 1 at 6.  ParkerVision cannot manufacture a disputed fact by disputing its own prior statement.

***Fourth***, ParkerVision argues that its unsuccessful German litigation accusing an Intel-based iPhone of infringing one of its European Patents "raises disputed issues of fact" about Intel's intent to infringe the U.S. patents in this case.  Resp. at 10.  But no reasonable jury could infer that Intel intentionally infringed the Asserted Patents from a judicial decision that one of the products-at-issue in this case (i.e., the SMARTi™ 5) ***does not infringe*** a related ParkerVision down-conversion patent.  Mot. Ex. 12 at 19 ("The attached embodiments do not make use of the technical teaching of the patent in suit.").  If anything, it establishes the

---

[4] ParkerVision argues that fact that the "IP" it was discussing with Infineon related to a transmitter concept, not the receiver concept at issue in this case, is irrelevant because "the same patents would need to be licensed."  Resp. at 11 n.5.  But there is no evidence that ParkerVision discussed any Asserted Patent with Infineon.  Moreover, all of the claims ParkerVision alleges Intel willfully infringes in this case relate to receiver technology.  No reasonable jury could infer from ParkerVision's discussions with Infineon about a ***transmitter*** concept that Intel intentionally infringed the asserted ***receiver*** patent claims.

4

opposite.

To establish willful infringement, ParkerVision must show that Intel deliberately or intentionally infringed an Asserted Patent. *Bayer*, 989 F.3d at 988 ("[W]illfulness requires **deliberate or intentional infringement**."). The evidence ParkerVision cites—alone or taken together—is insufficient as a matter of law to establish intentional infringement, because it either says nothing about any Asserted Patent or expressly states that Intel does not infringe. On this basis alone, ParkerVision's claims of willful infringement fail as a matter of law. *Id.* (insufficient evidence to establish deliberate or intentional infringement even where defendant had "knowledge of the [asserted] patent" and "consciously redirected its own research" in the field to develop the accused products").

### B. ParkerVision's Arguments At Most Show That Intel Had Knowledge Of The Existence Of Some Asserted Patents.

Assuming its allegations are true and taking all reasonable inferences in ParkerVision's favor, ParkerVision has at most established the unremarkable fact that Intel had pre-suit knowledge of the existence of three of the Asserted Patents: the '528, '902, and '474 patents. None of the evidence ParkerVision cites even mentions the other three Asserted Patents—the '725, '736, or '673 patents, all of which issued years after the evidence cited.

ParkerVision first attempts to overcome its complete lack of evidence that Intel knew of the '725, '736, or '673 patents before this case was filed by pointing to a 2001 Intel email that refers to ParkerVision's patents as "snake oil." Resp. Ex. 1 at 1. ███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████ Resp. at 8; Resp. Ex. 1. But willful infringement requires knowledge of the *Asserted* Patents themselves and courts across the country have found that knowledge of a parent patent is insufficient to support a claim for willful infringement. *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 1987172, at *2 (E.D. Tex. Apr. 12, 2019),

5

*report and recommendation adopted*, 2019 WL 1979866 (E.D. Tex. May 3, 2019) ("[S]imply pointing out knowledge of the parent of one of the asserted patents or knowledge of other patents that share the same inventor as one of the asserted patents is insufficient. … Plaintiff has not provided any cases showing that a defendant's knowledge of another patent within the same family as an asserted patent can create a question of fact as to whether the defendant had sufficient knowledge of the asserted patent."); *Bayer Healthcare LLC v. Baxalta Inc.*, 2017 U.S. Dist. LEXIS 126904, at *2-3 (D. Del. Aug. 10, 2017) (knowledge of parent application not enough); *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1117 (N.D. Cal. 2016) (allegations that defendant knew of an unasserted patent and the application that later issued as the asserted patent not enough to plausibly allege knowledge of asserted patent); *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 2016 WL 7177844, at *2 (S.D.N.Y. Dec. 7, 2016) (summary judgment of no willfulness). Intel's 2001 email thus does nothing to save ParkerVision's claims of willful infringement.

Nor can ParkerVision overcome its lack evidence that Intel had pre-suit knowledge of the asserted '725, '736, or '673 patents with generic references to ParkerVision, its technologies, and unspecified patents *that pre-date the issuance of those Asserted Patents*—in 2013 (the '725 patent) and 2016 (the '736 and '673 patents)—by years.[5] Resp. at 8-11. Specifically, ParkerVision also cites:

- 1999 and 2002 NDAs (Resp. Exs. 7, 8);
- 2006 slides, agendas, and notes from meetings between ParkerVision and Infineon (Resp. Exs. 21-22, 27-28, 38-39);
- 2006 and 2007 self-assessments by Zdravko Boos (Resp. Exs. 33, 34); and

---

[5] ParkerVision also cites ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ but does not mention any specific patent, let alone the '725 patent, which was the only other Asserted Patent that had issued by 2014. *See* Resp. Ex. 36.

