**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

PARKERVISION, INC.

Plaintiff,

vs.

INTEL CORPORATION

Defendant.

C.A. No. 6:20-cv-108-ADA

**JURY TRIAL DEMANDED**

[redacted]

PUBLIC VERSION

**DEFENDANT INTEL CORPORATION'S SEALED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES UNDER 35 U.S.C. § 287**

# TABLE OF CONTENTS

A. Intel Has Easily Met Its Burden Of Production Under *Arctic Cat*. ..................... 2

B. ParkerVision Cannot Meet Its Burden of Showing That The Milo WiFi Products Do Not Practice the Asserted Patents. ............................................. 7

C. ParkerVision Failed To Provide Actual Notice Of The '528 Patent As A Matter Of Law. ........................................................................................ 8

D. Conclusion. ........................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
2018 WL 1525686 (E.D.N.Y. Mar. 27, 2018) ..... 7

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994) ..... 10

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ..... *passim*

*Dunlap v. Schofield*,
152 U.S. 244 (1894) ..... 10

*Innovation Scis. v. HTC*,
2020 WL 5798249 (E.D. Tex. Sept. 29, 2020) ..... 7

*Innovative Memory Sys., Inc. v. Micron Tech., Inc.*,
2022 WL 4548644 (D. Del. Sep. 29, 2022) ..... 6, 8

*KAIST IP US LLC v. Samsung Elecs. Co.*,
2018 WL 10498197 (E.D. Tex. May 22, 2018) ..... 5, 6

*Lubby Holdings LLC v. Chung*,
11 F.4th 1355 (Fed. Cir. 2021) ..... 4

*Packet Intell. LLC v. NetScout Sys., Inc.*,
965 F.3d 1299 (Fed. Cir. 2020) ..... 4, 8

*Pavo Sols. LLC v. Kingston Tech. Co.*,
2019 WL 4390573 (C.D. Cal. June. 26, 2019) ..... 5

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
72 F.3d 489 (5th. Cir. 1996) ..... 3

*Semcon IP Inc. v. Huawei Device USA Inc.*,
2017 WL 6343771 (E.D. Tex. Dec. 12, 2017) ..... 6

*SynQor, Inc. v. Vicor Corp.*,
2022 WL 5212967 (E.D. Tex. Oct. 5, 2022) ..... 9

*Unwired Planet, LLC v. Apple Inc.*,
2017 WL 1175379 (N.D. Cal. Feb. 14, 2017) ..... 5

**Statutes**

35 U.S.C. § 287(a) ..... 8, 10

In its Response (Dkt. 207, "Resp."), ParkerVision does not dispute: that it sold its Milo WiFi products in the United States from 2017-2019 during the term of the patents; that it failed to mark its Milo WiFi products; and that these products used the same Realtek chip used by certain Buffalo AirStation products—the entire line of which was accused by the plain language of ParkerVision's Buffalo Complaint in this Court. ParkerVision also does not dispute that—under the *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350 (Fed. Cir. 2017), framework—Intel identified the Milo WiFi products to ParkerVision in this litigation as unmarked patented articles. Finally, ParkerVision admits it cannot show that the Milo WiFi products do ***not*** practice the Asserted Patents. Resp. at 1 (referring to Milo WiFi products as containing "third-party technology [ParkerVision] does not know about"). Based on these facts, summary judgment that ParkerVision failed to mark is appropriate. ParkerVision's arguments to the contrary fail as a matter of law.

***First***, ParkerVision mischaracterizes *Arctic Cat* and attempts to put the burden ***on Intel*** to show that the Milo WiFi products ***do*** practice the Asserted Patents. ParkerVision contends, for example, that Intel did not meet its initial burden of production under *Arctic Cat* because Intel did not present a "technical analysis" (Resp. at 1) or expert "technical opinion" (*id.* at 5) showing that the Milo WiFi products practiced the Asserted Patents. But ParkerVision's argument that an accused infringer is required to present expert testimony or analysis to meet its burden of production has been squarely rejected by the case law and, tellingly, ParkerVision fails to cite a single case that supports its position. Instead, Intel easily met the "low bar" of its burden of production when it identified the Milo WiFi as an unmarked patented article based on ***ParkerVision's own allegations*** that the Buffalo AirStation products infringe the asserted patents. ParkerVision cannot avoid the plain language of its complaint, which, as confirmed by ParkerVision's 30(b)(6) witness on marking and patent assertions, accuses ***all*** Buffalo AirStation products—some of which indisputably included the same Realtek chip found in the

