UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PARKERVISION, INC.<br><br>                 Plaintiff,<br><br>vs.<br><br>INTEL CORPORATION<br><br>                 Defendant. | C.A. No. 6:20-cv-108-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>████████████████<br><br>PUBLIC VERSION |

**DEFENDANT INTEL CORPORATION'S REPLIES IN SUPPORT OF ITS
OPPOSED MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

I.   MIL NO. 3: TO EXCLUDE IRRELEVANT AND UNFAIRLY PREJUDICIAL EVIDENCE AND ARGUMENT THAT PARKERVISION RELIES ON FOR ITS (LEGALLY DEFICIENT) WILLFULNESS CLAIM ............. 1

II.  MIL NO. 2: TO EXCLUDE ANY ATTEMPTS TO IMPLY OR ARGUE THAT INTEL OR INFINEON COPIED PARKERVISION'S TECHNOLOGY ................................................................................................ 4

III. MIL NO. 4: TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING DISCOVERY DISPUTES, ALLEGED FAILURE TO PRODUCE DOCUMENTS, AND SPECULATION ABOUT UNPRODUCED MATERIALS ............................................................................................... 4

IV.  MIL NO. 5: TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING CURRENT AND FORMER EMPLOYEES' IRRELEVANT FINANCIAL INFORMATION ........................................................................................ 6

V.   MIL NO. 6: TO EXCLUDE IRRELEVANT AND PREJUDICIAL REFERENCES TO INTEL'S SIZE, WEALTH, AND FINANCIAL PERFORMANCE .......................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayer Healthcare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021) ................................................................................................. 2

*Bradley v. Cooper Tire & Rubber Co.*,
   2007 WL 9775644 (S.D. Miss. Mar. 16, 2007) ....................................................................... 8

*United States v. Bratton*,
   875 F.2d 439 (5th Cir. 1989) .................................................................................................... 6

*Caparotta v. Entergy Corp.*,
   168 F.3d 754 (5th Cir. 1999) .................................................................................................... 5

*United States v. Contreras-Saldana*,
   274 F. App'x 394 (5th Cir. 2008) ............................................................................................. 6

*In re: DePuy Orthopaedics, Inc.*,
   2016 WL 6271479 (N.D. Tex. Jan. 5, 2016) ........................................................................... 8

*Felder v. Hobby*,
   199 F.3d 439 (5th Cir. 1999) .................................................................................................... 4

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
   2015 WL 4129193 (N.D. Cal. July 8, 2015) ........................................................................... 8

*Gustafson, Inc. v. Intersystems Industrial Products, Inc.*,
   897 F.2d 508 (Fed. Cir. 1990) .................................................................................................. 2

*Polaroid Corp. v. Eastman Kodak Co.*,
   1990 WL 324105 (D. Mass. Oct. 12, 1990) ............................................................................ 7

*State Industries Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ....................................................................................... 1, 2, 3

*Tyco Healthcare Group LP v. Applied Medical Resources Corp.*,
   2011 WL 7563868 (E.D. Tex. Sept. 23, 2011) ........................................................................ 7

ParkerVision does not challenge Intel's motions *in limine* nos. 1 and 7, such that those motions should be allowed as unopposed. ParkerVision's responses to Intel's remaining motions, Dkt. 259 ("Resp."), only confirm that Intel's motions should be granted.

### I. MIL NO. 3: TO EXCLUDE IRRELEVANT AND UNFAIRLY PREJUDICIAL EVIDENCE AND ARGUMENT THAT PARKERVISION RELIES ON FOR ITS (LEGALLY DEFICIENT) WILLFULNESS CLAIM

Intel's motion established that the documents-at-issue do not mention any Asserted Patent and are therefore irrelevant to any claim or defense.[1] ParkerVision's response illustrates exactly why allowing those documents into evidence would be confusing, highly prejudicial to Intel, and a waste of the jury's time—ParkerVision wants to argue that documents that say nothing about any Asserted Patent somehow support an inference that engineers intentionally infringed claims they never read when they designed the products-at-issue years later.[2] *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). ParkerVision's arguments have no basis in fact or law and have no place at this trial.

