# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| PARKERVISION, INC.,<br><br>               Plaintiff,<br><br>vs.<br><br>INTEL CORPORATION,<br><br>               Defendant. | Civil Action No. 6:20-cv-00108-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>■■■■■■■■■■■■<br><br>PUBLIC VERSION |

## DEFENDANT INTEL CORPORATION'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT REGARDING U.S. PATENT NO. 7,539,474

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997)..................................................................................................1

*Lighthouse Consulting Group, LLC v. BB&T Corp.*,
    476 F. Supp. 3d 532 (W.D. Tex. 2020).....................................................................................4

*O2 Micro International Ltd. v. Beyond Innovation Technology Co.*,
    521 F.3d 1351 (Fed. Cir. 2008).................................................................................................1

*Profectus Technology LLC v. Huawei Technologies Co.*,
    2014 WL 11728718 (E.D. Tex. Sept. 8, 2014).........................................................................4

At the January 19, 2023 final pretrial hearing, the Court instructed the parties to file briefing on whether PV and its technical expert's infringement allegations for the '474 patent are "inconsistent with the [Court's] claim construction." Jan. 19, 2023 Hr'g Tr. at 194:3-195:23. They are. As construed by the Court, claim 6 of the '474 patent is limited to either a ***direct*** connection between the claimed switch and the claimed reference potential, or a ***specific type*** of indirect connection that is tantamount to a direct connection, i.e., through "a ***conductor*** (or a ***closed switch***)."[1] Dkt. 75 at 4. But PV and its expert now try to argue that the claim covers ***any type*** of connection—direct or indirect—through any type of component that has ***any conductivity*** (including those specifically designed to resist conductivity). PV argued for that claim scope during claim construction, and the Court rejected that broad reading of the claim. It is well settled that PV cannot reargue claim construction to the jury. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); Jan. 19, 2023 Hr'g Tr. at 195:21-23 (the Court: "[i]f that's the argument [that] plaintiff's expert is not complying with my construction, that's something I'm not going to do at trial"). Because PV's infringement allegations depend on its improper claim construction argument, summary judgment of non-infringement of the '474 patent should be granted. *See Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997).

### A. The Court Resolved The Parties' Claim Construction Dispute By Limiting The Claim To A Specific Type Of Indirect Connection.

At claim construction, the parties disputed the meaning of the phrase "the [] switch is coupled to the [] storage element at a [] node and coupled to a [] reference potential" in claim 1 of the '474 patent, on which asserted claim 6 depends. Intel argued that the term "coupled to a [] reference potential" required a ***direct*** connection between the switch and the reference potential.

---

[1] Emphases added, unless otherwise noted. Exhibits are attached to the concurrently filed declaration of Harry Hanson.

1

Dkt. 58 at 26-27. Intel explained that every time the specification identifies any electrical component as being "coupled to a reference potential," the specification refers to the type of direct connection shown in Figure 20G:



*See* Dkt. 58 at 26; Dkt. 53 at 26 & n.10. PV argued in response that the term "coupled" covered both direct *and* indirect connections: "the term 'coupled' can refer to an *indirect* connection/coupling." Dkt. 65 at 15 (emphasis by PV); Dkt. 57 at 19 n.13. PV's sole evidence to support its "indirect" connection theory was the patent's description of a connection between a signal and a capacitor formed when an intervening switch was closed. Dkt. 65 at 15 ("'When the switch 2008 is closed, the input signal 2004 is *coupled* to the capacitor 2010.' '474 patent, 12:10-11, 43-44. This is an *indirect* connection/coupling." (emphases by PV)). As Intel explained, however, PV's claim construction proposal—whereby the claim applies to *any* configuration of a switch, storage element, and reference potential, including *any indirect* connections—was inconsistent with the specification and would render claim language meaningless:

> Every circuit has a reference potential. Accordingly, if a switch in a circuit is 'coupled to a reference potential' merely by virtue of being indirectly connected to ground through other components, then *every* switch—indeed, every electrical component—in every circuit is coupled to a reference potential, and the words 'coupled to a reference potential' become superfluous.

Dkt. 58 at 26-27 (emphasis in original). The Court rejected PV's argument, and limited "coupled" to only *direct* connections and indirect connections that are tantamount to a direct connection, i.e.,

through a conductor or closed switch.

| Term | Court's Final Construction |
|---|---|
| "the [] switch is coupled to the [] storage element at a [] node and coupled to a [] reference potential" ('474 patent, claim 1) | Plain-and-ordinary meaning wherein "coupled" is *directly connected or connected through a conductor (or a closed switch)*. |

Dkt. 75 at 4.

**B.    PV Now Improperly Tries To Reargue The Court's Claim Construction To Allow For Any Indirect Connection Through Any Component With Conductivity.**

It is undisputed that, in the Intel products-at-issue, ██████████ ██████████ between each switch and the alleged reference potential. *See* Dkt. 173. Faced with this fundamental flaw in its infringement claim, PV now tries to reargue the Court's construction to the jury to allow for *any indirect* connection through any component with *any* conductivity. According to PV, a connection through a resistor meets the Court's construction because a resistor, despite its purpose, has some conductivity.[2] Dkt. 208 at 3-4. But this is effectively the same argument that PV made, and the Court rejected, at *Markman*. *See* Dkt. 65 at 15. Indeed, PV's argument would broaden the claim to cover even the opposite of a "conductor" because, as PV's expert states in his textbook, resistivity is the inverse (i.e., the opposite) of conductivity. Dkt. 173-12, Michael Steer, *Microwave and RF Design: A Systems Approach* (2010), at 842. PV's argument should be rejected.