6

- Emails and attachments from 2005 (Resp. Ex. 37), 2006 (Resp. Exs. 9, 15-28, 30-32), 2007 (Resp. Exs. 10[6]-11), 2008 (Resp. Ex. 40), and 2009 (Resp. Exs. 41-45).

Resp. at 7-11. None of those documents mentions *any* Asserted Patent. No reasonable jury could infer that documents that do not mention any specific patent prove that Intel knew of three Asserted Patents that had not even issued yet.[7]

Finally, ParkerVision's records of visits to its website do not show that anyone from Intel or Infineon visited any page of that website that mentions an Asserted Patent, let alone the '725, '736, or '673 patents. Resp. Ex. 61.

At most, ParkerVision's cited evidence shows that Intel had knowledge of the existence of the asserted '902, '474, and '528 patents before suit was filed. But it is well-settled that knowledge of asserted patents alone is not enough to support a claim for willful infringement. *Bayer*, 989 F.3d at 988.

### C. ParkerVision's Remaining Evidence Does Not Relate To The Asserted Patents And Could Not Plausibly Establish Intent To Infringe.

ParkerVision attempts to overcome the legal and factual deficiencies in its claim by pointing to a supposed "mosaic" of evidence in its statement of facts and arguing that the "totality" of that evidence raises at least a genuine dispute about willful infringement.[8] Resp. at 1, 3-7. As demonstrated below, most of that evidence does not even mention any Asserted

---

[6] As discussed in Intel's opening brief, Mr. Ravid's email does not suggest that ParkerVision had "groundbreaking mixer IP," as ParkerVision argues; it states the opposite—that ParkerVision claimed to have "groundbreaking mixer IP some 6-7 years ago *that really didn't materialize*." Resp. Ex. 10; *see* Mot. at 5-6 (emphasis in original).

[7] Moreover, ParkerVision's argument that Infineon engineers brought their knowledge with them when they joined Intel (Resp. at 8-9) misses the point because all three remaining Asserted Patents issued *after* Intel acquired Infineon in 2011.

[8] ParkerVision attaches 65 exhibits to its Response, including three copies of the same Skyworks document (Exs. 47-49) and multiple copies of a 2006 email from Jeff Leach at ParkerVision to three business executives at Infineon (Stefan Wolff, Gerhardt Schmidt, and Josef Strobl) (Exs. 17 & 31) and an attachment to that email (Exs. 19, 26). In several cases, ParkerVision cites multiple copies of the same document in string cites without acknowledging that the documents are identical. *See, e.g.*, Resp. at 5 ("Ex. 47 at 727; Ex. 48 at 330; Ex. 49 at 23.").

7

Patent, and the one email that does (Resp. Ex. 64) could not plausibly establish that Intel intended to infringe the one Asserted Patent mentioned (the '528 patent) because it relates to the ITC Investigation where ParkerVision expressly represented that it was ***not*** accusing the Intel chip-at-issue of infringing the '528 patent:

- The 2002 IEEE Symposium (Resp. Ex. 13) does not mention any Asserted Patent (and predates the issuance of all six Asserted Patents);

- A ████████████████████████████████████████████ (Resp. Ex. 50), Intel's January 31, 2011 press release about its acquisition of Infineon's Wireless Solutions Business (Resp. Ex. 12), and Intel's ████████████ ████████████████ (Resp. Ex. 46) do not mention any Asserted Patent (and predate all but the '474 and '902 patents);

- ████████████████████████████████████████████ (Resp. Ex. 51) do not mention any Asserted Patent—in fact they "X" out all patent numbers;[9]

- ████████████████████████████████████████████ ████████ (Resp. Ex. 52) does not mention any Asserted Patents (and predates all but the '474 and '902 patents);

- The ████████████████████████████████████████ ████████████████████████████ do not mention ParkerVision, its technology, or any patent, let alone any Asserted Patent;[10]

- ████████████████████████████████████████████ ████████████████████████████████ (Resp. Ex. 54[11]) merely mentions the asserted '528 patent (after the date when Intel acknowledges it first learned about that patent[12]), but ParkerVision later made clear that it "never" asserted that patent against an Intel-based iPhone;

---

[9] ████████████████████████████████████████████████████████████████ Resp. Ex. 6, Hays Dep. at 53:23-54:25.

[10] ParkerVision also cites four Asserted Patents (Resp. Exs. 2-5) and argues that a jury could infer Intel was aware of those patents because they are related to the '551 patent, ██████ ████████████████████████████ (Resp. Ex. 1). But the related patents issued years after ████████ 1 (in 2003, 2015, and 2016) and ParkerVision identifies no documents suggesting that Intel was aware of the related patents when they issued years later.