Milo WiFi products. The burden therefore shifted to ParkerVision to prove that the Milo WiFi products did ***not*** practice the Asserted Patents, and ParkerVision concedes that it cannot meet that burden.[1]

***Second***, ParkerVision asserts that it provided actual notice of the '528 patent by serving a third-party subpoena on Intel related to its ITC proceedings against Apple and others. But that subpoena did not, as a matter of law, provide actual notice of the '528 patent to ***Intel*** because: (1) ParkerVision represented to the ALJ after serving that subpoena that it had "***never***" accused Intel-based iPhones of infringing; (2) ParkerVision's allegations that Apple infringed do not constitute actual notice that ***Intel*** allegedly infringed; and (3) the subpoena did not include a proposal to abate the infringement ***to Intel***.

Summary judgment of no pre-suit damages is therefore appropriate.

### A. Intel Has Easily Met Its Burden Of Production Under *Arctic Cat*.

ParkerVision does not dispute that its Milo WiFi products were sold in the United States during the term of each Asserted Patent; that all of its Milo WiFi products used the Realtek RTL8811AU; or that its Milo WiFi products were unmarked. *See* Resp. at 4. Based on those undisputed facts, and to meet its burden of production under *Arctic Cat*, Intel pointed to ParkerVision's allegations in the Buffalo Complaint that ***all*** Buffalo AirStation Products—some of which indisputably use ***the same Realtek RTL8811AU chip used in the Milo WiFi products***—infringe five of the six Asserted Patents. Dkt. 172-12, Intel Suppl. Resp. to Interrog. No. 14 (July 1, 2022) at 52-54; *see also* Dkt. 172-3, Buffalo Complaint, ¶¶1, 21, 73, 96, 112, 122, 134. Indeed, Jeff Parker—ParkerVision's CEO and ***30(b)(6) witness*** on both marking and ParkerVision's patent assertions—confirmed that ParkerVision accused ***all*** AirStation products of infringement. Dkt. 172-4, Parker Dep. at 613:17-24 ("Q. And ***ParkerVision accused all of Buffalo's AirStation series*** and wireless [N-Media] Bridge products of infringing its patents

[1] Emphases are added, unless otherwise noted.

in that case; correct? A. ***Yes***. ***I see that in the complaint***."). ParkerVision's arguments that Intel did not meet its burden of production fail as a matter of law.

***First***, in an effort to avoid its CEO's 30(b)(6) admission, ParkerVision submits a declaration from Mr. Parker attempting to contradict his previous testimony. Resp. at 11; Dkt. 207-2, Parker Decl. But it is black letter law that ParkerVision cannot avoid summary judgment by contradicting the sworn testimony of its corporate designee. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th. Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").

***Second***, ParkerVision mischaracterizes its own allegations in the Buffalo Complaint. ParkerVision accuses Intel of selectively quoting Paragraph 21 of the Buffalo Complaint and argues that Paragraph 21 "simply defined the term 'Buffalo Products.'" Resp. at 9. That is wrong. ParkerVision defined the term "Buffalo Products" in Paragraph ***18***. Dkt. 172-3, Buffalo Complaint, ¶18. In Paragraph 21, ParkerVision then defined the term "Buffalo Chip" to include the WiFi chips used in Buffalo's AirStation wireless networking products. *Id.*, ¶21 (stating that Buffalo Products "including, but not limited to, the AirStation series … include ***modules containing Wi-Fi chips*** including, ***without limitation***, MediaTek MT7612 and MT7620 and Realtek RTL8192BU and RTL8188ER (each a 'Buffalo Chip'; collectively, the 'Buffalo Chips')"). ParkerVision then accused the down-conversion functionality in the "Buffalo Chip[s]" of infringing. *Id.*, ¶¶73, 96, 112, 122, 134. ParkerVision thus plainly accused the "Wi-Fi chips" in the Buffalo AirStation products—which indisputably include the ***same Realtek RTL8811AU chip used in the Milo WiFi products***—of infringement. ParkerVision's assertion that its allegations were "limited to" the WiFi chips for which model numbers were expressly identified (Resp. at 9-10) is directly contradicted by its unequivocal assertion in the Buffalo Complaint that it was accusing "modules containing Wi-Fi chips

including, ***without limitation***," the expressly identified chips. Dkt. 172-3, Buffalo Complaint, ¶21. ParkerVision cannot create a disputed fact by disputing itself. [2]