ParkerVision does not argue that any of the documents-at-issue includes any Asserted Patent number because it cannot—all but a few predate the issuance of the Asserted Patents, and none of the documents that come after mention any specific patent number.[3] *See, e.g.*, Dkt. 212-50, PTX-140 (3LP Slides) at 96103DOC00264369.[4] It is therefore undisputed that **none** of the documents-at-issue mentions **any** Asserted Patent.

---

[1] ParkerVision's response cites a document from Skyworks and argued that document "specifically mentioned the '902 and '474 patents." Resp. at 5. That document is irrelevant to this motion because it is not one of the documents-at-issue for this motion.

[2] ParkerVision argues that "Intel/Infineon began development activities on SMARTi 4G" in 2008. Resp. at 7. But the undisputed record shows that the accused design of the receiver circuits at issue did not occur until ▇▇▇ Reply Ex. 1, Werner Schelmbauer Dep. at 233:14-234:8.

[3] ParkerVision argues that "[d]ocuments put the '902 and '474 patents in Intel's hands no later than 2010. Testimony puts the '551 and '902 patents in Infineon's hands in 2006. And Intel admits knowledge of the '902 and '528 patents during development of some accused products." Resp. at 8. Tellingly, PV does not cite any of the documents-at-issue in support of that argument because none of the documents-at-issue mention any of those patents.

[4] "Reply Exs." are attached to the Declaration of Harry Hanson, filed concurrently herewith.

1

Documents that predate the Asserted Patents are irrelevant to willfulness because "[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it." *State Indus.*, 751 F.2d at 1236. Documents that do not even mention an Asserted Patent are likewise irrelevant to willfulness because "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990).

Moreover, none of the documents-at-issue was sent or received by any Intel or Infineon engineer who designed the receiver circuits at issue.[5] ParkerVision is simply wrong when it argues that the documents-at-issue "aid[] the determination as to whether Intel (and its predecessor Infineon) … knew of the asserted patents." Resp. at 3. Documents that have no connection to any Asserted Patent or the engineers who designed the receiver circuits at issue have no tendency to make it more likely that Intel knew about the Asserted Patents—let alone intended to infringe them. *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement.").

ParkerVision argues that all 43 of the documents-at-issue are admissible due to scattered references to its "d2d" technology and one reference to the '551 patent in those documents.[6] Resp. at 3-7. But none of the documents that refer to "d2d" mentions any

---

[5] ParkerVision argues that one of the 43 documents-at-issue shows that "Zdravko Boos and Stefan Herzinger—*Infineon engineers who were involved in designing the accused SMARTi chips*—attended [an] April 2006 meeting [with ParkerVision]." Resp. at 6 (emphasis ParkerVision's). ParkerVision's argument is misleading, as Mr. Boos designed the ***transmitter*** circuits in the SMARTi chips at issue—not the receiver circuits at issue—and Mr. Herzinger was a system designer, not a circuit designer. Reply Ex. 2, Adler Dep. at 54:3-55:11, 92:13-93:1, 166:17-24.

[6] ParkerVision baldly asserts without citation that "Intel does not dispute that all of the [unspecified] documents relate to the patented D2D technology at issue." Resp. at 3. ParkerVision does not specify which "documents" it is referring to. In any event, Intel cannot and does not agree that any document that does not mention d2d "relates" to that technology.