*First*, PV's argument would render portions of the Court's construction meaningless. If the Court had intended such a broad claim scope, it could have easily adopted such a construction (e.g., "'coupled' is directly or indirectly connected"). Instead, the Court adopted a construction that allowed direct connections and only a specific type of indirect connection—i.e., through either

---

[2] ParkerVision does not allege that this limitation is met under the doctrine of equivalents.

"[1] a *conductor* (or [2] a *closed switch*)." Dkt. 75 at 4. There would have been no need to refer specifically to a "conductor" and "closed switch" if the Court had simply intended to cover any indirect connection. Moreover, it is undisputed that a "closed switch," like a "conductor," is a component that is designed to conduct a current. Ex. 1, Steer Opening Rpt., Appendix K-3 at 58 ("When the second switch (transistors SW2, purple box) is ON (closed), current can pass through the second switch …."). If the "conductor" portion of the Court's construction could be met by any connection through any component with any conductivity—as PV now argues—there would have been no need to include "(or a closed switch)" in the Court's construction, because of course a closed switch has some level of conductivity. PV's argument thus improperly reads out a portion of the Court's construction. *See Profectus Tech. LLC v. Huawei Techs. Co.*, 2014 WL 11728718, at *2 (E.D. Tex. Sept. 8, 2014).

**Second**, PV's argument would also render meaningless the "coupled to a [] reference potential" claim language. The patent makes clear that the claim is directed to a specific configuration of components, not all indirect connections. The claim recites components of a switch, storage element, node, and reference potential. Dkt. 1-4, '474 patent, at claim 1. The patent does not assert, nor could it, that any of these components were novel. The patent instead claims that what is novel is the particular configuration where the switch is coupled to the reference potential in a particular way. *Id.* If, however, the term "coupled to a [] reference potential" is broadened to cover any indirect connection through any component with conductivity—as PV's infringement allegations require—this claim language would be rendered meaningless, as all components in a circuit are at least indirectly connected to a reference potential through some component. *Supra* at 2; Dkt. 58 at 26-27. But an infringement theory cannot "effectively eliminate [a claim] element in its entirety." *Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp.

4

3d 532, 543 (W.D. Tex. 2020).

***Third***, PV's argument that a resistor can be a "conductor" under the Court's construction is inconsistent with the patent itself, which consistently distinguishes between "conductors" and "resistors." For instance, as shown below in Figure 51B, where the patent describes a connection through a ***conductor***, it uses lines (yellow). By contrast, where the patent describes a connection through a ***resistor***, it uses the well-known symbol for that component: a zigzag (5118, blue).



Dkt. 1-4, '474 patent, at Fig. 51B. Indeed, in 181 pages of specification, the '474 patent never once suggests that one could use a resistor for a conductor. And, as noted above, PV's own expert has said the opposite: "[e]lectrical conductivity is the inverse of resistivity." Dkt. 173-12 at 842.

\*   \*   \*

PV's infringement allegations for the '474 patent depend on an argument that is contrary to the Court's claim construction, the claims, the specification, and PV's own expert's admissions. PV's attempt to reargue claim construction to the jury should be rejected, and Intel's motion for summary judgment of non-infringement of the '474 patent should be granted.

Dated: January 24, 2023

Respectfully submitted,

/s/ J. Stephen Ravel

Michael J. Summersgill (admitted *Pro Hac Vice*)
Sarah B. Petty (admitted *Pro Hac Vice*)
Harry Hanson (admitted *Pro Hac Vice*)
Marissa A. Lalli (admitted *Pro Hac Vice*)
Samuel C. Leifer (admitted *Pro Hac Vice*)
Alicia Coneys (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
T (617) 526-6000
michael.summersgill@wilmerhale.com
sarah.petty@wilmerhale.com
marissa.lalli@wilmerhale.com
harry.hanson@wilmerhale.com
samuel.leifer@wilmerhale.com
alicia.coneys@wilmerhale.com

Todd Zubler (admitted *Pro Hac Vice*)
Isley M. Gostin (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
T (202) 663-6636
todd.zubler@wilmerhale.com
isley.gostin@wilmerhale.com

Mary (Mindy) V. Sooter (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO 80202
T (720) 274-3135
mindy.sooter@wilmerhale.com

Robert J. Gunther Jr. (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP

J. Stephen Ravel
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
T (512) 495-6429
steve.ravel@kellyhart.com

James E. Wren
Texas State Bar No. 22018200
1 Bear Place, Unit 97288
Waco, Texas 76798
T (254) 710-7670
james.wren@baylor.edu

Harry L. Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Tel.: (903) 934-8450
Fax: (903) 934-9257
gil@gillamsmithlaw.com

*Attorneys for Defendant Intel Corporation*

7 World Trade Center
250 Greenwich Street
New York, NY 10007
T (212) 230-8800
robert.gunther@wilmerhale.com

Jason F. Choy (admitted *Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, California 90071
T (213) 443-5300
jason.choy@wilmerhale.com

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing sealed documents via electronic mail on January 24, 2023.

/s/ J. Stephen Ravel<br>
J. Stephen Ravel