[11] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

[12] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

- None of the cited deposition testimony (Resp. Exs. 6, 14, 29, 60, and 65) provides any evidence that Intel intended to infringe any Asserted Patent.

In summary:

- None of the evidence ParkerVision cites even mentions the asserted '725, '736, or '673 patents;

- The only pre-suit documents that even mention the '528 patent are ParkerVision's 2016 subpoena to Intel in an Investigation where ParkerVision represented to the ALJ that it "*has **never** accused the Intel-Based iPhones [which include SMARTi5] of infringement*" (Mot. Ex. 1 at 6) and pages of ParkerVision's website that there is no evidence anyone from Intel ever reviewed (Resp. Ex. 63);

- The only pre-suit documents that even mention the '902 or '474 patents are a 2010 brochure offering third-party patents assigned to Skyworks for sale where those two patent numbers are listed among 74 patents in a font that is too small to be read with the naked eye (Resp. Exs. 47-49[13]) and pages of ParkerVision's website that there is no evidence anyone from Intel ever reviewed (Resp. Ex. 63).

None of the other documents or testimony ParkerVision cites mentions any Asserted Patent. Moreover, the only evidence that ParkerVision cites to support its assertion that it mentioned any Asserted Patent to Intel or Infineon is testimony from former ParkerVision employee John Stuckey that he "described the intellectual property that ParkerVision has" including the '474 patent, "at a summary level" to Infineon. Resp. at 4 (citing Resp. Ex. 29 at 25:20-26:2, 27:2-17). But no reasonable jury could infer from that testimony that Mr. Stuckey told Infineon about the '474 patent *because the '474 patent had not yet issued when Mr. Stuckey met with Infineon*. *Compare* Resp. Ex. 29, Stuckey Dep. at 112:3-5 ("Q. Did you in fact attend the February of 2006 ParkerVision Infineon meeting? A. I did."), 117:10-14 ("Q. You're listed as having attended the April 26, 2006 meeting, right? A. Right. Q. Did you attend that meeting? A. Yes."), 135:2-7 (Stuckey attended a February 2007 meeting between ParkerVision and Infineon), 167:15-22 ("Q. Mr. Stuckey, you testified today about certain meetings between ParkerVision and Infineon that you attended. Do you recall that testimony? A. I do. Q. Have

---

[13] ParkerVision attached three copies of the same Skyworks document to its responsive brief.

9

you described for me today all of the meetings between ParkerVision and Infineon that you attended? A. Yes."), *with* Dkt. 1-4, '474 patent (issued May 26, 2009).

Nothing in ParkerVision's supposed "mosaic" of circumstantial evidence supports an inference that ParkerVision ever disclosed any Asserted Patent to Intel (or Infineon), let alone that Intel intentionally infringed any Asserted Patent. To the contrary, ParkerVision represented to an ALJ that it had never accused an Intel-based iPhone of infringing the '528 patent and a German court determined that the same Intel SMARTi™ 5 chip at issue here did not infringe a ParkerVision patent related to the Asserted Patents. On this record, no reasonable jury could find that Intel intentionally infringed any Asserted Patent.

For the foregoing reasons, Intel's Motion should be granted.

Dated: November 22, 2022                                   Respectfully submitted,

                                                           /s/ J. Stephen Ravel

Michael J. Summersgill (admitted *Pro Hac Vice*)           J. Stephen Ravel
Sarah B. Petty (admitted *Pro Hac Vice*)                   KELLY HART & HALLMAN LLP
Harry Hanson (admitted *Pro Hac Vice*)                     303 Colorado, Suite 2000
Samuel C. Leifer (admitted *Pro Hac Vice*)                 Austin, Texas 78701
Alicia Coneys (admitted *Pro Hac Vice*)                    T (512) 495-6429
WILMER CUTLER PICKERING HALE AND                           steve.ravel@kellyhart.com
DORR LLP
60 State Street                                            James E. Wren
Boston, Massachusetts 02109                                Texas State Bar No. 22018200
T (617) 526-6000                                           1 Bear Place, Unit 97288
michael.summersgill@wilmerhale.com                         Waco, Texas 76798
sarah.petty@wilmerhale.com                                 T (254) 710-7670
harry.hanson@wilmerhale.com                                james.wren@baylor.edu
samuel.leifer@wilmerhale.com
alicia.coneys@wilmerhale.com                               *Attorneys for Defendant Intel Corporation*

Todd Zubler (admitted *Pro Hac Vice*)
Isley M. Gostin (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
T (202) 663-6636
todd.zubler@wilmerhale.com
isley.gostin@wilmerhale.com

Mary (Mindy) V. Sooter
WILMER CUTLER PICKERING HALE AND
DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
T (720) 274-3135
mindy.sooter@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

12

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing sealed documents via electronic mail on November 22, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