***Third***, ParkerVision's response fundamentally misperceives the "low bar" required under *Arctic Cat* and wrongly suggests Intel was required to provide "technical support" or expert testimony to meet its burden of production. Resp. at 8-9. ParkerVision's position, which places the burden on the alleged infringer to prove that the product falls within the patent claims, was rejected by the Federal Circuit in *Arctic Cat*:

> [T]he district court … concluded [that the alleged infringer] failed to meet its burden because it did not conduct a claim analysis of the products. … ***The district court erred when it placed this burden on the alleged infringer.*** [The alleged infringer] shouldered only a burden of production to ***identify*** unmarked products that ***it alleges*** should have been marked. It was [the patentee's] burden to prove those products—***once identified***—do not practice the patent-at-issue. ***The alleged infringer need not produce claim charts to meet its initial burden of identifying products***.

*Arctic Cat*, 876 F.3d at 1368-69; *see also Packet Intell. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1312 (Fed. Cir. 2020) ("[T]he district court's jury instruction is in tension with the later decision in *Arctic Cat*, as it appears to ***place the burden on [the alleged infringer] to show*** that the Exar Huawei, and Cisco ***products practice*** the '789 patent[.]"). Post-*Artic Cat* cases confirm this. For example, in *Lubby Holdings LLC v. Chung*, 11 F.4th 1355 (Fed. Cir. 2021), the Federal Circuit found the burden of production met when an accused infringer identified plaintiff's product on a website but provided no technical analysis indicating how it practiced the asserted patent. *Id.* at 1359-60 ("[The alleged infringer] met his initial burden of production in his objection by pointing to [plaintiff's] J-Pen Starter Kit product, clearing *Arctic Cat*'s 'low bar' to put [plaintiff] 'on notice that [it] … sold specific unmarked products which [the alleged

---

[2] ParkerVision does not dispute that Buffalo AirStation products used the RTL8811AU. ParkerVision argues only that Intel failed to present evidence that these AirStation products were sold in the United States. Resp. at 10 n.6. But it was ParkerVision itself that accused the Buffalo AirStation products of infringing based on the products being "made, used, sold, offered for sale … in/into the United States." Dkt. 172-3, Buffalo Complaint, ¶18.

infringer] believes practice the patent.").[3]

ParkerVision tellingly provides no legal support for its assertion that technical analysis or expert testimony is required for an alleged infringer to meet its burden of production because there is none. ParkerVision cites just a single case where the burden of production was not met, but that case had nothing to do with whether the alleged infringer was required to provide technical analysis or expert testimony. Resp. at 3 (citing *Pavo Sols. LLC v. Kingston Tech. Co.*, 2019 WL 4390573 (C.D. Cal. June. 26, 2019)). In *Pavo*, the only issue was whether the alleged infringer had presented evidence that the unmarked products ***were sold in the United States***. *Id.* at *2 ("The parties dispute whether, as part of this burden of production, [the alleged infringer] must produce evidence that the identified products were sold or offered for sale in the United States."). There is no dispute that the Milo WiFi products were sold in the United States. Resp. at 4. ParkerVision thus fails to point to ***any*** case that suggests that it is Intel's burden to present technical analysis or expert opinion regarding the operation of the Milo WiFi products. That remains ParkerVision's burden "***at all times***." *Arctic Cat*, 876 F.3d at 1367.[4]

Indeed, the same argument ParkerVision advances here was rejected in *KAIST*. There, the patentee argued that "Defendants failed to conduct any analysis of Intel's processors, and

---

[3] *See also* Ex. 1, *Lubby Holdings LLC v. Chung*, No. 2019-2286 (Fed. Cir.), Reply Brief for Defendant-Appellant at 30 ("[The alleged infringer] raised the issue of [plaintiff's] failure to plead or prove its compliance with § 287 in … his pre-trial objection to [plaintiff's] computation of damages in which he specifically identified [plaintiff's] J-Pen Starter Kit as an improperly mark[ed] patented article (Appx313-314; Appx1258.)."); Ex. 2, *Lubby Holdings LLC v. Chung*, No. 2019-2286 (Fed. Cir.), Joint Appendix at Appx313-314, Appx1258 (identifying website with alleged unmarked patented article). All exhibits are attached to the Declaration of Harry Hanson, filed concurrently herewith.