Asserted Patent; at most, the documents-at-issue that refer to "d2d" are analogous to knowledge of a product with a "patent pending" notice—and the Federal Circuit has found that "[a] 'patent pending' notice gives one no knowledge [of a patent] whatsoever."[7]  *State Indus.*, 751 F.2d at 1236; *see also* Dkt. 136, *Dali Wireless, Inc. v. Corning, Inc.*, No. 6:20-cv-01108-ADA (W.D. Tex. Feb. 1, 2022), Dkt. 59 at 5 ("[Plaintiff] Dali requests that, because Corning was interested in Dali's DAS technology from 2010-2014 and learned of the '508 patent years later, the Court should infer that Corning knew or should have known it was infringing the '508 patent.  It will not do so."). Nor does the fact that the '551 patent is the parent of some of the Asserted Patents make documents that refer to the '551 patent relevant to willful infringement, because the '551 patent does not say anything about the scope of the claims of Asserted Patents that issued years later. *See State Indus.*, 751 F.2d at 1236 ("Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents.  ***What the scope of claims in patents that do issue will be is something totally unforeseeable***." (emphasis added)); *see also* Reply Ex. 3, *First Quality Tissue, LLC v. Irving Consumer Products Limited, et al.*, C.A. No. 19-428-RGA, Dkt. 346 (D. Del. April 13, 2022) (excluding unasserted patents/applications offered to show willfulness).

None of the documents-at-issue make it more likely that Intel knew about any of the Asserted Patents—let alone intended to infringe those patents—for the simple reason that none of those documents mention any Asserted Patent.  ParkerVision's attempt to muddy the waters with a so-called "mosaic" of other evidence that is not at issue in this motion does nothing to make the documents-at-issue more relevant or admissible.  Intel's Motion in Limine No. 3 should be granted.

---

[7] ParkerVision argues that testimony from former ParkerVision employees that they planned to send unspecified patent numbers to Infineon after an April 2006 meeting "would have at least included the [asserted] '902 and [unasserted] '551 patents." Resp. at 6. Nothing in any of the documents-at-issue indicates that anyone from ParkerVision ever discussed the '902 patent with Infineon or sent that patent to Infineon.

## II.  MIL NO. 2: TO EXCLUDE ANY ATTEMPTS TO IMPLY OR ARGUE THAT INTEL OR INFINEON COPIED PARKERVISION'S TECHNOLOGY

For the reasons stated above in Intel's reply in support of its MIL No. 3, there is no evidence of copying. As a result, allegations of copying are irrelevant and ParkerVision should be precluded from using charged words that imply Intel "copied," "robbed," "took," or "stole" from ParkerVision.

## III.  MIL NO. 4: TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING DISCOVERY DISPUTES, ALLEGED FAILURE TO PRODUCE DOCUMENTS, AND SPECULATION ABOUT UNPRODUCED MATERIALS

ParkerVision agrees that evidence and argument related to discovery disputes should be excluded. Resp. at 9. But ParkerVision argues that it should be allowed to present evidence and argument on alleged failures to produce documents, and to speculate about the existence and contents of unproduced materials. *Id.*; *see* Mot. at 10-12. ParkerVision's response confirms that Intel's motion should be granted.

*First*, ParkerVision baselessly suggests that the "absence of" unspecified "documents" may be relevant to "witness credibility and Intel's pre-suit knowledge." Resp. at 10. But after years of discovery, ParkerVision has failed to adduce any *evidence* that Intel even knew of the asserted '725, '736, or '673 patents (much less that Intel intentionally infringed any asserted patent) pre-suit. *See* Dkt. 236. Recognizing this, ParkerVision wants to (1) speculate about the existence and contents of supposedly "missing," documents; and (2) invite the conclusion that these purported documents are "missing" *because of Intel*. Resp. at 9-10. But such speculation is "not evidence." *Felder v. Hobby*, 199 F.3d 439 (5th Cir. 1999). The suggestion that documents are "missing" is itself mere speculation, and the further suggestion that *Intel* is responsible for documents being "missing" is both baseless and entirely prejudicial. *See*

*Caparotta v. Entergy Corp.*, 168 F.3d 754, 755-56 (5th Cir. 1999) (admission of spoliation evidence was an abuse of discretion because of substantial prejudicial effect); FRE 403.[8]