[4] ParkerVision also cites *Unwired Planet, LLC v. Apple Inc.*, 2017 WL 1175379, at *5 (N.D. Cal. Feb. 14, 2017), but it provides no support for ParkerVision's position. Resp. at 3. As explained by the Federal Circuit in *Arctic Cat*, the court in *Unwired Planet* granted "summary judgment in favor of the alleged infringer where it submitted a declaration and attached exhibits ***identifying particular products***." *Arctic Cat*, 876 F.3d at 1367. *Unwired Planet* described the alleged infringer's burden of production as "nothing more than a kind of ***pleading burden***" rather than "a true burden of producing admissible evidence." 2017 WL 1175379, at *5. "***At most***, the infringer bears some initial burden of ***plausibly identifying products*** subject to the marking requirement." *Id.* Intel has met that burden here.

that *Arctic Cat* does not permit Defendants to merely assert, without more, that the Intel chips embody the claims." *KAIST IP US LLC v. Samsung Elecs. Co.*, 2018 WL 10498197, at *3 (E.D. Tex. May 22, 2018). Magistrate Judge Payne found this argument inconsistent with the plain meaning of *Arctic Cat*'s holding that an alleged infringer need only ***identify*** a product to meet its burden of production. *Id.*; *see also Innovative Memory Sys., Inc. v. Micron Tech., Inc.*, 2022 WL 4548644, at *14 (D. Del. Sept. 29, 2022) ("The accused infringer's burden is not a burden of proof or persuasion; it is merely a procedural burden to ***provide notice of the identity of products*** that it believes required marking.").

ParkerVision attempts to distinguish *KAIST* on the grounds that the patentee had previously "specifically alleged" that "Intel's Ivy Bridge processor—and, more generally, all bulk-type 3D transistors then being made by Intel—were covered by" the asserted patent. Resp. at 8. But ParkerVision here made a similarly broad allegation of infringement against all of the Buffalo AirStation series of products. ParkerVision points to the fact that the *KAIST* plaintiff had provided claim charts when making that allegation, but neither Magistrate Judge Payne's opinion nor any other case law suggests claim charts are required to meet the *Arctic Cat* initial burden of production. To the contrary, *Arctic Cat* found precisely the opposite. *Arctic Cat*, 876 F.3d at 1369 ("The alleged infringer need not produce claim charts to meet its initial burden of identifying products."). Moreover, courts have held that what Intel did here—pointing to a complaint accusing unmarked products of infringement—***is*** sufficient. *See Semcon IP Inc. v. Huawei Device USA Inc.*, 2017 WL 6343771, at *3 (E.D. Tex. Dec. 12, 2017) (defendant met its initial burden of production "[b]y ***identifying a complaint*** in which Semcon's predecessor accused Intel products of infringing the '061 patent").

***Fourth***, ParkerVision separately argues that Intel did not meet its burden of production with respect to the '474 patent, which ParkerVision did not assert against Buffalo. Resp. at 11-13. But courts have found an alleged infringer's initial burden of production is met by pointing

to patentee's allegations that a product practiced closely related patents. *Innovation Scis. v. HTC*, 2020 WL 5798249, at *2 (E.D. Tex. Sept. 29, 2020) ("HTC points to Innovation's assertion that the identified products practice the '425 patent; ***the close relationship between the '425 patent and the asserted patents***; and Dr. Wong's own statement that she believes LG's smartphones practice all of Innovation's smart home patents."). That is indisputably the case here: ParkerVision's own expert has alleged that "the patents-in-suit generally relate to ***the same down-conversion*** technology" (Dkt. 172-2, Steer Op. Rpt., ¶459), and ParkerVision has alleged that all asserted claims, including the '474 patent claims, are directed to the same alleged energy transfer sampling invention. Dkt. 51 at 1 ("[T]he claims are directed to … ***energy transfer*** (i.e., ***energy sampling***)").