***Second***, the cases ParkerVision cites do not support a different result. ParkerVision relies heavily on dicta from an employment discrimination case, *Caparotta v. Entergy Corporation*. Resp. at 9 (citing 168 F.3d 754 (5th Cir. 1999)). There, the district court admitted at trial evidence that a box of materials—which indisputably existed, and contained portions of the plaintiff's personnel file—were inadvertently destroyed by counsel. *Caparotta*, 168 F.3d at 755-56. The Fifth Circuit **reversed and remanded for a new trial**: citing the "miniscule" probative value and "substantial" "danger of unfair prejudice and confusion of the issues." The Court held that it "was ***an abuse of discretion*** to allow the evidence of destruction of documents to be admitted through the testimony of defense counsel." *Id.* at 758 (emphasis added). This result thus supports Intel's argument, not ParkerVision's. And the case for preclusion is even stronger here than in *Caparotta*, as there is no showing, or even suggestion, here—unlike in *Caparotta*—that any document was "destroyed" by counsel. *See id.*[9]

---

[8] ParkerVision suggests that it will establish at trial "the prior existence" of the supposedly missing documents "through admissible evidence," Resp. at 9-10, without identifying either the purported "documents" or "admissible evidence" to which it is referring. But, to the extent ParkerVision plans to point—as it does at pp. 6-7 of its brief—to former ParkerVision employee Jeff Leach's note-to-self to "send the patent numbers" to Infineon following an April 2006 meeting and related testimony, this confirms that such evidence and argument should be excluded. As an initial matter, the document is inadmissible hearsay as to ParkerVision. And, in any event, ParkerVision has never produced any document showing that its former employee "sen[t] the patent numbers" to Infineon, and Intel is aware of none. Instead, ParkerVision relies on the speculation from another witness, Mr. Stuckey, that he "***would expect*** that [Mr. Leach] did send [the patent numbers]," Resp. at 6-7 (emphasis added), despite Mr. Stuckey conceding that he had seen no such evidence. Dkt. 212-28, Stuckey Dep. at 127:13-128:20 ("You haven't seen any evidence that Mr. Leach sent any patent numbers to Infineon after the April of 2006 meeting, correct? A. Correct."). And ParkerVision then further speculates that "the patent numbers" that Mr. Leach purportedly sent "***would have at least included*** the [asserted] '902 and [unasserted] '551 patents." Resp. at 6-7 (emphasis added). This kind of speculation-built-on-speculation should be excluded. ParkerVision also points out that Intel did not produce schematics for one of the Intel products at issue, the SMARTi S4.5. Intel will not rely on the absence of schematics in ParkerVision's infringement analysis for that product at trial.

[9] ParkerVision also points to *Salazar v. HTC Corporation*, where the plaintiff's motion to "preclude any statement, argument, testimony, or evidence regarding or referring to [his]

5

IV.  **MIL NO. 5: TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING CURRENT AND FORMER EMPLOYEES' IRRELEVANT FINANCIAL INFORMATION**

ParkerVision's recent questioning of a former Intel employee—who has not worked at the company since 2018, and whose "only connection to Intel now is [that he's] on Intel retirees medical plan," Reply Ex. 6, Saltzman Dep. at 49:9-12—illustrates the kind of salary, bonus, and net worth information ParkerVision wants to present at trial: counsel asked "*[h]ow much money did you m[a]ke* while you were working for Intel"; whether the witness "███████████████████████████████████"; and whether he "███████████████████████████████████" *Id.* at 50:9-10, 51:9-10, 51:16-17 (emphasis added). Any alleged probative value of such questioning for "bias," Resp. at 10-12, is substantially outweighed by the risk of unfair prejudice and confusing the issues. FRE 403. ParkerVision's argument does not warrant a different result.

*First*, citing a string of criminal law cases not involving witnesses' financial information, ParkerVision argues that the Fifth Circuit has a "*requirement* that bias evidence should not be precluded." Resp. at 11 (emphasis ParkerVision's). That is not the law. Indeed, the caselaw ParkerVision cites itself makes clear that "bias evidence" remains subject to FRE 403. *United States v. Contreras-Saldana*, 274 F. App'x 394, 398 (5th Cir. 2008) ("***The admissibility of bias evidence is subject to Rule 403*** and the probative value of admitting such evidence must not be substantially outweighed by any prejudicial effect." (emphasis added)); *United States v. Bratton*, 875 F.2d 439, 443 (5th Cir. 1989) (stating, immediately after the sentence ParkerVision quotes: "the introduction of such impeachment evidence, however