***Finally***, ParkerVision asserts that a "genuine factual dispute over [the] scope of the [Buffalo Complaint]" precludes a grant of summary judgment. Resp. at 11; *see also id.* at 2, 10, 13. But ParkerVision does not dispute that Intel put ParkerVision on notice that ***Intel contends*** that the Milo WiFi products practice the Asserted Patents based on ParkerVision's allegations in the Buffalo Complaint, which is all that is required to shift the burden. *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2018 WL 1525686, at *7 (E.D.N.Y. Mar. 27, 2018) ("[D]efendant has put plaintiffs ***on notice of specific products*** that ***defendant contends*** practice the '547 Patent. Therefore, the burden has shifted to plaintiffs …."); *Arctic Cat*, 876 F.3d at 1368 ("The alleged infringer's burden is … ***not one of persuasion or proof***.").

### B. ParkerVision Cannot Meet Its Burden of Showing That The Milo WiFi Products Do Not Practice the Asserted Patents.

Because Intel met its burden of production by identifying ParkerVision's Milo WiFi products as unmarked patented articles, the burden shifted to ParkerVision to prove that the Milo WiFi products do not practice the patented invention (since ParkerVision does not dispute that the products were sold in the United States and not marked). *Arctic Cat*, 876 F.3d at 1368 ("Once the alleged infringer meets its burden of production, however, the patentee bears the

burden to prove the products identified do not practice the patented invention.").

To meet its burden to show its Milo WiFi products do not practice the Asserted Patents, ParkerVision must address "what claim limitations were purportedly missing from the product." *Packet Intell.*, 965 F.3d at 1314. It does not and cannot meet that burden here, because it has disclaimed knowledge of how its Milo WiFi products operate and chosen not to seek additional discovery. Resp. at 9-10. Summary judgment of failure to mark is appropriate. *Innovative Memory Sys.*, 2022 WL 4548644, at *15 ("Because IMS has the burden of proof on this issue, in order to avoid summary judgment ***it must point to evidence in the record from which a jury might find that the SanDisk products do not embody the '498 patent***.").

Instead of pointing to evidence that the Milo WiFi products do not practice the Asserted Patents, ParkerVision appears to suggest that it did not have an obligation to mark its own practicing products because it lacked knowledge of how they functioned. Resp. at 7-8. ParkerVision's position is directly contradicted by both the plain language of the marking statute and the case law cited above, none of which includes any exception based on a patentee's knowledge. 35 U.S.C. § 287(a) ("Patentees, and persons making, offering for sale, or selling within the United States ***any patented article*** for or under them …."); *Arctic Cat*, 876 F.3d at 1365 ("a patentee who makes or sells a patented article ***must mark*** his articles or notify infringers of his patent in order to recover damages").[5]

### C. ParkerVision Failed To Provide Actual Notice Of The '528 Patent As A Matter Of Law.

ParkerVision argues that it provided actual notice with respect to the '528 patent because "ParkerVision served Intel with both an application for issuance of a subpoena in its [International Trade Commission] litigation with Apple, which included allegations of

[5] ParkerVision's asserted lack of knowledge about the operation of the Realtek chip in its Milo WiFi product is also inconsistent with its own allegations in its complaint filed with this Court accusing all the Buffalo AirStation products (some of which included the same Realtek chip) of infringing the Asserted Patents.

infringement, as well as the subpoena, which was directed towards Intel's infringing chips." Resp. at 13.[6] That is wrong as a matter of law for at least three reasons.