---

document production or missing documents" was "granted as to discovery matters" and "otherwise denied," in a margin order. Reply Ex. 4, No. 2:16-cv-1096-JRG-RSP, Dkt. 236 at 9 (E.D. Tex. Apr. 16, 2018). As the defendant argued in its opposition to that motion, however, plaintiff's motion would prevent the defendant from pointing out the absence of evidence on which plaintiff bore the burden (e.g., his failure to adduce evidence corroborating an alleged early invention date). Reply Ex. 5, No. 2:16-cv-1096-JRG-RSP, Dkt. 217 at 12 (E.D. Tex. Apr. 6, 2018). The absence of supporting evidence is not similarly relevant here.

relevant, *is limited by the danger of unfair prejudice to the defendant*.  Pursuant to Fed.R.Evid. 403, a district court is charged with weighing the probative value of the evidence against its prejudic[i]al effect prior to allowing the use by the Government of such evidence at trial." (emphasis added)).   Thus, the fact that current or former employees received compensation from a party in the ordinary course of their employment is not—as ParkerVision suggests—automatically admissible.  *E.g.*, *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, 2011 WL 7563868, at *4 (E.D. Tex. Sept. 23, 2011) (excluding evidence regarding executive compensation).[10]

*Second*, unable to point to any *evidence* of witnesses' bias or financial interest in the case's outcome, ParkerVision baldly claims that "it is well known that companies like Intel tend to increase the size of bonus payments" during periods of profitability but may "reduce compensation when faced with losses, including with respect to judgments of patent infringement."  Resp. at 11.  ParkerVision offers no evidence to support this claim.  ParkerVision instead cites a portion of *Polaroid Corp. v. Eastman Kodak Co.*, (1) a District of Massachusetts decision from more than three decades ago; (2) not involving Intel; (3) discussing employee payments under a profit-sharing plan as part of a damages analysis; and (4) that said nothing about the purported "well known" practice ParkerVision alleges.  1990 WL 324105, at *68 (D. Mass. Oct. 12, 1990).  ParkerVision also cites *Alarm.com, Inc. v. Securenet Technologies LLC*, where the court permitted evidence regarding "a witness's *ownership interest*" in a party, but ruled—consistent with Intel's motion here—that "[e]vidence of witnesses' *personal wealth is excluded as irrelevant*."  Reply Ex. 8, No. 1:15-

---

[10] ParkerVision also cites margin orders in *USAA v. PNC Bank, N.A.*, No. 20-cv-319, Dkt. 579 at 11(E.D. Tex. Apr. 11, 2022) and *Uniloc USA, Inc. v. Samsung Electronics America, Inc.*, No. 17-cv-651, Dkt. 208 at 6 (E.D. Tex. Apr. 10, 2019), neither of which suggests a "*requirement* that bias evidence should not be precluded," as ParkerVision claims.  Resp. at 11.  And the "compensation" apparently at issue in *Uniloc* involved "agreements with [plaintiff's] *counsel*."  Reply Ex. 7, No. 17-cv-651, Dkt. 208 at 6 (E.D. Tex. Apr. 10, 2019).  Intel is not seeking to preclude such evidence here.  *See* Mot. at 12 n.7.

cv-00807, Dkt. 242 at 3 (D. Del., Jan. 23, 2019) (emphasis added). *Alarm* thus supports Intel, not ParkerVision.