***First***, ParkerVision affirmatively stated in the same ITC investigation, after having served its subpoena, that it "***never***" accused products containing Intel chips of infringing. Dkt. 172-14, PV_055448 at 453 ("***ParkerVision states that it has never accused the Intel-Based iPhones*** [i.e., the iPhones that used Intel chips] of infringement …."). ParkerVision tries to run from its own representation to the ITC, arguing that it did not accuse Intel-based iPhones because it lacked sufficient discovery. Resp. at 14. But ***why*** ParkerVision did not accuse Intel chips of infringement is irrelevant: ParkerVision stated that it "never accused" Intel-based iPhones. It cannot now establish the opposite. Indeed, ParkerVision is judicially estopped from arguing that it accused Intel-based iPhones of infringement because the ITC specifically relied on ParkerVision's statement when denying Apple's motion for summary determination. Dkt. 172-14, PV_055448 at 459; *see SynQor, Inc. v. Vicor Corp.*, 2022 WL 5212967, at *3 (E.D. Tex. Oct. 5, 2022) ("In applying judicial estoppel, the Fifth Circuit looks to (1) whether a party has intentionally taken a position inconsistent with a prior position; (2) whether a court accepted the prior position and (3) whether the party taking inconsistent positions derives an unfair advantage or imposes an unfair detriment on the opposing party.").

***Second***, ParkerVision argues that the subpoena "specifically identifies at least Intel RF transceivers/transmitters/receivers as falling within the scope of the ITC investigation." Resp. at 13. But the third-party ITC subpoena alleged infringement only against Apple, not against Intel, and it did not even make an affirmative statement that any specific Intel chips were "within the scope of the ITC investigation." Dkt. 207-7, Subpoena App. at 2 ("The discovery

---

[6] ParkerVision does not dispute that it failed to provide actual notice for the other five Asserted Patents. Therefore, as explained in Intel's motion, because ParkerVision neither marked its Milo WiFi products nor provided actual notice for those five patents, ParkerVision is not entitled to any pre-suit damages for those patents. Mot. at 11.

ParkerVision seeks from Intel is relevant to ParkerVision's allegations ***regarding Respondent Apple's infringement*** of the patents asserted in this Investigation."); Dkt. 207-8, ITC Subpoena at 5-6 ("Examples of Intel Products include but are not limited to: (1) any product made by Intel which falls under the scope of the Investigation as defined by the notice of investigation …."). This cannot constitute actual notice ***to Intel*** as a matter of law. *Dunlap v. Schofield*, 152 U.S. 244, 247-48 (1894) ("The clear meaning of this section is that the patentee or his assignee, if he makes or sells the article patented, cannot recover damages against infringers of the patent, unless he has given notice of his right … ***to the particular defendants***, by informing them of his patent, and ***their infringement of it***.").[7]

***Third***, as Intel noted in its opening brief, the subpoena did not include a "proposal to abate the infringement" as required to constitute actual notice. Mot at 12 n.8 (citing *Lubby*, 11 F.4th at 1360 ("[T]he actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, ***accompanied by a proposal to abate the infringement***, whether by license or otherwise."). ParkerVision responds that the ITC investigation was seeking "a total importation ban of all iPhones incorporating their infringing RF chips." Resp. at 14 n.8. But ParkerVision's response only confirms that ParkerVision never provided a proposal to abate any alleged infringement ***to Intel***, which was not a party to the ITC investigation. Therefore, ParkerVision failed to provide actual notice.

**D. Conclusion.**

For the foregoing reasons, Intel's Motion should be granted.

---

[7] ParkerVision also attempts to point to an [REDACTED]. Resp. at 14. This [REDACTED], however, is irrelevant to the issue of actual notice, which depends on the actions of ParkerVision, not Intel. *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.").

Dated: November 22, 2022

Respectfully submitted,

*/s/ J. Stephen Ravel*

J. Stephen Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
T (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
T (254) 710-7670
james.wren@baylor.edu

*Attorneys for Defendant Intel Corporation*

Michael J. Summersgill (admitted *Pro Hac Vice*)
Sarah B. Petty (admitted *Pro Hac Vice*)
Harry Hanson (admitted *Pro Hac Vice*)
Samuel C. Leifer (admitted *Pro Hac Vice*)
Alicia Coneys (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
T (617) 526-6000
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com
harry.hanson@wilmerhale.com
samuel.leifer@wilmerhale.com
alicia.coneys@wilmerhale.com

Todd Zubler (admitted *Pro Hac Vice*)
Isley M. Gostin (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
T (202) 663-6636
todd.zubler@wilmerhale.com
isley.gostin@wilmerhale.com

Mary (Mindy) V. Sooter
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
T (720) 274-3135
mindy.sooter@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing sealed documents via electronic mail on November 22, 2022.

*/s/ J. Stephen Ravel*
J. Stephen Ravel