*Finally*, Intel's proposal to treat evidence that witnesses—such as experts—have been paid or received a benefit *from this or related cases* differently from evidence that a witness merely received compensation in the ordinary course of his or her employment is neither "contradictory" nor "new," as ParkerVision claims. To the contrary, Intel's proposal reflects the established, common-sense view that compensation unrelated to the case is less probative of bias and more prejudicial. *See, e.g., Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *4 (N.D. Cal. July 8, 2015) (noting that "compensation is unquestionably relevant to a witness's bias and is usually one of the first questions in cross-examining a retained expert," but excluding references to compensation under FRE 403 where witnesses' relationship with party was "continuous, ongoing, and not limited to litigation purposes").[11]

## V. MIL NO. 6: TO EXCLUDE IRRELEVANT AND PREJUDICIAL REFERENCES TO INTEL'S SIZE, WEALTH, AND FINANCIAL PERFORMANCE

Intel moves to exclude ParkerVision from referring to or using three categories of information: (a) Intel's size, financial performance, and/or market/competitive position (including total employees or employee layoffs); (b) Intel's total company revenues; and (c) pejorative characterizations relating to Intel's size, wealth, and financial performance, like "dominant," "monopolist," "goliath," or "bully." In its response, ParkerVision does not dispute that the last two categories of information are inadmissible.[12] ParkerVision should, therefore,

---

[11] Evidence of ParkerVision expert Dr. Steer's compensation in prior ParkerVision litigations should be allowed for the reasons set out in Intel's response to ParkerVision's MIL No. 7. Dkt. 260 at 8; *see Bradley v. Cooper Tire & Rubber Co.*, 2007 WL 9775644, at *4 (S.D. Miss. Mar. 16, 2007) (denying motion to exclude evidence of compensation to experts other than in case at bar); *see also In re: DePuy Orthopaedics, Inc.*, 2016 WL 6271479, at *2 (N.D. Tex. Jan. 5, 2016) ("[A]n expert's financial interest and expected compensation is a commonly permitted area of inquiry, as a pecuniary interest in the outcome of a case may bias a witness.").

[12] If the Court grants its *Daubert* Motion to exclude ParkerVision's damages expert, Mr. Benoit, from including baseband sales in his damages calculation (Dkt. 171 at 11-17), then

8

be precluded from introducing that information, and also from comparing the size of the companies in a disparaging or prejudicial fashion.

ParkerVision's only argument in support of being permitted to refer to Intel's size, financial performance, and/or market/competitive position is that Intel's damages expert, Dr. Perryman, referred to Intel's size in his expert report (without including any such figures in his damages calculation). But critically, ParkerVision does not claim that its *own* expert relied in on such information (because he did not)—or cite any other basis for why it is admissible. ParkerVision has offered no reason that *it* should be allowed to offer this evidence in the first instance. Accordingly, ParkerVision should be permitted to refer to Intel's size, financial performance, and/or market/competitive position *only* if Intel opens the door, and should not be permitted to use Intel's size in a disparaging manner.

---

evidence about the number of baseband units Intel sold and revenue therefrom should be excluded. ParkerVision did not oppose that relief in its opposition either.

Dated:  January 18, 2023                                  Respectfully submitted,

/s/ J. Stephen Ravel

Michael J. Summersgill (admitted *Pro Hac Vice*)
Sarah B. Petty (admitted *Pro Hac Vice*)
Harry Hanson (admitted *Pro Hac Vice*)
Marissa A. Lalli (admitted *Pro Hac Vice*)
Samuel C. Leifer (admitted *Pro Hac Vice*)
Alicia Coneys (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
T (617) 526-6000
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com
marissa.lalli@wilmerhale.com
harry.hanson@wilmerhale.com
samuel.leifer@wilmerhale.com
alicia.coneys@wilmerhale.com

Todd Zubler (admitted *Pro Hac Vice*)
Isley M. Gostin (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
T (202) 663-6636
todd.zubler@wilmerhale.com
isley.gostin@wilmerhale.com

Mary (Mindy) V. Sooter (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
T (720) 274-3135
mindy.sooter@wilmerhale.com

Robert J. Gunther Jr. (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street

J. Stephen Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
T (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
T (254) 710-7670
james.wren@baylor.edu

Harry L. Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Tel.: (903) 934-8450
Fax: (903) 934-9257
gil@gillamsmithlaw.com

*Attorneys for Defendant Intel Corporation*

New York, NY 10007
T (212) 230-8800
robert.gunther@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record are being served with a copy of the foregoing sealed documents via electronic mail on January 18, 2023.

*/s/ J. Stephen Ravel*
J. Stephen Ravel
